**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

MARILYN MORTON and DEAN MORTON,

Plaintiffs,

v.

COUNTY OF SAN DIEGO, et al.,

Defendants.

Case No. 21-cv-1428-MMA (KSC)

**ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS**

[Doc. No. 10]

Marilyn Morton ("Ms. Morton"), as successor in interest to Decedent Joseph Earl Morton's ("Morton") estate,[1] as well as Ms. Morton and Dean Morton as individuals, (collectively, "Plaintiffs") bring this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants County of San Diego (the "County"), Samantha Macanlalay

[1] Ms. Morton has not filed the affidavit required to establish standing as Morton's successor in interest. *See* Cal. Code Civ. Proc. §§ 377.30, 377.32(a); *see also Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1093 n.2 (9th Cir. 2006) ("A claim under 42 U.S.C. § 1983 survives the decedent if the claim accrued before the decedent's death, and if state law authorizes a survival action."). However, "a plaintiff's failure to file the required declaration does not mean the case must be dismissed; noncompliance may be cured." *See Estate of Miller v. County of Sutter*, No. 12-cv-03928-MEJ, 2020 U.S. Dist. LEXIS 204517, at *13 (E.D. Cal. Oct. 30, 2020) (citing *Frary v. County of Marin*, 81 F. Supp. 3d 811, 846 (N.D. Cal. 2015)).

("Macanlalay"), Bijan Rahmani ("Rahmani"), Hosanna Alto ("Alto"), Matthew Berlin ("Berlin"), Liberty Healthcare ("Liberty"), and Does 1–10. *See* Doc. No. 8 ("FAC"). Defendants Macanlalay, Alto, and the County move to dismiss all causes of action against them pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] Doc. No. 10. Plaintiffs filed an opposition to County Defendants' motion, to which County Defendants replied. *See* Doc. Nos. 13, 15. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. *See* Doc. No. 16. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** County Defendants' motion to dismiss.

## I. Background[3]

This action arises from Joseph Morton's death on May 17, 2020, while confined at Vista Detention Facility ("VDF") in San Diego County. *See* FAC ¶¶ 5, 16, 29. Broadly, Plaintiffs allege that each medical Defendant, during Morton's intake evaluation and subsequent suicide assessments, was required by the County's suicide prevention policies to flag Morton as a "high risk" for suicide. *Id.* ¶ 17. Pursuant to County policy, inmates flagged as a high risk for suicide must be placed in safety cell housing and provided with advanced monitoring and psychiatric care. *Id.* Plaintiffs allege that because Morton was improperly assessed as a "low risk" of suicide, he was not placed in suicide safety housing ("ISP housing"), which ultimately provided Morton the means and opportunity to commit suicide. *See id.* ¶¶ 8, 17.

On May 11, 2020, Morton was arrested by San Diego Sheriff deputies after he "used a toy gun in an attempted robbery." *See id.* ¶ 5. At the time of his arrest, Morton "made suicidal statements to the arresting deputies[.]" *Id.* Morton was transported to

---

[2] There appears to be some dispute as to whether Alto was an employee of the County or Liberty. *Compare* FAC ¶ 28 *with* Doc. No. 17 ¶ 28. However, this dispute is immaterial to the present motion and therefore, for the sake of convenience, the Court refers to Macanlalay, Alto, and the County collectively as "County Defendants."

[3] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the FAC. *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

VDF, where the "arresting deputies notified the VDF intake staff, including intake nurse, Defendant [ ] Macanlalay, of the suicidal statements [Morton] made during his arrest." *Id.*

During Macanlalay's intake evaluation, Morton informed Macanlalay "that he suffered from mood disorders and major depression[,]" that he "had been drinking and taking Xanax and anticipated suffering from withdrawals[,]" and that he "was recently dealing with the loss of his dear aunt and that he felt helpless and hopeless." *Id.* ¶ 6. Morton also "admitted that he had just been released from a 5150 hold the day prior for trying to kill himself" and that he had "*actual* thoughts of killing himself imminently." *Id.* ¶ 7 (emphasis in original).

"In her subjective note, [ ] Macanlalay acknowledged [Morton]'s suicide risk factors and his recent suicide attempt." *Id.* ¶ 8. However, Macanlalay "cleared [Morton] for mainline booking and processing" and "did not notate or document [Morton]'s imminent suicidal ideations in the intake notes[,]" "flag [Morton] as a suicide risk," "elect to house [Morton] in suicide safety housing[,]" have Morton "assessed by a mental health provider, or recommend admission to the Psychiatric Security Unit." *Id.*

"Forty minutes later, while being processed, [Morton] vocalized his suicidal ideations to a deputy and [actively] attempted to harm himself." *Id.* ¶ 9. "The deputy intervened and escorted [Morton] to medical" where Defendant Rahmani "performed a suicide assessment[,]" which assessed Morton as a "low risk of suicide because [Morton] asked for food and inquired about bail." *Id.* Rahmani "housed [Morton] in Enhanced Observation Housing and scheduled a follow up in 12–24 hours." *Id.* Enhanced Observation Housing "is a step-down housing unit within the Inmate Suicide Program" for "inmates that present a risk for suicide" but who do not require safety cell placement. *Id.* ¶ 9 fn.1. Enhanced Observation Housing "is void of any mechanism or means for one to harm or hang themselves." *Id.*

The following morning, May 12, 2020, Defendant Alto, a mental health clinician, "performed [Morton]'s follow-up suicide assessment." *Id.* ¶ 10. Alto "noted that

[Morton] was facing serious criminal charges involving child cruelty" and that "the reason for her assessment is that [Morton] verbalized suicidal intent." *Id.* "During the assessment, [Morton] inquired about withdrawal medication." *Id.* Morton also reported "that he was struggling with symptoms of withdrawal and depression[,]" that "the effect of the withdrawals was the reason he attempted suicide on May 8, 2020[,]" and that "he was having a hard time dealing with the loss of his aunt." *Id.* Alto "assessed [Morton] as a low risk for suicide because he wanted withdrawal medication and talked about needing recovery treatment." *Id.* ¶ 11. Alto "cleared [Morton] for mainline housing." *Id.* ¶ 12.

Hours later, Morton "was again escorted to medical and assessed by a psychologist, Defendant [ ] Berlin" who noted that Morton "had 'verbalized suicide intent in [the] housing unit' and was escorted to him for a suicide assessment." *Id.* ¶ 13. Berlin thought Morton "was faking his suicidal ideations to manipulate staff in an effort to get access to a phone" because Morton "indicated that his mother's disappointment [about his relapse] was devastating and left him feeling helpless." *Id.* Berlin "acknowledged [Morton]'s May 8, 2020, suicide attempt" and "his self-harming attempt in front of a deputy the day prior." *Id.* Berlin also "knew that [Morton] had just been released from [Enhanced Observation Housing] and had verbalized suicidal intent four times while in-custody." *Id.* "Following the path laid before him by" the other Defendants, "Berlin ignored [Morton]'s imminent threat of suicide" and the risk factors he displayed while incarcerated, and "sent [Morton] back to isolated housing and did not order a follow-up evaluation, a medical sick call or depression/withdrawal medication." *Id.* ¶ 14.

Because Morton was cleared for mainline housing, he had to "quarantine for ten days in an isolation cell" "[d]ue to the ongoing pandemic[.]" *Id.* ¶ 12. Morton "remained in an isolated cell, with no recreation time, for the next five days." *Id.* ¶ 15. "[Morton] was not evaluated by medical staff during that time nor was he distributed any medication for his withdrawals and/or depression." *Id.* "On May 17, 2020, [Morton] was discovered

in the isolated cell hanging by a bed-sheet, unresponsive" and "was pronounced dead on the scene." *Id.* ¶ 16.

Plaintiffs bring four causes of action in their First Amended Complaint: (1) a Fourteenth Amendment medical care claim against Macanlalay, Rahmani, Alto, Berlin, and Does 1–10, individually; (2) a Fourteenth Amendment medical care claim against the County and Liberty; (3) "Gross Negligence / Medical Malpractice" against all Defendants; and (4) "Wrongful Death / Survival" against all Defendants. FAC ¶¶ 33–129.

County Defendants now move to dismiss all causes of action against them under Rule 12(b)(6). *See* Doc. No. 10.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims made in the complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is provided "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 570. The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). A court need not take legal conclusions as true merely because they are cast in the

form of factual allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## III. DISCUSSION[4]

County Defendants challenge the plausibility of Plaintiff's first, second, third, and fourth causes of action. *See* Doc. No. 10. The Court assesses each claim in turn.

### A. Fourteenth Amendment Medical Care – Individual Liability Under § 1983

In their first cause of action, Plaintiffs allege that Defendants Macanlalay, Rahmani, Alto, Berlin, and Does 1–10 were deliberately indifferent to Morton's medical needs. *See* FAC ¶¶ 33–74. "[C]laims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard." *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018) (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)). Therefore, "the plaintiff must 'prove more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.*

In order to survive dismissal, Plaintiffs must allege facts sufficient to show that:

> (i) [each] defendant made an intentional decision with respect to the conditions under which [he] was confined; (ii) those conditions put [him] at

[4] Only County Defendants bring the present motion to dismiss; Rahmani, Berlin, and Liberty neither bring nor join in the present motion and have instead answered the FAC. *See* Doc. No. 17. Accordingly, the Court only addresses the sufficiency of Plaintiffs' claims to the extent they are brought against County Defendants.

> substantial risk of suffering serious harm; (iii) [each] defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, [each] defendant caused [his] injuries.

*Gordon*, 888 F.3d at 1125.

*1. Defendant Macanlalay*

County Defendants argue that Plaintiffs fail to allege conduct by Macanlalay that amounts to objective deliberate indifference. Doc. No. 10-1 at 14–17.[5] Specifically, County Defendants argue that instead the "allegations regarding Macanlalay suggest a thorough intake and suicide screening was done, but that Macanlalay's professional judgment was that Morton was not at imminent risk of suicide" and that "[t]he fact that forty minutes later a psychologist may have reached a different conclusion and placed Morton in [Enhanced Observation Housing] is not sufficient to show Macanlalay was deliberately indifferent." Doc. No. 10-1 at 16.

Plaintiffs allege that Macanlalay failed to follow the County's medical suicide prevention policies, which "required [each] Defendant to house [Morton] in [ISP housing] as a 'high-risk' for suicide" based on Morton's "multiple high-risk factors coupled with pending withdrawals." *See* FAC ¶¶ 37–42, 49. Plaintiffs claim that the County's "correctional suicide prevention policy, J.5., sets forth a procedure delineating 'high-risk' suicide factors[,]" and that Morton displayed four out of five "high-risk" factors and three out of five "other risk" factors. *Id.* ¶¶ 38–41. Plaintiffs further allege that Macanlalay "was advised by the arresting officers that [Morton] made suicidal statements during arrest[,]" and that during his intake evaluation Morton advised Macanlalay "that he suffered from mood disorders and major depression[,]" that "he was recently dealing with the loss of his dear aunt and that he felt helpless and hopeless[,]"

---

[5] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

that "he had been drinking and taking Xanax and anticipated suffering from withdrawals[,]" and "that he had [actual] thoughts of killing himself." *Id.* ¶¶ 45–46.

Construing the allegations in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have plausibly alleged Macanlalay's deliberate indifference to Morton's serious medical needs under the Fourteenth Amendment for the purpose of surviving a motion to dismiss. *See Deloney v. County of Fresno*, No. 1:17-cv-1336-LJO-EPG, 2019 U.S. Dist. LEXIS 71089, at *18–21 (E.D. Cal. Apr. 26, 2019) (finding the plaintiff's allegations sufficient to defeat a motion to dismiss § 1983 claims against individual defendants where the defendants were aware of the decedent's high suicide risk through an evaluation that noted further steps needed to be taken to reduce his suicide risk and that the decedent told staff that he was hearing voices telling him to kill himself); *Palacios v. County of San Diego*, No. 20-cv-450-MMA (DEB), 2020 U.S. Dist. LEXIS 130385, at *14 (S.D. Cal. July 22, 2020) (finding the plaintiff plausibly pled deliberate indifference where jail staff "provid[ed] [food in] a plastic bag to [the decedent inmate] while insufficiently monitored given [the decedent's] recent suicide attempt and continuing suicidal ideations.").

Additionally, County Defendants argue that Plaintiffs fail to plead sufficient facts to establish causation against Macanlalay. Doc. No. 10-1 at 17–23. Specifically, County Defendants argue that Macanlalay's conduct, which occurred six days before Morton's death, cannot be the proximate cause of Morton's death and that Berlin's conduct breaks the chain of causation between Macanlalay's intake assessment and Morton's death. *Id.* at 17–21. County Defendants also argue that Morton's intentional act of suicide is a superseding cause of his death. *Id.* at 21–23.

"Traditional tort law defines intervening causes that break the chain of proximate causation" in § 1983 actions. *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996) (citation omitted). A defendant's conduct is not the proximate cause of an injury "if another cause intervenes and supersedes his liability for the subsequent events." *White v. Roper*, 901 F.2d 1501, 1506 (9th Cir. 1990). "However, foreseeable intervening

causes . . . will not supersede the defendant's responsibility." *Conn v. City of Reno*, 591 F.3d 1081, 1101 (9th Cir. 2009), *vacated*, 563 U.S. 915 (2011), *reinstated in part and vacated in part*, 658 F.3d 897 (9th Cir. 2011) (internal quotation marks and citation omitted).

Plaintiffs primarily rely on *Moriarty v. County of San Diego*, No. 17cv1154-LAB (AGS), 2019 U.S. Dist. LEXIS 46399 (S.D. Cal. Mar. 20, 2019), for the proposition that Macanlalay's conduct, which occurred six days before Morton's death and which preceded Berlin's suicide assessment, cannot be the proximate cause of Morton's death. Doc. No. 10-1 at 18. *Moriarty* concerned the § 1983 liability of two deputies and a nurse following an inmate's in-custody suicide. *Moriarty*, 2019 U.S. Dist. LEXIS 46399, at *11–17. The *Moriarty* plaintiff alleged the defendants were deliberately indifferent "for failing to recognize that [the decedent] was suicidal or communicate that fact to others at VDF," resulting in the decedent inmate's suicide. *Id.* at *12–13. The court ultimately dismissed the § 1983 claims against the three individual defendants, finding that what the three defendants "may have done or failed to do . . . was not a proximate cause of [the decedent's] death." *Id.* at *11–17. The court reasoned that none of the Defendants were "alleged to have had any involvement in the decision to leave [the decedent] unmonitored on the day he died" and that "[o]f the three, only [the nurse] had anything to do with where [the decedent] was placed." *Id.* at *12–13. The court also found that the nurse was not deliberately indifferent but rather made "[a] mistake about whether [the decedent] was suicidal"; she mistakenly concluded that the decedent was not suicidal because the decedent said "no" when the nurse asked if he was suicidal. *Id.* at *16–17. The court further found that "even if [the nurse]'s negligence or deliberate indifference had led her to classify [the decedent] as not suicidal and to fail to have him evaluated, that was corrected well before he died." *Id.* at *16–17. The court reasoned that because the decedent "died six days [after the nurse's assessment], after many changes of circumstance, [the nurse's] action or inaction cannot be the proximate cause of his death" and that "[n]othing in the FAC suggests [the nurse] would have had the authority to

overrule" later decisions by a sergeant and multi-disciplinary committee not to place the decedent in a safety cell. *Id.*

*Moriarty* is distinguishable from the instant case. Unlike the deputies in *Moriarty*, Macanlalay's role as an intake nurse was to screen detainees for suicide risk. *Compare* FAC ¶ 47 *with Moriarty*, 2019 U.S. Dist. LEXIS 46399, at *5–9, *14–16. And unlike the intake nurse in *Moriarty*, Plaintiffs allege that Macanlalay was aware that Morton had "actual thoughts of killing himself" and that Macanlalay's screening "set in motion a medical trajectory that was a substantial factor in causing [Morton]'s death." FAC ¶ 45–46, 49. Moreover, Plaintiffs allege that "given [Morton]'s multiple high-risk factors coupled with pending withdrawals, the policies *required* [each] Defendant to house [Morton] in [ISP] housing as a 'high-risk' for suicide[,]" *id.* ¶ 42 (emphasis added), and that "pursuant to MSD.P.8, the county's PSU policy . . . it was incumbent on [ ] Macanlalay to recommend admission to the PSU (Psychiatrist Security Unit) for acute psychiatric treatment given [Morton]'s 5150 hold the day prior, his active intent to kill himself, and his untreated mental health disorders." *Id.* ¶ 50. This is sufficient to survive Rule 12(b)(6) dismissal.

County Defendants' argument that Morton's intentional act of suicide was also a superseding cause that broke the causal chain is similarly unavailing. In support of their argument, County Defendants rely on *Cavanaugh v. County of San Diego*, No. 18-cv-02557-BEN-LL, 2020 U.S. Dist. LEXIS 212779 (S.D. Cal. Nov. 12, 2020). *See* Doc. No. 10-1 at 21–23. But *Cavanaugh* is inapposite. In *Cavanaugh*, "there [was] no allegation that any of the individual defendants in the case had *any* interaction with or information about" the decedent prior to the call from another deputy alerting the defendants that the decedent had hung himself. *Cavanaugh*, 2020 U.S. Dist. LEXIS 21277939, at *39 (emphasis added). By contrast, as noted above, Plaintiffs provide specific allegations regarding Macanlalay's interaction with Morton and her knowledge about Morton's recent mental health history. FAC ¶¶ 8, 45–51.

At this stage of litigation, the Court is satisfied that Plaintiffs plausibly allege causation against Macanlalay. *See Mendoza v. County of San Bernardino*, No. EDCV 19-1056 JGB (SHKx), 2020 U.S. Dist. LEXIS 79972, at *15 (C.D. Cal. Feb. 21, 2020) ("Providing some care is not an absolute bar to a medical indifference claim, especially if the care provided could have equally alerted Defendant to the existence of a substantial ongoing medical risk."); *Palacios*, 2020 U.S. Dist. LEXIS 130385, at *16 (finding causation sufficiently alleged at the motion to dismiss stage where the plaintiff alleged defendants provided a "means to commit suicide without proper supervision[,]" reasoning that "[i]f jail staff did not provide [plaintiff] with the plastic bag or did not leave him with the bag while insufficiently monitored, [plaintiff] would not have been able to commit suicide through a means provided by the jail."). Therefore, the Court **DENIES** County Defendants' motion on this basis.

2. *Defendant Alto*

County Defendants argue that Plaintiffs fail to allege conduct by Alto that amounts to objective deliberate indifference. Doc. No. 10-1 at 14–17. County Defendants posit that "Alto's subsequent opinion that Morton no longer met the criteria for EOH . . . does not suggest deliberate indifference." Doc. No. 10-1 at 16.

Plaintiffs allege that Defendant Alto "performed [Morton]'s follow-up suicide assessment." FAC ¶ 10. Alto "noted that [Morton] was facing serious criminal charges involving child cruelty" and that "the reason for her assessment is that [Morton] verbalized suicidal intent." *Id.* During the assessment, Morton "inquired about withdrawal medication[,] and reported "that he was struggling with symptoms of withdrawal and depression[,]" that "the effect of the withdrawals was the reason he attempted suicide on May 8, 2020[,]" and that "he was having a hard time dealing with the loss of his aunt." *Id.* As described above regarding Macanlalay, Plaintiffs allege that "given [Morton]'s multiple high-risk factors coupled with pending withdrawals, the policies required [each] Defendant to house [Morton] in [ISP housing] as a 'high-risk' for suicide." *Id.* ¶ 42.

Construing the allegations in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have pleaded sufficient facts to show Alto's deliberate indifference to Morton's serious medical needs under the Fourteenth Amendment for the purpose of surviving a motion to dismiss. *See Deloney*, 2019 U.S. Dist. LEXIS 71089, at *19–21.

County Defendants also argue that Plaintiffs fail to adequately plead causation against Alto on the same bases discussed above. Doc. No. 10-1 at 17–23. Specifically, County Defendants argue that Alto's conduct, which occurred five days before Morton's death, cannot be the proximate cause of Morton's death and that Berlin's conduct breaks the chain of causation between Alto's assessment and Morton's death. *Id.* at 17–21. County Defendants also argue that Morton's intentional act of suicide is a superseding cause of his death. *Id.* at 21–23.

The same analysis applied *supra* Section III.A.1 regarding causation as to Macanlalay applies to Alto. Although Alto is a mental health clinician rather than an intake nurse like Macanlalay, Plaintiffs allege that she was similarly required to flag Morton as a high-risk for suicide given her knowledge of, inter alia, Morton's "verbalized suicidal ideations, the self-harming attempt in front of the unknown deputy the day prior, his recent suicide attempt on May 8, 2020, and symptoms of withdrawal." *See* FAC ¶¶ 42, 57. At this stage of litigation, the Court is satisfied that Plaintiffs plausibly allege causation against Alto. *See Mendoza*, U.S. Dist. LEXIS 79972, at *15. Accordingly, the Court **DENIES** County Defendants' motion to dismiss Claim 1 against Alto.[6]

---

[6] County Defendants alternatively argue that, even if the FAC sufficiently alleges Macanlalay or Alto violated the Fourteenth Amendment, they are entitled to qualified immunity. Doc. No. 10-1 at 23–27. However, the Ninth Circuit has cautioned that a motion to dismiss on qualified immunity grounds puts the Court in the potentially untenable position of trying "to decide far-reaching constitutional questions on a nonexistent factual record[.]" *Kwai Fun Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004). The Court concludes that such a fact intensive determination is inappropriate at this stage of the proceedings. *See Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001) ("[A] Rule 12(b)(6) dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies."). Thus, the Court **DENIES** County Defendants' request for qualified immunity without prejudice.

**B. Fourteenth Amendment Medical Care – Municipal Liability Under § 1983**

In their second cause of action, Plaintiffs allege the County's suicide prevention and self-harm policy and training program is inadequate and violates the Fourteenth Amendment. FAC ¶¶ 75–106. Accordingly, Plaintiffs bring a § 1983 claim against the County and Liberty. *Id.*

"Section 1983 provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Municipalities cannot be held vicariously liable under § 1983 for the actions of their employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

To establish liability for governmental entities under *Monell*, a plaintiff must prove "(1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and[] (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (brackets omitted) (quoting *Plumeau v. Sch. Dist. No. 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

District courts have found that *Monell* allegations are sufficient for Rule 12(b)(6) purposes where the allegations "(1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency was obvious and that the constitutional injury was likely to

occur." *Soler v. County of San Diego*, No. 14-cv-2470-MMA (RBB), 2015 WL 13828659, at *4 (S.D. Cal. Mar. 19, 2015) (quoting *Lucas v. City of Visalia*, No. 1:09-cv-1015 AWI DLB, 2010 WL 1444667, at *4 (E.D. Cal. Apr. 12, 2010)).

County Defendants argue that "Plaintiffs cannot show that any County policy was the 'moving force' behind the defendants' alleged wrongful conduct while simultaneously claiming that same conduct violated County policy." Doc. No. 10-1 at 30. County Defendants also argue that the FAC fails to specify "*how* [the County's suicide prevention policies and protocols] are inadequate, or what changes would render them adequate." *Id.* at 29.

In their FAC, Plaintiffs cite to a variety of news articles detailing in-custody suicides of inmates in San Diego County. FAC ¶¶ 76–96. Plaintiffs allege that these articles illustrate that the County "continues to be deliberately indifferent by failing to adequately train its medical staff how to identify inmates that are a high-risk for suicide and how to properly treat and house those inmates on a continued basis." *Id.* ¶ 98. Plaintiffs further allege that "[t]he inadequate provisions identified by the [California] Grand Jury include shortcomings pertaining to the intake screening [of detainees], the interplay of self-harming conduct with mental health issues, and overall training in regards to treating and housing inmates facing on-going suicidal ideations." *Id.* ¶¶ 76, 78.

However, Plaintiffs fail to identify any specific policy provision, nonetheless explain how such a provision is deficient. While Plaintiffs incorporate a "Grand Jury Report," *see id.* ¶ 76 fn.3, 78, by reference, this is insufficient to provide County Defendants with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs cannot simply point to evidence of broad inadequacy; they must also explain how a challenged municipal policy or custom is deficient. *Soler*, 2015 WL 13828659, at *4. Accordingly, the Court **GRANTS** County Defendants' motion to dismiss Claim 2 against the County.

**C. Medical Malpractice / Gross Negligence**

In their third cause of action, Plaintiffs allege "Gross Negligence / Medical Malpractice" against all Defendants. FAC ¶¶ 107–18. "There is no separate, recognized cause of action for 'gross negligence.'" *Bradford v. Khamooshian*, No. 17-cv-02053-BAS-MDD, 2019 U.S. Dist. LEXIS 13423, at *11 (Jan. 28, 2019) (citing *Allen v. Woodford*, No. 05-cv-1104, 2006 WL 3762053, at *15 (E.D. Cal. 2006)). Thus, the Court construes the claim as one for medical malpractice.

"[I]n any medical malpractice action, the plaintiff must establish: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Hanson v. Grode*, 76 Cal. App. 4th 601, 606 (Cal. Ct. App. 1999).

The California Code of Civil Procedures sets forth the statute of limitations for medical malpractice:

> In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first.

Cal. Code. Civ. Proc. 340.5.

County Defendants argue that Plaintiffs' medical malpractice claim is time barred. Doc. No. 10-1 at 31. Specifically, County Defendants contend that the statute of limitations began to run on May 17, 2020—the date of Morton's death—and that Plaintiffs' filing date of August 9, 2021 in this case therefore exceeds the one-year time limit for filing. *Id.*

"When an issue as to the statute of limitations appears 'on the face of the complaint,' the party seeking tolling 'has an obligation to anticipate the defense and plead

facts to negative the bar.'" *Haaland v. Garfield Beach CVS*, No. LA CV18-01115 JAK (MRWx), 2018 U.S. Dist. LEXIS 237325, at *9 (C.D. Cal. June 6, 2018) (quoting *Union Carbide Corp. v. Super. Ct.*, 36 Cal. 3d 15, 25 (1984)). Here, the FAC is silent as to any delay between Morton's date of death and Plaintiffs' discovery of the alleged professional negligence.[7] Accordingly, the Court **GRANTS** County Defendants' motion to dismiss Claim 3 against Alto, Macanlalay, and the County.

**D. Wrongful Death / Survival**

In their fourth cause of action, Plaintiffs allege "Wrongful Death / Survival" against all Defendants. FAC ¶¶ 119–29. As an initial matter, wrongful death claims and survival claims have separate statutory bases. *See Chipman v. Nelson*, No. 2:11-cv-2770-TLN-EFB PS, 2015 U.S. Dist. LEXIS 121559, at *11, 33 (E.D. Cal. Sept. 11, 2015). "Unlike a wrongful death cause of action, a survival cause of action is not a new cause of action that vests in heirs on the death of the decedent, but rather is a separate and distinct cause of action which belonged to the decedent before death but, by statute, survives the event." *See id.* at *11 (quoting *Dela Torre v. City of Salinas*, No. C-09-00626 RMW, 2010 U.S. Dist. LEXIS 97725, at *19 (N.D. Cal. Sept. 17, 2010). As such, a wrongful death claim brought by a decedent's survivor is a separate and distinct cause of action from a personal injury claim brought by a decedent's estate, which survives his death pursuant to California's survival statute, California Code of Civil Procedure § 377.30.

---

[7] In their opposition to the motion to dismiss, Plaintiffs argue that the medical malpractice claim is timely brought because the Section 340.5 clock was tolled until Plaintiffs became aware of the wrongful cause leading to the injury. Doc. No. 13 at 25. Plaintiffs state that they "were ignorant of any potential negligence until they received [Morton]'s in-custody medical records on March 11, 2021." *Id.* at 26. However, the Court can only consider facts alleged in the complaint—not facts raised for the first time in opposition to a motion to dismiss. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss . . . The focus of any Rule 12(b)(6) dismissal—both in the trial court and on appeal—is the complaint.")).

Moreover, a wrongful death claim is not a "survival" claim; as it never belonged to a decedent, it cannot survive his death. *See* Cal. Code Civ. Proc. § 377.60.

It is unclear from the FAC what "survival" claim Plaintiffs seek to hold County Defendants liable for in their fourth cause of action. To be sure, in their fourth cause of action, Plaintiffs do not identify any claim that survives Morton's death. Accordingly, the Court **DISMISSES** the fourth cause of action to the extent Ms. Morton attempts to bring a "survival" claim on Morton's behalf.

Plaintiffs do, however, allege wrongful death as Morton's survivors. *See* FAC ¶¶ 119–29. "The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs." *Quiroz v. Seventh Ave. Center*, 140 Cal. App. 4th 1256, 1263 (2006) (internal citation omitted).

County Defendants argue that the wrongful death claim is derivative of Plaintiffs' negligence claim and so must be dismissed if the negligence claim is dismissed. *See* Doc. No. 10-1 at 32. However, "[a] wrongful death claim may be based on a federal claim of deliberate indifference under § 1983." *Estate of Miller v. County of Sutter*, 2020 WL 6392565, at *16 (E.D. Cal. Oct. 30, 2020) (citing *Villarreal v. County of Monterey*, 254 F. Supp. 3d 1168, 1190–91 (N.D. Cal. 2017)); *see also Deloney*, 2019 U.S. Dist. LEXIS 71089, at *28–29 (concluding that because Plaintiff alleged sufficient facts to state a § 1983 claim for deliberate indifference, "it follows that Plaintiff has sufficiently pled the [Cal. Code Civ. Proc.] § 377.60 wrongful death claim") (additional citations omitted).

In this case, Plaintiffs' § 1983 claims against Defendants Macanlalay and Alto survive County Defendants' motion to dismiss and therefore can plausibly serve as a basis for Plaintiffs' wrongful death claim. However, because the Court dismisses Plaintiffs' § 1983 and medical malpractice claims against the County *supra*, Plaintiffs' wrongful death claim against the County lacks a plausible basis in the FAC.

Accordingly, to the extent Claim 4 is brought against Defendants Macanlalay and Alto, the Court **DENIES** County Defendants' motion to dismiss. However, the Court **GRANTS** County Defendants' motion to dismiss Claim 4 as to the County.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** County Defendants' motion to dismiss. In particular, the Court **GRANTS** the motion and **DISMISSES** Claims 2, 3, and 4 as described above and with leave to amend. *See Knappenberger*, 566 F.3d at 942. The Court **DENIES** the remainder of County Defendants' motion. If Plaintiffs wish to file a second amended complaint curing the deficiencies noted herein, they must do so on or before **February 7, 2022**.

**IT IS SO ORDERED**.

Dated: January 10, 2022

HON. MICHAEL M. ANELLO
United States District Judge