**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARILYN MORTON and DEAN MORTON,<br><br>                           Plaintiffs,<br>v.<br>COUNTY OF SAN DIEGO, et al.,<br>                           Defendants. | Case No. 21-cv-1428-MMA (KSC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. No. 21] |

Marilyn Morton ("Ms. Morton"), as successor in interest to Decedent Joseph Earl Morton's ("Mr. Morton") estate, as well as Ms. Morton and Dean Morton as individuals (collectively, "Plaintiffs"), bring this civil rights action pursuant to 42 U.S.C. § 1983 against the County of San Diego (the "County"), Samantha Macanlalay ("Macanlalay"), Bijan Rahmani ("Rahmani"), Hosanna Alto ("Alto"), Matthew Berlin ("Berlin"), Liberty Healthcare ("Liberty"), and Does 1–10. *See* Doc. No. 20 ("Second Amended Complaint" or "SAC"). Defendants Macanlalay, Alto, and the County ("County Defendants") move to dismiss the second, third, fourth, and fifth causes of action against them pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. No. 21. County Defendants also ask the Court to strike the paragraph of the SAC that pleads punitive damages against the

County. *See* SAC ¶ 109. Plaintiffs filed an opposition to County Defendants' motion, to which County Defendants replied. *See* Doc. Nos. 22, 23. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 25. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** County Defendants' motion to dismiss.

## I. BACKGROUND[1]

The Court previously granted in part and denied in part County Defendants' motion to dismiss the First Amended Complaint. Doc. No. 18 ("FAC Order"). A detailed recitation of the background of this case can be found in the FAC Order, which the Court incorporates by reference here. For the purpose of this motion, the Court provides the following summary.

On May 8, 2020, Mr. Morton attempted suicide and was placed under a 72-hour welfare hold pursuant to Cal. Welf. & Inst. Code § 5150. SAC ¶ 4. Mr. Morton was released on May 10, 2020, and on May 11, 2020, attempted to commit a robbery. *Id.* ¶¶ 4–5. Mr. Morton was arrested by County Sheriff's deputies and booked into custody at Vista Detention Facility ("VDF"). *Id.* ¶ 5. During his arrest, Mr. Morton made suicidal statements to the arresting deputies, who relayed the information to intake staff, including Defendant intake nurse Macanlalay. *Id.* During his intake evaluation, Mr. Morton informed Macanlalay that he had actual suicidal thoughts, which she recorded in her notes. *Id.* ¶¶ 6–8. Nonetheless, Macanlalay did not flag Mr. Morton as a suicide risk or elect to house Mr. Morton in suicide safety housing ("ISP Housing") or recommend him for further assessment. *Id.* ¶ 8.

Later that day, Mr. Morton attempted to harm himself during processing and was taken to medical. *Id.* ¶ 9. Defendant psychologist Rahmani performed a suicide assessment following the incident, and despite recording Mr. Morton's suicide attempt,

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the FAC. *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

self-harm, and suicidal intent, flagged Mr. Morton as a low risk for suicide. *Id.*

The following day, on May 12, 2020, Mr. Morton was seen by Defendant mental health clinician Alto. *Id.* ¶ 10. Alto assessed Mr. Morton as a low risk of suicide and cleared him for mainline housing. *Id.* ¶ 11. Due to the COVID-19 housing protocol, Mr. Morton was to quarantine for ten (10) days in an isolation cell. *Id.* ¶ 12.

That same day, Mr. Morton was later seen by Defendant psychologist Berlin. *Id.* ¶ 13. After the assessment, Berlin sent Mr. Morton back to housing. *Id.* ¶ 14.

On May 17, 2020, Mr. Morton was found dead of suicide. *Id.* ¶ 16.

In the Second Amended Complaint, Plaintiffs reallege that Defendants improperly assessed Mr. Morton as a "low risk" of suicide and failed to place him in ISP Housing, which ultimately provided Mr. Morton the means and opportunity to commit suicide. *See, e.g., id.* ¶ 17. Plaintiffs bring five causes of action. First, Ms. Morton, as Mr. Morton's successor in interest, brings a Fourteenth Amendment medical care claim against Macanlalay, Alto, Rahani, and Berlin pursuant to 42 U.S.C. § 1983. *Id.* at 11. Second, Plaintiffs bring a Fourteenth Amendment *Monell* claim against the County and Liberty pursuant to 42 U.S.C. § 1983. *Id.* at 22. Third, Plaintiffs bring a state law claim for negligence against all Defendants. *Id.* at 33. Fourth, Ms. Morton, as Mr. Morton's successor in interest, brings a "survival action" claim against all Defendants pursuant to California Code of Civil Procedure § 377.30. *Id.* at 35. Fifth, Plaintiffs bring a wrongful death claim against all Defendants pursuant to California Code Civil Procedure § 377.60. *Id.* at 37.

## II. Legal Standard

A Rule 12(b)(6) motion tests the legal sufficiency of the claims made in the complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is provided "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, plaintiffs

must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 570. The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). A court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

### III. D<span style="font-variant:small-caps">ISCUSSION</span>[2]

County Defendants move to dismiss the second, third, fourth, and fifth causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6). County Defendants also move to strike Plaintiffs' request for punitive damages against the County. The Court addresses each claim in turn.

---

[2] Only County Defendants bring the present motion to dismiss; Rahmani, Berlin, and Liberty neither bring nor join in the present motion and have instead answered the FAC. *See* Doc. No. 23. Accordingly, the Court only addresses the sufficiency of Plaintiffs' claims to the extent they are brought against County Defendants.

### A. Fourteenth Amendment *Monell* Claim

In their second cause of action, Plaintiffs bring a Fourteenth Amendment *Monell* claim against the County. The SAC "hedges on what theory of *Monell* liability it relies on," identifying a lack of written policy, longstanding unwritten practice or custom, as well as failure to train. *Brown v. Cty. of Mariposa*, No. 1:18-cv-01541-LJO-SAB, 2019 U.S. Dist. LEXIS 76405, at *29 (E.D. Cal. May 3, 2019). Generally speaking, Plaintiffs allege that the County's policy and training on suicide prevention and self-harm is inadequate. SAC at ¶¶ 76–112. However, Plaintiffs fail to plead their claim sufficiently to put County Defendants on notice of the basis for *Monell* liability. For this reason alone, Plaintiffs' *Monell* claim is subject to dismissal with leave to amend.

"Section 1983 provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Municipalities cannot be held vicariously liable under § 1983 for the actions of their employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 694 (1978). Instead, pursuant to *Monell*, municipalities may be liable under § 1983 when: (1) "the acts in question were undertaken pursuant to official policy or custom," *Hopper v. City of Pasco*, 241 F.3d 1067, 1082 (9th Cir. 2001); (2) a municipality has a "policy of inaction and such inaction amounts to a failure to protect constitutional rights," *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); or (3) when a municipality's failure to train its employees "amounts to deliberate indifference to the rights of persons with whom those employees are likely to come into contact," *Lee v. City of L.A.*, 250 F.3d 668, 681 (9th Cir. 2001) (quoting *Canton*, 489 U.S. at 388–89) (quotation marks omitted).

In the FAC Order, the Court dismissed Plaintiffs' *Monell* claim with leave to amend because Plaintiffs "faile[ed] to identify any specific policy provision," and did not allege how any such policy was deficient. Doc. No. 18 at 14. County Defendants argue that the Second Amended Complaint is similarly deficient and still fails to identify a policy, practice, or custom. Doc. No. 21-1 at 15.

1.  *Policy/Custom*

Plaintiffs again fail to plead a written policy or custom that amounts to formal policy.[3] For this reason, the Court again **DISMISSES** Plaintiffs' *Monell* claim to the extent it is premised upon an explicit policy or custom. Because Plaintiffs have failed to cure the deficiency in this respect, and because they have apparently abandoned this theory of liability,[4] the Court does so **without leave to amend**.

---

[3] Plaintiffs elsewhere plead the County's "medical suicide prevention policy, M.S.D. S. 10," "MSD.M 13," "correctional suicide prevention policy, J.5," and "MSD.P.8." SAC ¶¶ 38–42, 51. However, Plaintiffs do not properly identify these policies and their content for *Monell* purposes, nor do Plaintiffs explain how these policies are unconstitutionally inadequate. It is apparent that these policies relate to Plaintiffs' § 1983 direct liability claim with respect to the individual Defendants' alleged failure to properly classify Mr. Morton as high risk for suicide and failure to house him appropriately under that policy. Accordingly, they are not express policies for *Monell* purposes.

[4] According to their opposition,

> Plaintiffs do not allege that the County maintained specific policy or practice that directed medical staff not to timely follow-up with inmates seeking psychiatric help, nor do Plaintiffs allege the County maintained a direct policy not to follow-up with inmates released from a safety cell or EOH. Rather, Plaintiffs allege the County failed to implement procedures and standards that ensured inmates would be followed-up with after seeking psychiatric services or after being released from a safety cell or EOH. Plaintiffs also allege the County failed to implement a policy requiring a mental health professional to conduct the mental health intake questions to ensure incoming inmates with mental health issues are properly assessed, treated, and housed. Lastly, Plaintiffs also allege the County failed to train the contracted mental health providers on its own ISP policies knowing that Liberty did not provide this training.

Doc. No. 22 at 12.

### 2. Lack of Policy—Policy/Custom of Inaction

As mentioned *supra* note 4, Plaintiffs bring their *Monell* claim on the basis that the County lacked sufficient suicide prevention policies. In this respect, Plaintiffs allege "three key policy deficiencies": (1) failure to task a mental health professional, as opposed to a registered nurse, to perform intake evaluations, SAC ¶ 79; (2) lack of follow-up after an inmate requests or receives mental health services, *id.* ¶ 80; and (3) lack of follow-up after an inmate is released from ISP Housing, *id.* ¶ 81.

Under *Monell*, the County can be held liable under § 1983 for policies of action as well as policies of inaction. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012).

> A policy of inaction or omission may be based on failure to implement procedural safeguards to prevent constitutional violations. *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992). To establish that there is a policy based on a failure to preserve constitutional rights, a plaintiff must show, in addition to a constitutional violation, "that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right[,]" *Id*. at 1474 (quoting *Canton*, 489 U.S. at 389), and that the policy caused the violation, "in the sense that the [municipality] could have prevented the violation with an appropriate policy." *Gibson*, 290 F.3d at 1194.

*Id.* With respect to a policy of inaction, to show deliberate indifference, Plaintiff must allege that the County "was on actual or constructive notice that its omission would likely result in a constitutional violation"; only then does the omission reflect a deliberate or conscious choice to violate the constitution. *Id.* at 1145 (citations omitted). With respect to the causation requirement, "[t]he plaintiff must also demonstrate that, through its deliberate conduct, the [entity] was the 'moving force' behind the injury alleged," *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997), such that the plaintiff must show "that the policy caused the violation in the sense that the municipality could have prevented the violation with an appropriate policy." *Tsao*, 698 F.3d at 1143 (internal quotation omitted).

With respect to the mental health professional piece of their claim, Plaintiffs fail to adequately plead that the County had either constructive or actual notice that the failure to designate a mental health professional, as opposed to a registered nurse, for intake would result in a constitutional violation.  Nor do Plaintiffs adequately plead that Mr. Morton's Fourteenth Amendment right to adequate medical care would have been preserved had the County adopted such a policy.  The Court finds that Plaintiffs cannot adequately allege causation based upon the facts as pleaded—namely, that Mr. Morton was seen by mental health professionals and nonetheless not appropriately designated or housed.  Accordingly, the Court **DISMISSES** Plaintiffs' *Monell* claim in this respect **without leave to amend**.  *See Knappenberger*, 566 F.3d at 942.

With respect to Plaintiffs' *Monell* claim premised upon the lack of follow-up with inmates after they are released from ISP Housing, Plaintiffs fail to plead causation.  On the facts as alleged, Mr. Morton was never placed into ISP Housing—this is the underlying basis for Plaintiffs' direct liability § 1983 claim.  Accordingly, Plaintiffs cannot plead that such a policy would have prevented Mr. Morton's constitutional violation.  The Court therefore **DISMISSES** Plaintiffs' *Monell* claim on this basis as well **without leave to amend**.  *See id.*

As to the remaining "policy deficiency," the Court finds that Plaintiffs adequately allege a custom of inaction with respect to the failure to properly monitor suicidal inmates such that the lack of policy plausibly amounts to deliberate indifference by the County.

"While the Constitution does not outline a detailed suicide prevention policy that government entities must implement, the Eighth and Fourteenth Amendments nonetheless require custodians of inmates to provide adequate mental health care." *NeSmith v. Cty. of San Diego*, No. 15-cv-0629-JLS (JMA), 2016 U.S. Dist. LEXIS 123441, at *14 (S.D. Cal. Sep. 12, 2016) (citing *Doty v. Cnty. of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994)).  As such, a defendant is liable under § 1983 for violating that right

if the defendant was deliberately indifferent to the incarcerated individual's serious mental health care need. *See id.*; *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

Plaintiffs' Second Amended Complaint describes a number of previous suicides and events leading up to them in San Diego County jails, including VDF. SAC ¶¶ 91–92, 94–102. The Court will not recite the details here. It suffices to say that Plaintiffs identify more than 10 suicides in local County custody in the few years preceding Mr. Morton's death that are plausibly alleged to have occurred due to the County's failure to monitor suicidal inmates. SAC ¶¶ 91–92, 94–102. The SAC also incorporates a plethora of news articles detailing instances of suicide in County jails and the County's overall high suicide rate, SAC ¶¶ 83, 85, 90, 93, as well as a 2017 Grand Jury Report, SAC ¶¶ 83, 93, and comments from the County's Board of Supervisors, SAC ¶ 87, all condemning the County's mental health care deficiencies in jail.[5] These allegations could plausibly have given policymaking County officials notice of a pattern of deliberate indifference to inmates' suicidal ideations by County employees, and that this deliberate indifference was a result of the failure by the County to enact a policy to counteract its employees' "custom of responding to suicidal ideations apathetically." *NeSmith*, 2016 U.S. Dist. LEXIS 123441, at *19–20.

In sum, the totality of Plaintiffs' allegations provides sufficient detail of circumstances predating Mr. Morton's suicide that, if proven, could plausibly have given the County notice that, absent corrective action, it would continue to inadvertently violate inmates' Fourteenth Amendment rights by failing to provide adequate mental health care by not monitoring suicidal inmates. Accordingly, the Court **DENIES** County Defendants' motion to dismiss Plaintiffs' *Monell* claim in this respect.

---

[5] With respect to Plaintiffs' *Monell* claim for policy and custom of inaction and the County's notice of the deficiency, the Court disregards all allegations pertaining to events that took place after Mr. Morton's death. *See, e.g.*, SAC ¶ 86.

### 3. Failure to Train

Plaintiffs also allege that the County "fails to adequately train its medical staff how to identify inmates that are a high-risk for suicide and how to properly treat and house those inmates on a continued basis." SAC ¶ 104. As noted above, "[f]ailure to train an employee who has caused a constitutional violation can be the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the employee comes into contact." *Long v. City of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (citing *Canton*, 489 U.S. at 388). This standard is met when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality can a city be liable for such a failure under § 1983." *Id.* at 389. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal citations omitted).

As outlined above, the Court finds that Plaintiffs have sufficiently alleged facts regarding prior similar incidents to plausibly satisfy the "deliberate indifference" standard of their *Monell* claim. Moreover, Plaintiffs plausibly plead that the County's one six-hour training course is obviously insufficient in light of the history of prior incidents, and that it was the moving force behind Mr. Morton's death. *See* SAC ¶ 107. Accordingly, to the extent County Defendants seek dismissal of Plaintiffs' *Monell* claim premised upon failure to train, the Court **DENIES** their motion.

**B.     Negligence (Medical Malpractice/Professional Negligence)**

In their third cause of action, Plaintiffs bring a negligence claim against all Defendants. SAC at 33. As the Court previously recognized, and Plaintiffs acknowledge, this claim is for medical malpractice, also called professional negligence, under California law. *See* Doc. No. 22 at 16; FAC Order at 15.

   *1.   Statute of Limitations*

The statute of limitations for a professional negligence claim is "three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." Cal. Code. Civ. Proc. § 340.5. County Defendants again argue that Plaintiffs' claim is time barred because Mr. Morton died on May 17, 2020 and yet Plaintiffs did not initiate this action until August 9, 2021—more than one year later. Doc. No. 21-1 at 18.

As the Court previously noted, "[w]hen an issue as to the statute of limitations appears 'on the face of the complaint,' the party seeking tolling 'has an obligation to anticipate the defense and plead facts to negative the bar.'" *Haaland v. Garfield Beach CVS*, No. LA CV18-01115 JAK (MRWx), 2018 U.S. Dist. LEXIS 237325, at *9 (C.D. Cal. June 6, 2018) (quoting *Union Carbide Corp. v. Super. Ct.*, 36 Cal. 3d 15, 25 (1984)). In the FAC Order, the Court found that the FAC was "silent as to any delay between Morton's date of death and Plaintiffs' discovery of the alleged professional negligence" and dismissed the claim accordingly. FAC Order at 16.

In their Second Amended Complaint, Plaintiffs have added one paragraph addressing the timeliness of their professional negligence claim. They allege:

> Though Joey died on May 17, 2020, his family was not aware of any potential medical negligence at that time. In fact, following Joey's suicide, his family requested Joey's correctional medical records for over six months. Each request was meet with the county's refusal to provide the requested medical records unless accompanied by an order from a probate court. After retaining legal representation, the county finally produced Joey's medical records on March 11, 2021. Soon after that, Plaintiff's counsel discovered the negligent conduct alleged herein.

SAC ¶ 125.

Plaintiffs now appear to invoke the discovery rule to cure their facial untimeliness. With respect to a professional negligence claim, "[d]iscovery is defined by the California courts as the point at which the plaintiff is aware of both the physical manifestation of the

injury *and* suspects its negligent cause." *Katz v. Children's Hosp.*, 28 F.3d 1520, 1525–26 (9th Cir. 1994) (citing *Dolan v. Borelli*, 16 Cal. Rptr. 2d 714, 716 (Ct. App. 1993) (emphasis in original)); *see also Timmel v. Moss*, 803 F.2d 519, 521 (9th Cir. 1986) ("The California courts interpret 'injury,' as it is used in section 340.5, to mean both the physical injury *and its negligent cause*.") (emphasis in original).  "The plaintiff must be aware of *facts* sufficient to put a reasonable person on inquiry that negligence was the cause of the injury; plaintiff need not, however, be aware that a legal cause of action exists before the statute of limitations begins to run." *Timmel*, 803 F.2d at 521 (emphasis in original).

> In order to rely on the discovery rule for delayed accrual of a cause of action, a plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence. In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to show diligence; conclusory allegations will not withstand demurrer.

*Fox v. Ethicon Endo-Surgery, Inc.*, 27 Cal. Rptr. 3d 661, 668 (2005) (internal quotation marks and citation omitted).

Here, Plaintiffs adequately plead that they ultimately discovered the facts suggesting that negligence was the cause of Mr. Morton's death when they obtained Mr. Morton's in-custody records on March 11, 2021.  SAC ¶125.  Further, they adequately allege that they made a reasonable attempt to uncover these facts by seeking the records for months prior.  *Id.*  While County Defendants' motion raises valid questions about the reasonableness of Plaintiffs' timing and discovery, it is not clear from the face of the Second Amended Complaint that Plaintiffs can prove no set of facts that would establish the timeliness of their claim.  *See Von Saher v. Norton Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010); *see also Timmel*, 803 F.2d at 522 (explaining that the reasonableness of a delayed discovery presents a question of law only "when the evidence establishes beyond dispute that the plaintiff has failed to bring the

action within one year after notice of its existence"). Such an issue is better left for resolution at the summary judgment stage. The Court therefore **DENIES** County Defendants' motion in this respect.

### 2. *Statutory Immunity*

Next, County Defendants argue that they are statutorily immune from liability under the California Government Code. Doc. No. 21-1 at 19. As County Defendants correctly note, couched within Plaintiffs' professional negligence claim is a reference to California Government Code § 845.6. SAC ¶ 117. Section 845.6 provides:

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

Cal. Gov't Code § 845.6.

As Plaintiffs appear to concede, professional negligence and failure to summon are two separate claims. *See Castaneda v. Dep't of Corr. & Rehab.*, 151 Cal. Rptr. 3d 648, 656 (Ct. App. 2013). Plaintiffs can proceed with both, but the pleading as it stands is undoubtedly confusing. Due to Plaintiffs' failure to provide County Defendants with fair notice of the substance of this claim, it too is subject to dismissal, but with leave to amend. Plaintiffs are directed to state these claims as separate causes of action in their third amended complaint, consistent with the Court's discussion below.

### a. Professional Negligence

It is well-settled that the County cannot be held vicariously liable for the professional negligence of its employees.[6] *See, e.g.*, *Flores v. Natividad Med. Ctr.*, 238

---

[6] Although the claim as it pertains to Liberty is not within the scope of the present motion, the Court reminds Plaintiffs that "in circumstances where a public entity would not be liable for the acts of its

Cal. Rptr. 24, 29 (Ct. App. 1987); *Nelson v. California*, 188 Cal. Rptr. 479 (Ct. App. 1982); *see also Resendiz v. Cty. of Monterey*, No. 14-CV-05495-LHK, 2015 U.S. Dist. LEXIS 86034, at *13 (N.D. Cal. June 30, 2015).  California Government Code § 844.6 establishes the general rule that a public entity cannot be held liable for injuries to prisoners, subject to limited statutory exceptions.  There is no exception for professional negligence.  As such, Plaintiffs' citation to California Government Code § 845.6 does not abrogate the County's statutory immunity from suit as to Plaintiffs' professional negligence claim.  As the California Court of Appeal has succinctly put it: "Section 845.6 is very narrowly written to authorize a cause of action against a public entity for its employees' failure to summon immediate medical care only, not for certain employees' malpractice in providing that care." *Castaneda*, 151 Cal. Rptr. 3d at 662.  Accordingly, the Court **DISMISSES** Plaintiffs' professional negligence claim to the extent it is brought against the County **without leave to amend**.

        b.    <u>Failure to Summon</u>

As noted above, California Government Code § 845.6 provides that a public entity or public employee may be liable for an injury proximately caused to a prisoner where: (1) "the employee is acting within the scope of his [or her] employment"; (2) "the employee knows or has reason to know that the prisoner is in need of immediate medical care"; and (3) "he [or she] fails to take reasonable action to summon such medical care." *Villarreal v. Cty. of Monterey*, 254 F. Supp. 3d 1168, 1187 (N.D. Cal. 2017).  Although not directly addressed in the motion to dismiss, the Court finds that Plaintiffs adequately plead a claim for failure to summon medical care against County Defendants.  "A suicidal state is a serious and obvious medical condition requiring immediate care." *M.B. v. Cal. Dep't of Corr. & Rehab.*, No. 2:17-cv-2395 WBS DB, 2018 U.S. Dist. LEXIS

---

employee, Cal. Gov't Code § 815.4 does not operate to broaden the scope of the public entity's liability with respect to independent contractors." *Resendiz v. Cty. of Monterey*, No. 14-CV-05495-LHK, 2015 U.S. Dist. LEXIS 86034, at *14 (N.D. Cal. June 30, 2015).

1 | 143821, at *22 (E.D. Cal. Aug. 23, 2018). Further, Plaintiffs' factual allegations show that all of the individual Defendants were acting within the scope of their employment at all relevant times. *See, e.g.*, SAC ¶¶ 6, 9, 10, 13. Plaintiffs additionally allege that that the individual Defendants knew or had reason to know that Mr. Morton was in need of immediate medical care, given Mr. Morton's statements and conduct, and that the individual Defendants failed to summon such medical care. SAC ¶¶ 117–118. As such, this claim may proceed against the individual County Defendants as well as the County pursuant to California Government Code § 845.6.

California Government Code § 855.8, which immunizes governmental entities and their employees for failure to diagnose or prescribe treatment, and § 856, immunizing the determination of whether to confine for mental illness or addiction, do not provide immunity to defendants who fail to summon medical care entirely—which is adequately alleged here. *See Johnson v. Cty. of L.A.*, 191 Cal. Rptr. 704, 717 (Ct. App. 1983). Accordingly, the Court **DENIES** County Defendants' motion on this basis.

**C.     "Survival Action" Claim**

In their FAC, Plaintiffs alleged a claim for "Wrongful Death/Survival." Doc. No. 8 at 32. In the FAC Order, the Court reminded Plaintiffs that a claim for wrongful death is distinct from claims which may proceed after death via California Code of Civil Procedure § 377.30. FAC Order at 16. In an apparent effort to remedy this flaw, Plaintiffs now bring a "Survival Action" claim separate from and in addition to a claim for wrongful death. SAC at 35.

Put simply, there is no such thing as an independent "Survival Action" claim. A decedent may proceed with a cause of action, through his successor in interest, that survives his death pursuant to section 377.30, but the survival statute does not provide an independent cause of action. As the Supreme Court has explained:

> Wrongful-death statutes are to be distinguished from survival statutes. The latter have been separately enacted to abrogate the common-law rule that an action for tort abated at the death of either the injured person or the tortfeasor.

> Survival statutes permit the deceased's estate to prosecute any claims for personal injury the deceased would have had, but for his death. They do not permit recovery for harms suffered by the deceased's family as a result of his death.

*Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 575 n. 2 (1974).

Plaintiffs' failure to put Defendant on adequate notice of the substance of this claim requires its dismissal. However, the claim is substantively subject to dismissal without leave to amend for the reasons discussed below.

It appears that Plaintiffs seek to use Claim 4 as a vehicle to bring their first three claims on behalf of Mr. Morton pursuant to the survival statute. SAC ¶ 127 ("The causes of action alleged above each survive Joey's death."). This is neither necessary nor appropriate.

Plaintiffs' first cause of action for inadequate medical care under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 may only proceed as a survival claim. *See Tatum v. City & Cty. of S.F.*, 441 F.3d 1090, 1093 n.2 (9th Cir. 2006) ("A claim under 42 U.S.C. § 1983 survives the decedent if the claim accrued before the decedent's death, and if state law authorizes a survival action."). Plaintiffs' pleading is correct in this respect— Claim 1 is brought only by Ms. Morton as Mr. Morton's successor in interest. SAC at 11. Accordingly, to the extent Claim 4 is premised on Mr. Morton's Fourteenth Amendment direct liability claim, it is unnecessarily duplicative of Claim 1, which is a proper survival claim. Accordingly, the Court **DISMISSES** Claim 4 in this respect **without leave to amend**.

Plaintiffs' second cause of action for *Monell* liability pursuant to 42 U.S.C. § 1983 also may only proceed as a survival claim. *Tatum*, 441 F.3d at 1093 n.2. However, the Second Amended Complaint indicates that it is brought on behalf of all Plaintiffs. *See* SAC at 22. To the extent Plaintiffs bring Claim 2 individually, the Court **DISMISSES** the claim **without leave to amend**. Moreover, as Mr. Morton's surviving *Monell* claim

is already encompassed by Claim 2, Claim 4 is duplicative in this respect and therefore the Court **DIMISSES** it on this basis **without leave to amend**.

Plaintiffs' third cause of action for professional negligence, and as discussed above, failure to summon, may only proceed as survival claims. Mr. Morton's personal injury claims premised upon professional negligence and failure to summon survive his death. *See Ruiz v. Podolsky*, 114 Cal. Rptr. 3d 263, 273 n.3 (Cal. 2010) ("A decedent's personal injury action does indeed survive the decedent's death and may be brought by his or her estate."). Moreover, Plaintiffs do not allege that any of the Defendants owed them, individually, any duty, and the facts of this case foreclose the ability for Plaintiffs to plausibly plead such claims. Accordingly, the Court **DISMISSES** Claim 3 to the extent Plaintiffs bring it as individuals **without leave to amend**. Moreover, as Claim 4 is duplicative of Mr. Morton's surviving personal injury claims, the Court **DISMISSES** Claim 4 on this basis as well **without leave to amend**.

With this in mind, there is nothing of substance left to support a separate claim for "survival." Accordingly, the Court **DISMISSES** Plaintiffs' fourth cause of action **without leave to amend**.

Relatedly, the issue of Ms. Morton's standing to bring Mr. Morton's survival claims is again an issue. "The failure to file the required declaration does not mean the case must be dismissed; noncompliance may be cured." *Estate of Miller v. County of Sutter*, No. 12-cv-03928-MEJ, 2020 U.S. Dist. LEXIS 204517, at *13 (E.D. Cal. Oct. 30, 2020) (citing *Frary v. County of Marin*, 81 F. Supp. 3d 811, 846 (N.D. Cal. 2015)).

According to their opposition, Plaintiffs mistakenly attached the wrong declaration to the SAC. *See* Doc. No. 22 at 19. Nonetheless, they assert that it meets the requirements of California Code of Civil Procedure § 377.32. *Id.* Plaintiffs also attach an additional declaration to their opposition. Doc. No. 22 at 29–30.

Ms. Morton's declaration attached to Plaintiffs' opposition, along with Mr. Morton's death certificate, satisfy the standing requirements of sections 377.32(a) and (c). Accordingly, the Court **DIRECTS** Plaintiffs to append Ms. Morton's September

22, 2020 declaration, *see* Doc. No. 22 at 29–30, along with Mr. Morton's death certificate, *see id.* at 32, to their third amended complaint in order to adequately establish Ms. Morton's standing as Mr. Morton's successor in interest.

### D.  Wrongful Death

Fifth, Plaintiffs as individuals bring a wrongful death claim pursuant to California Code of Civil Procedure § 377.60.  SAC at 37.  "The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs."  *Quiroz v. Seventh Ave. Center*, 45 Cal. Rptr. 3d 222 (Ct. App. 2006) (internal citation omitted).  Plaintiffs plausibly plead a claim for wrongful death premised upon a failure to summon against all Defendants pursuant to California Government Code § 845.6.  SAC ¶ 139.  County Defendants provide no explanation or legal authority for the proposition that a wrongful death claim cannot be premised upon the failure to summon.  Failure to summon is, after all, a codified claim for negligence: that a defendant had the duty to summon medical care and breached this duty by failing to do so.  Moreover, a review of California caselaw reveals that the position is untenable.  *See Lucas v. Cty of Los Angeles*, 54 Cal. Rptr. 2d 655 (Ct. App. 1996); *Hart v. Cty. of Orange*, 62 Cal. Rptr. 73 (Ct. App. 1967); *see also Villarreal*, 254 F. Supp. 3d at 1191 ("Both § 1983 and § 845.6 can form the basis of a claim for wrongful death."); *Resendiz*, 2015 U.S. Dist. LEXIS 86034, at *23 ("[T]he Court concludes that Plaintiffs may state claims for . . . wrongful death pursuant to Cal. Gov't Code § 845.6.").

Because Plaintiffs' wrongful death claim is properly premised upon a plausible California Government Code § 845.6 failure to summon claim, County Defendants' arguments related to Plaintiffs' professional negligence claim and § 1983 claims are inapposite.  Accordingly, the Court **DENIES** County Defendants' motion to dismiss Plaintiffs' wrongful death claim.

## IV. MOTION TO STRIKE

County Defendants also move to strike Plaintiff's request for punitive damages against the County under § 1983. *See* Doc. No. 21-1 at 17. Defendant argues that punitive damages are not recoverable against a municipality under § 1983. *Id.*

While County Defendants do not cite any legal authority for their request, the Court notes that "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010).

That said, it is well-established that public entities are immune from punitive damages under § 1983 and California law. *City v. Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (holding that "a municipality is immune from punitive damages under 42 U.S.C. § 1983"); *Westlands Water Dist. v. Amoco Chem. Co.*, 953 F.2d 1109, 1113 (9th Cir. 1992) ("California Government Code § 818 bars any award of punitive damages against a public entity."); Cal. Gov't Code § 818 ("Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant."). Accordingly, to the extent County Defendants seek to dismiss Plaintiffs' request for punitive damages against the County, *see* SAC ¶ 109, the Court **GRANTS** their motion and **DISMISSES** Plaintiffs' claims for punitive damages against the County **without leave to amend**.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** County Defendants' motion to dismiss. In particular, the Court **GRANTS** the motion and **DISMISSES** the following **without leave to amend**: (1) Claim 2 to the extent it is brought by Plaintiffs individually and to the extent it is premised upon: (a) an express policy; (b) the absence of policy designating mental health professionals as intake evaluators; and (c) the absence of policy mandating follow-up care after release from ISP Housing; (2) Claim 3 for professional negligence to the extent it is brought by Plaintiffs

individually and to the extent it is bought against the County; (3) Claim 4 in its entirety; and (4) Plaintiffs' request for punitive damages against the County. The Court **DENIES** the remainder of County Defendants' motion.

Plaintiffs must file a third amended complaint curing the deficiencies noted herein, on or before **June 3, 2022**. Plaintiffs are **DIRECTED** to attach the correct declaration, as discussed above, to establish Ms. Morton's standing to bring Mr. Morton's survival claims. Plaintiffs are further **DIRECTED** to state their claims for professional negligence and failure to summon pursuant to California Government Code § 846.6 as separate causes of action.

Plaintiffs' third amended complaint will be the operative pleading as to all defendants, and therefore all defendants must then respond within the time prescribed by Federal Rule of Civil Procedure 15. Any defendants not named and any claim not re-alleged will be considered waived. *See* CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

**IT IS SO ORDERED**.

Dated: May 4, 2022

HON. MICHAEL M. ANELLO
United States District Judge