1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARILYN MORTON, et al., <br><br>                               Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN DIEGO, et al., <br><br>                               Defendants. | Case No. 21-cv-1428-MMA-DDL <br><br> **ORDER OVERRULING DEFENDANT COUNTY OF SAN DIEGO'S RULE 72 OBJECTION** <br><br> [Doc. No. 105] |

Marilyn Morton ("Ms. Morton"), as successor in interest to Decedent Joseph Earl Morton's ("Mr. Morton") estate, as well as Ms. Morton and Dean Morton as individuals (collectively, "Plaintiffs"), bring this civil rights action pursuant to 42 U.S.C. § 1983 against the County of San Diego (the "County"), Samantha Macanlalay, Bijan Rahmani, Hosanna Alto, Matthew Berlin, Liberty Healthcare, and Does 1–10. *See* Doc. No. 28 ("Third Amended Complaint" or "TAC"). The County objects to and seeks reconsideration of United States Magistrate Judge David D. Lesner's June 27, 2023 discovery order (the "Discovery Order"). Plaintiffs filed an opposition, to which the County replied. *See* Doc. Nos. 115, 118. For the foregoing reasons, the Court **OVERRULES** the County's objection.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I. BACKGROUND

This action stems from Mr. Morton's suicide while in custody at the Vista Detention Facility in May 2020.  *See* TAC ¶ 16.  Following Mr. Morton's suicide, the County's Critical Incident Review Board ("CIRB") met and a CIRB Report was generated on February 24, 2021.  At the heart of this ten-month discovery dispute is whether the CIRB Report and related documents and emails are protected by the attorney-client privilege and/or the work product doctrine.

On February 27, 2023, Plaintiff filed a motion to compel, among other things, the CIRB Report and related documents and emails from the County.  *See* Doc. No. 56.  The County opposed the motion.  *See* Doc. No. 58.  Judge Leshner held a status conference on March 15, 2023, and permitted Plaintiffs to file a reply.  *See* Doc. No. 60.  On April 24, 2023, Judge Leshner held an evidentiary hearing on the matter, during which time two witnesses testified and exhibits were offered into evidence.  *See* Doc. No. 76.  Thereafter, the parties submitted supplemental briefing, *see* Doc. Nos. 83, 84, and appeared for a second hearing on the matter on May 15, 2023, *see* Doc. No. 87.  At the May 15 hearing, Judge Leshner conducted an *in camera* review of the documents with Defendants' counsel *ex parte*.  *See* Doc. No. 86.

On June 27, 2023,[1] Judge Leshner issued the Discovery Order.  As relevant,[2] Judge Leshner granted Plaintiffs' motion to compel and ordered the County to produce the CIRB Report and related documents and emails, with the exception of a portion of the CIRB Report that Judge Leshner ordered be redacted.

---

[1] Judge Leshner initially issued an order on the motion on June 20, 2023.  *See* Doc. No. 96.  However, that order has since been stricken from the record and an amended version, the Discovery Order, was docketed on June 27, 2023.

[2] Plaintiffs' motion to compel, and Judge Leshner's Discovery Order, also addressed documents from the Citizens Law Enforcement Review Board as well as emails among Defendant Liberty Healthcare's employees.  The County does not object to the Discovery Order as it pertains to these document requests and therefore the Court omits discussion and analysis of that portion of the Discovery Order.

1    On July 11, 2023, the County filed a motion for reconsideration of and Rule 72[3]

2    objection to Judge Leshner's Discovery Order.  *See* Doc. No. 105.  Thereafter, Judge

3    Leshner stayed that portion of the Discovery Order to which the County objects.  *See*

4    Doc. No. 109.  After the matter was fully briefed, *see* Doc. Nos. 115, 118, the Court

5    ordered the County to lodge the CIRB Report and related documents and emails that are

6    the subject of its objection with the undersigned's chambers for *in camera* review, *see*

7    Doc. No. 120.

8    ## II. LEGAL STANDARD

9        In general, pretrial discovery matters are non-dispositive.  Therefore, a magistrate

10   judge has the authority to resolve them.  *See Grimes v. City and County of S.F.*, 951 F.2d

11   236, 240 (9th Cir. 1991).  Pursuant to Rule 72, a party may object to a non-dispositive

12   pretrial order of a magistrate judge within fourteen days after service of the order.  *See*

13   Fed. R. Civ. P. 72(a).  When considering objections to a magistrate judge's non-

14   dispositive order under Rule 72, the district judge must modify or set aside any part of the

15   order "that is clearly erroneous or is contrary to law."  *Id.*  The "clearly erroneous"

16   standard applies to the magistrate judge's factual determinations and discretionary

17   decisions.  *Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 983

18   (S.D. Cal. 1999).  The "contrary to law" standard applies to a magistrate judge's purely

19   legal determinations.  *Id.*

20       "Under Rule 72(a), [a] finding is clearly erroneous when, although there is

21   evidence to support it, the reviewing court on the entire evidence is left with the definite

22   and firm conviction that a mistake has been committed."  *Waterfall Homeowners Ass'n v.

23   Viega, Inc.*, 283 F.R.D. 571, 575 (D. Nev. 2012) (internal quotation marks and citation

24   omitted).  "An order is contrary to law when it fails to apply or misapplies relevant

25   statutes, case law or rules of procedure."  *Id.* (citation omitted).  "When reviewing

26

27   _____

28   [3] Unless otherwise noted, all "Rule" references are to the Federal Rules of Civil Procedure.

1  discovery disputes, however, the Magistrate [Judge] is afforded broad discretion, which
2  will be overruled only if abused." *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443,
3  446 (C.D. Cal. 2007) (internal citations and quotation omitted); *see also Grimes*, 951
4  F.2d at 241 (stating that on a Rule 72 objection, the district court "may not simply
5  substitute its judgment for that of the [magistrate] court").

### III. DISCUSSION

7      The Court incorporates the Discovery Order by reference here.  In short, Judge
8  Leshner determined that the County failed to meet its burden of demonstrating that the
9  CIRB Report and related documents and emails are protected by either the attorney-client
10 privilege or the work-product doctrine.  Pursuant to Rule 72, the County objects to these
11 rulings.  A review of the relevant briefing and record, as well as a thorough analysis of
12 the documents in question reveal no clear error or misapplication of law.

13 **A.   CIRB and Chief Legal Advisor**[4]

14     Before turning to the County's objection, the Court begins with a discussion of the
15 relevant board, policy provisions, and personnel.

16     CIRB is a San Diego County Sheriff's Department Review Board established and
17 governed by the Sheriff's Department Policy and Procedures Manual (the "Manual")
18 § 4.23.  A "Review Board" is defined as "an organized body of investigators who review
19 specific incidents and report their findings to a higher authority."  According to the
20 Manual, CIRB's responsibility is as follows:

22     Responsibility:

23     The purpose of this board is to consult with department legal counsel when an
24     incident occurs which may give rise to litigation. The focus of the CIRB will

---

[4] This section is derived from the Sheriff's Department Policy and Procedures Manual, *see* Doc. No. 58-1 at 11–24, Michael Baranic's declaration submitted in opposition to Plaintiffs' motion to compel, *see* Doc. No. 58-1 ("Baranic Decl."), as well as Mr. Baranic's testimony at the April 24, 2023 evidentiary hearing, *see* Doc. No. 79 ("April Tr.").  All citations to Mr. Baranic's testimony at the April evidentiary hearing refer to the pagination assigned by CM/ECF and the lines designated by the Court Reporter.

be to assess the department's civil exposure as a result of a given incident. The CIRB will carefully review those incidents from multiple perspectives, including training, tactics, policies, and procedures with the ultimate goal of identifying problem areas and recommending remedial actions so that potential liability can be avoided in the future.

The Standards and Compliance Manager of the Division of Inspectional Services shall ensure that a copy of all related reports is forwarded to each member of the Critical Incident Review Board, for each critical incident to be reviewed by the review board, within 30 days of the completion of the investigation, and no later than seven (7) days prior to the date of the Critical Incident Review Board convening. Copies of audio and video recordings will be available to members of the Critical Incident Review Board upon request.

CIRB consists of three (3) voting members and two (2) non-voting members. The three (3) voting members are Commanders from Law Enforcement, Court Services, and Detention Services. The two (2) non-voting members are the Chief Legal Advisor ("CLA") and Commander from Human Resources. The Human Resources Commander chairs the CIRB.

CIRB is triggered by what is called a "critical incident." As relevant, critical incidents include in custody deaths, other than natural causes. CIRB may also convene "[w]hen requested by the Sheriff, Undersheriff, Assistant Sheriff, or a board member."

A preliminary CIRB, or pre-CIRB, is to convene within two (2) weeks of a critical incident. Thereafter, CIRB is to convene within thirty (30) days of a critical incident or letter from the District Attorney.

The CIRB meeting begins with a presentation session, during which time "the investigators involved in the investigation of the critical incident will present facts and circumstances to the members of the CIRB. At the conclusion of the presentation each board member will have an opportunity to question the investigator regarding the specific facts and circumstances surrounding the critical incident."

Following the presentation session, the five (5) CIRB members, along with a representative from the Division of Inspectional Services ("DIS"), meet in a closed session. During this time, CIRB is tasked with three responsibilities, conforming to the

1    "Responsibility" provision transcribed above.  First, policy violations: "After hearing

2    from all necessary parties, the three Commanders will vote to make a determination as to

3    whether or not a policy violation may exist."  Depending upon whether the voting

4    members identify a potential policy violation, the case is either forwarded to Internal

5    Affairs (for potential violation) or the DIS Standards and Compliance Manager "for the

6    generation of a report, consistent with the Board's findings" (for no violation).  Second,

7    training: "CIRB is also tasked with making recommendations for training based upon the

8    analysis of critical incidents. If the Board identifies significant training issues, the Board

9    will direct those issues to the Training Lieutenant" for preparation of a report "outlining

10   the actions taken based upon the Boards direction."  Third, policies: "If [ ] CIRB

11   identifies policy issues of concern while reviewing a critical incident, the Board will

12   direct its concerns to the [DIS] Standards and Compliance Manager . . . ."

13          According to the relevant "Distribution of Reports" provision in the Manual,

14   within 45 days of the CIRB meeting, the DIS Standards and Compliance Manager "will

15   prepare a report summarizing the actions and conclusions of the board. The CIRB report

16   shall contain specific findings with regard to whether the review board found any policy

17   violations, and training or policy issues, as well as what actions were taken by the

18   department. A copy of the CIRB Confidential Report and other related reports shall be

19   filed in the Legal Affairs Section, Office of the Sheriff."

20          At the time CIRB convened to review Mr. Morton's death, Mr. Robert Faigin was

21   the Sheriff's Department's CLA and was a nonvoting member of CIRB.  *See* Baranic

22   Decl. ¶ 18.  Mr. Michael Baranic was appointed CLA in 2022.  *See id.*

23   **A.    Attorney-Client Privilege**

24          The attorney-client privilege protects "communications between client and

25   attorney for the purpose of obtaining legal advice, provided such communications were

26   intended to be confidential."  *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001).

27   The privilege extends to communications by corporate or government employees to

28   counsel, made at the direction of their superiors, in order to secure legal advice.  *See*

*United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996);[5] *see also Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981).  In addressing the County's asserted attorney-client privilege, Judge Leshner identified and applied the primary purpose test adopted by the Ninth Circuit in *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021), which governs dual purpose communications.  It is not clear whether the County challenges the Discovery Order in this respect.  While the County asserts that Judge Leshner misapplied the law, the County does not argue that some other test or standard applies.[6]

The County urges that Judge Leshner erred in concluding that the CIRB Report and related documents and emails were not created for the primary purpose of providing or obtaining legal advice.  The Court notes that the County has lodged two sets of documents with the undersigned's chambers.  The first is a set of documents containing the notation "County's Privilege Log re: CIRB."  These documents include the CIRB Report, other CIRB-related documents, as well as CIRB-related emails.  The second set depicts the notation: "County's Privilege Log re: EMAILS."  This set includes emails and their attached documents, some of which, but not all, facially or tangentially relate to CIRB.  Comparing these document sets to the County's privilege log, *see* Doc. No. 56 at

---

[5] The Court notes that the Ninth Circuit has, in an unpublished decision, approvingly cited to *Chen* in the government context.  *See Mendoza v. Gates*, 19 F. App'x 514, 520 (9th Cir. 2001).

[6] While the matter was before Judge Leshner it appears that the County took differing positions on this point.  For example, the County argued that CIRB, the CIRB Report, and the related documents only serve one purpose—to obtain and provide legal advice.  Elsewhere, however, it appears that the County conceded that there are other, albeit incidental in the County's opinion, purposes of the communications.  Mr. Baranic's testimony reflects the same inconsistency.  While on the one hand Mr. Baranic testified he believes CIRB serves multiple purposes, *see* April Tr. at 37:21–22, 76:1–2, he also testified that he believed CIRB's sole purpose is to look at critical incidents from a liability standpoint and how to prevent future liability, *see id.* 83:6–10.

In any event, the Court finds that Judge Leshner did not err in identifying the primary purpose test as applicable here.  It is undisputed that the CIRB Report and related documents and emails were created, authored, or collected either in preparation for or to memorialize the CIRB meeting.  The plain language of the Manual provisions governing the CIRB meeting identify numerous purposes.  Additionally, the County offers no evidence or argument that the emails, which are facially not CIRB-related, were created only for one purpose.  The Court therefore cannot say that the communications at issue served only one purpose and therefore that Judge Leshner applied the wrong law.

23–166, and the County's objection, *see* Doc. No. 105, it appears to the Court that: (1) the CIRB Report is the Report itself (and potentially, drafts of the Report); (2) "CIRB Records," *see* Doc. No. 105 at 27, refers to the remaining documents in Set One; and (3) "Other Emails," *see id.* at 28, relates to the emails and their attachments in Set Two. Accordingly, the Court addresses each category in turn.

### 1. CIRB Report

As Judge Leshner noted, this Court has already had occasion to apply the primary purpose test in considering whether the attorney-client privilege applies to documents created during a CIRB investigation. *See Greer v. Cty. of San Diego*, No. 19-cv-378-JO-DEB, 2022 U.S. Dist. LEXIS 184647, at *14–22 (S.D. Cal. Oct. 7, 2022). In *Greer*, the Court found that the County had not met its burden of establishing that the primary purpose of the CIRB investigation and meeting was to solicit legal advice. Relying on *Greer* but conducting his own analysis based upon the evidence and record, Judge Leshner came to the same conclusion. While the County maintains that *Greer* was decided incorrectly, they do not explain how other than to say it is wrong and should not be followed.[7]

As it relates to the CIRB Report, the County takes issue with Judge Leshner's approach to the issue: Judge Leshner considered whether the primary purpose of the communications at the November 18, 2020 CIRB meeting was to provide or obtain legal advice. The County maintains that the question is really whether the CIRB Report was created for the primary purpose of obtaining or giving legal advice. But this is a point without any meaningful distinction.[8] It is undisputed that the CIRB Report simply memorialized what transpired at the CIRB meeting, *see* April Tr. at 42:12–18, and a review of the CIRB Report reveals as much. As such, the Court finds no error here.

---

[7] It is clear Judge Leshner found *Greer* persuasive, although not binding. *See* Doc. No. 128 ("May Tr.") at 49:5–7. The Court finds no error here.

[8] It is also a point either not clearly argued or inconsistent with the position taken at the May 15, 2023 hearing. *See, e.g.*, May Tr. at 7:4–9.

1
2
3
4
5
6
7
8

Even assuming there is a distinction, the Court finds no error in Judge Leshner's ultimate conclusion.  The County repeatedly asserts that the CIRB Report was prepared at the direction of counsel.  To that end, the County also argues that the DIS Sergeant who prepared the Report and was present during the closed session of the CIRB meeting was there as a scribe on Mr. Faigin's behalf, to act as a legal secretary or paralegal.  But there is no evidence that Mr. Faigin actually directed the production of this CIRB Report.  Rather, it is undisputed that this CIRB Report was required under the Manual to be produced.

9
10
11
12
13
14
15
16

Judge Leshner credited the evidence Mr. Baranic offered, both via declaration and testimony, that in his opinion the primary purpose of the CIRB meeting, and therefore the CIRB Report, was to obtain and provide legal advice.  *See* Discovery Order at 9–10.  Judge Leshner found that nonetheless, legal advice was not the primary purpose.  Judge Leshner came to this conclusion after finding that the Manual, which clearly invokes legal concerns as a purpose, nevertheless can be complied with, and CIRB's duties can be fulfilled, absent any legal advice.  To that end, Judge Leshner also noted that Mr. Faigin was a non-voting member of CIRB and that the CIRB Report reflects no legal advice.

17
18
19
20
21
22
23
24

Other than disagreeing with this result, it is unclear where or how the County assigns error to these findings.  A Rule 72 objection is not a vehicle to simply reargue the issues and hope for a different result.  *See Grimes*, 951 F.2d at 241 (explaining that pretrial orders of a magistrate judge "are not subject to *de novo* determination").  On a Rule 72 objection, the Court is not to substitute its judgment for that of the Magistrate Judge.  *See id.*  Rather, the County must meet its burden of demonstrating that a clear error has been committed.  On this record, the Court is not left with the definite and firm conviction that Judge Leshner erred in his findings.

25
26
27
28

The Court appreciates the County's position that CIRB must be encouraged to have frank and candid discussions with counsel about potential liability stemming from critical incidents without fear that the communications will be discovered in the course of litigation by opposing counsel.  But a review of the CIRB Report reveals, frankly, no

such communication.  As noted above and will be addressed below, Judge Leshner ordered that the portions of the Report summarizing Mr. Faigin's questions—during the presentation session—and the answers received be redacted.  Notwithstanding Mr. Baranic's testimony of what may occur, or even ordinarily occurs, during a CIRB meeting, there is no evidence that Mr. Faigin actually provided legal advice during Mr. Morton's CIRB meeting.  If there were any discussions wherein Mr. Faigin provided legal advice to help the voting CIRB members decide whether a policy violation may exist, whether there are any training issues, or whether there are policy concerns, such is not reflected in the CIRB Report.  For that reason, as Judge Leshner correctly stated: "On its face, the CIRB Report does not describe any legal advice provided by the Chief Legal Advisor."  Discovery Order at 11.  Moreover, even if the CIRB meeting and subsequent Report served the purpose of providing Mr. Faigin with factual information in order to subsequently provide legal advice, it is not sufficiently clear on this record that this was the primary purpose of the CIRB Report.  The Court therefore finds no clear error in Judge Leshner's ruling that the County failed to meet its burden of demonstrating that the primary purpose of the CIRB Report was to obtain or provide legal advice.

### 2.   *CIRB-Related Records*

There are forty (40) CIRB-related records at issue.  Judge Leshner conducted an *in camera* review of these documents and determined that the County failed to carry its burden for the same reasons he found the CIRB Report was not privileged.  *See* Discovery Order at 12.  The Court has similarly conducted an *in camera* review of these documents and finds no error in Judge Leshner's ruling.

The County's briefing on the CIRB-related records is largely duplicative of its arguments related to the CIRB Report.  *See* Doc. No. 105-1 at 27.  It appears plain on this record that these documents were created in advance of and for the CIRB meeting.  And for the reasons explained above, the Court finds no error in Judge Leshner's determination that the primary purpose of Mr. Morton's CIRB meeting and thus the creation of the CIRB Report was not legal in nature.

A review of the CIRB-related records themselves also reveals that Judge Leshner's ruling was not in error.  For example, many of these documents are email chains regarding scheduling the CIRB meetings and circulating a factual synopsis of the incident in advance of the meetings.  Mr. Faigin is neither a recipient nor author of many of these emails, and there is no explanation as to who these other persons are, or what legal purpose these communications served, such that the Court could find Judge Leshner erred in determining these were not created for the primary purpose of soliciting or receiving legal advice.

Looking at the CIRB-related records as a whole, the Court notes that Mr. Baranic testified to the existence of a general directive regarding what information should be collected and included in the Powerpoint presented at the open session.  *See* April Tr. at 71–72.  But there is no evidence that Mr. Faigin in this instance requested that these items be collected or created.  In fact, Mr. Baranic testified that there may be unique situations where he would reach out to DIS prior to the CIRB meetings about, at least, who should attend, and presumably, what documents should be collected or created.  *Id.* at 72.  However, there is no evidence or suggestion that occurred here.  The Court therefore finds that Judge Leshner did not err in determining that the County did not meet its burden of demonstrating that the CIRB-related records are privileged.

### 3. *Emails*

There are ninety-three (93) emails at issue, and many of these emails include attachments.  Judge Leshner conducted an *in camera* review of these documents and determined that the County failed to carry its burden for the same reasons he found the CIRB Report was not privileged.  *See* Discovery Order at 12.

In the Discovery Order, Judge Leshner noted that the County's briefing on this matter was devoid of explanation or argument as to how these emails are privileged.  *Id.* The County now argues that because (some) of the emails involve "assisting counsel with responding to press and media inquiries," they are all privileged.  Doc. No. 105-1 at 28 (citing *Stardock Sys. v. Reiche*, No. 4:17-cv-07025-SBA (KAW), 2018 U.S. Dist. LEXIS

204438, at *17 (N.D. Cal. Nov. 30, 2018)).  However, the Court has the discretion to decline to address the County's new arguments raised in its objection and chooses to do so here.  *See Hall v. Marriott Int'l, Inc.*, No. 19-cv-01715-JLS-AHG, 2021 U.S. Dist. LEXIS 211726, at *15 (S.D. Cal. Nov. 1, 2021) (collecting cases).  The parties have been given ample time to brief and argue their respective positions—ten (10) months to be sure—through multiple rounds of briefings, two hearings, and an *in camera* review with counsel *ex parte*.  Judge Leshner devoted a substantial amount of time and resources to duly consider this matter and resolve it.  The Court finds it inappropriate on this record to allow the County to raise new arguments for the first time at this late stage of the matter.[9]

Turning to the emails and attachments, the County has not demonstrated that Judge Leshner erred in determining that legal advice was not the primary purpose of these communications.  While Mr. Faigin is a recipient of some of these emails, he is not included on many of them.  The emails do not appear to contain any reference to legal consequences or liability.  And there is simply no evidence or argument from which the Court can extrapolate that these emails were nevertheless created for the primary purpose of securing legal advice.  Accordingly, the Court is not left with the firm and definite conviction that Judge Leshner erred in his ruling.

_____

[9] Even assuming the Court considered this new argument, the Court finds no error in Judge Leshner's ultimate ruling.  The County's sole citation in support of its position is to *Stardock Sys. v. Reiche*, No. 4:17-cv-07025-SBA (KAW), 2018 U.S. Dist. LEXIS 204438, at *17 (N.D. Cal. Nov. 30, 2018), but this case does not provide a basis for finding that all of the emails are privileged.  In *Stardock*, the defendants' counsel hired a PR firm specifically for the purpose of determining a litigation strategy and the communications were found to pertain to the giving and receiving of legal advice.  *Id.* at *17 ("Here, the Court finds that because Defendants' counsel (and not Defendants themselves) hired the PR firm of Singer to provide PR counseling specifically for the purposes of litigation strategy in the current action, . . . the attorney-client privilege extends to the withheld communications between Singer and Defendants' counsel pertaining to "giving and receiving legal advice about the appropriate response to the lawsuit and making related public statements.").  The present case does not involve such a situation.  Nor is there any evidence that these emails involved Mr. Faigin providing the assistance of counsel with responding to press and media inquiries, nonetheless that the primary purpose of all of these emails— many of which do not relate to press statements—was legal in nature.

21-cv-1428-MMA-DDL

### 4.   Summary

As explained above, the Court finds that Judge Leshner did not misapply the law. And having reviewed the relevant briefing and transcripts, and having conducted and independent *in camera* review of the CIRB Report and related documents and emails, the Court finds no clear error in Judge Leshner's determination that these items are not protected by the attorney-client privilege.  Accordingly, the Court **OVERRULES** the County's objection in this respect.

## B.   Work-Product Doctrine

"The work-product doctrine is a qualified privilege that protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020) (citations omitted).  The County's objection merely touches the work-product doctrine in passing.  As such, the Court does not analyze the three categories of items claimed protected by this doctrine separately.

As noted above, it is clear that all of these documents served more than one purpose.  To that end, the County does not argue that the CIRB Report and related documents and emails were prepared exclusively for litigation, an implicit finding in the Discovery Order.  "In circumstances where a document serves a dual purpose, that is, where it was not prepared exclusively for litigation, then the 'because of' test is used." *United States v. Richey*, 632 F.3d 559, 567–68 (9th Cir. 2011) (citation omitted).  "In applying the 'because of' standard, courts must consider the totality of the circumstances and determine whether the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation." *Id.* (citation omitted).

As the County explains, a Tort Claim was filed prior to the CIRB meeting. Plaintiffs filed their Tort Claim on November 2, 2020, *see* Doc. No. 28 ¶ 23, and the CIRB meeting took place on November 18, 2020.  Additionally, the CIRB Report was finalized shortly after the claim was rejected.  *See id.*  Defendants thus argue that the

CIRB Report and related documents were prepared because of the prospect of litigation. *See* Doc. No. 105-1 at 26–27.  However, as the records reveal, all interested parties were preparing for the CIRB meeting well in advance of November 2020, and many of the documents predate the Tort Claim.  And most importantly, as Judge Lesher highlighted, section 4.23 requires CIRB to review all critical incidents, including in custody deaths, regardless of whether or litigation is anticipated.  Thus, the mandatory policy is indifferent to whether litigation is anticipated in particular circumstances.  Judge Leshner therefore found that the CIRB meeting would have occurred, and the resulting CIRB Report and related documents and emails would have been prepared or created, regardless of any anticipated or already commenced litigation.  This finding was not in error.  There is simply no evidence, or argument for that matter, that any of these documents would not have been created in substantially similar form but for the anticipation of litigation.

The County argues that Judge Leshner failed to apply the case-by-case doctrine and "makes a blanket decision for all CIRB's having to happen regardless of litigation." *Id.* at 27.  But it appears that the County seeks such a blanket approach.  The Court understands the County's position that all incidents triggering CIRB are pre-determined to carry a heightened risk or threat of litigation; that CIRB was put in place for the purpose of collecting information and meeting about incidents likely to result in litigation.  However, Judge Leshner was clearly not persuaded that CIRB serves such a sole purpose and that simply because an incident triggers CIRB, the work-product doctrine attaches.  The Court finds no persuasive error in this determination.  The Court is hard-pressed to follow the County's reasoning, which would result in a rule that anything created under or related to section 4.23 is protected by the work-product doctrine simply because of the County's predetermination.  Rather, the Court must look to this specific incident and CIRB and these resulting documents.  Based upon the Court's review of the record submitted in support of this objection, the Court is not persuaded that these documents would not have been created in substantially similar form

but for the prospect of litigation.  Rather the evidence supports Judge Leshner's ruling.  Accordingly, the Court **OVERRULES** Defendant's objection in this respect.

## C.      Redaction of CIRB Report

In their opposition to the County's objection, Plaintiffs argue that Judge Leshner should not have ordered that the CIRB Report be redacted.  However, Plaintiffs did not file an objection to the Discovery Order.  Even assuming the Court were inclined to treat this portion of their opposition as an objection, it is untimely.  *See* Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to.").  And in any event, the Court finds no clear error in Judge Leshner's decision to order that a portion of the CIRB Report be redacted.  Accordingly, the Court declines to alter the Discovery Order in this respect.

## IV. CONCLUSION

For the foregoing reasons the Court **OVERRULES** the County's objection to the Discovery Order.  Pursuant to Judge Leshner's July 14, 2023 Order, *see* Doc. No. 109, the stay of the Discovery Order is **LIFTED**.  The parties must comply with Judge Leshner's Discovery Order, his July 14, 2023 Order setting the deadline to comply with the Discovery Order, and all other scheduling orders.

**IT IS SO ORDERED**.

Dated:  September 6, 2023

HON. MICHAEL M. ANELLO
United States District Judge