1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MARILYN MORTON, et al.

Plaintiffs,

v.

COUNTY OF SAN DIEGO, et al.,

Defendants.

Case No.:  21-cv-1428-MMA-DDL

**ORDER GRANTING IN PART AND DENYING IN PART AS MOOT PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

**[Dkt. No. 114]**

## I.

## <u>INTRODUCTION</u>

Joseph Morton committed suicide in May 2020 while in custody at the Vista Detention Facility.  Plaintiffs seek to compel the County of San Diego ("County") to produce 19 reports generated by the San Diego Sheriff's Department's Critical Incident Review Board ("CIRB") pertaining to other in-custody suicides from January 2015 to May 2020.  Plaintiffs also seek to compel production of Sheriff's Department Internal Affairs reports pertaining to three of those suicides and Citizens Law Enforcement Review Board ("CLERB") reports in the County's possession.

The primary issue is whether the CIRB Reports are subject to the attorney-client privilege and thus are protected from disclosure to Plaintiffs.  On June 28, 2023, the Court

issued an Amended Order ("June 28 Order") granting in part Plaintiffs' motion to compel production of the CIRB Report pertaining to Morton's death because the County had not met its burden to establish that the privilege applied to the Report in its entirety.  Dkt. No. 97 at 11-12.  However, the Court relied on the testimony of Chief Legal Advisor Michael Baranic to conclude that the Report's description of specific communications between the former Chief Legal Advisor and Sheriff's Department personnel should be redacted.  *Id.* at 12.

The Court's analysis of the attorney-client privilege issue in the June 28 Order applies with equal force to the instant motion, and the Court again concludes the County has not met its burden to establish that the 19 CIRB Reports are subject to the attorney-client privilege in their entirety.  Further, the 19 CIRB Reports must be produced in unredacted form given that the County has failed to identify specific portions of the Reports that it contends should be redacted.  Finally, the Court concludes that the Internal Affairs reports are not exempt from disclosure under the official information privilege and that the operative Protective Order adequately addresses third-party privacy concerns with respect to the CIRB Reports and the Internal Affairs reports.

As set forth below, the Court **GRANTS** Plaintiffs' motion to compel production of the 19 CIRB Reports and the three Internal Affairs reports.  The Court **DENIES AS MOOT** Plaintiffs' motion to compel production of the CLERB reports given the County's representation that will produce all such reports in its possession, custody or control.

## II.

## FACTUAL BACKGROUND

A.   <u>Morton's Suicide</u>

Plaintiffs' Third Amended Complaint alleges that Morton was arrested for an attempted robbery on May 11, 2020.  Dkt. No. 28 at ¶ 5.  He made suicidal statements to the arresting deputies and expressed suicidal thoughts to County intake staff at the Vista Detention Facility ("VDF").  *Id.* at ¶¶ 6-7.  A Liberty Healthcare psychologist performed

a suicide assessment and deemed Morton to be a "low" risk for suicide. *Id.* at ¶ 9. Morton was placed in Enhanced Observation Housing. *Id.*

On May 12, 2020, a Liberty Healthcare mental health clinician performed a follow-up suicide assessment. *Id.* at ¶ 10. The clinician determined that Morton was a low risk for suicide and cleared him for mainline housing, which meant he would be placed in an isolation cell for ten days. *Id.* at ¶¶ 11-12. Later that day, another Liberty Healthcare psychologist performed a suicide assessment and concluded that Morton was faking his suicidal ideations. *Id.* at ¶ 13. Following the assessment, Morton was returned to his isolation cell. *Id.* at ¶ 14.

Morton remained in the isolation cell for five days. *Id.* at ¶ 15. On May 17, 2020, Morton committed suicide by hanging himself with a bedsheet in his cell. *Id.* at ¶ 16.

The Third Amended Complaint states causes of action against the County of San Diego; Samantha Macanlalay, an intake nurse at the VDF; Liberty Healthcare, the contracted psychiatric provider for the jails in San Diego County; and Liberty Healthcare employees Bijan Rahmani, Hosanna Alto and Matthew Berlin. *Id.* at ¶¶ 25-30. Plaintiffs assert causes of action under 42 U.S.C. § 1983 for "objective indifference" (*id.* at ¶¶ 34-75), inadequate suicide prevention/self-harm policy and training program (*id.* at ¶¶ 76-112), and failure to summon medical care (*id.* at ¶¶ 113-125). Plaintiffs further allege claims under California law for a survival action, wrongful death and professional negligence. *Id.* at ¶¶ 126-151.

**B.   <u>Critical Incident Review Board</u>**

San Diego Sheriff's Department Policy and Procedure Manual Section 4.23 ("Section 4.23") describes the CIRB's purpose and procedures:

> The purpose of [the CIRB] is to consult with department legal counsel when an incident occurs which may give rise to litigation. The focus of the CIRB will be to assess the department's civil exposure as a result of a given incident. The CIRB will carefully review those incidents from multiple perspectives, including training, tactics, policies, and procedures with the ultimate goal of identifying problem areas and

recommending actions so that potential liability can be avoided in the future.

Dkt. No. 58-1 at 15.[1]  Section 4.23 requires the CIRB to review all "critical incidents," which, at the time of Morton's death, was defined to include "[i]n custody deaths, other than natural causes." *Id.* at 16.

The CIRB consists of three voting members and two non-voting members. *Id.* at 15. The three voting members include Sheriff's Department Commanders from the Law Enforcement, Court Services, and Detention Services Divisions. *Id.* The two non-voting members are the Sheriff's Department Chief Legal Advisor and a Commander from Human Resources. *Id.*

Following an in-custody death, the Sheriff's Department's Homicide Unit conducts an investigation. Baranic Trans. at 28:7-9. In preparation for the CIRB meeting, Sheriff's Department personnel prepare a PowerPoint presentation summarizing the incident and the investigation. Baranic Trans. at 26:23-27:2; 108:20-23.

The CIRB review consists of both a "presentation session" and a "closed session." Dkt. No. 58-1 at 4; Baranic Trans. at 16:19-17:4. At the presentation session, "the investigators involved in the investigation of the critical incident will present facts and circumstances to the members of the CIRB." Dkt. No. 58-1 at 16. CIRB members may question the investigators "regarding the specific facts and circumstances surrounding the critical incident." *Id.* Baranic testified the presentation session "is where the information

---

[1]   The Court draws the facts regarding the CIRB process from the declarations of Sheriff's Department Director of Legal Affairs and Chief Legal Advisor Michael Baranic, dated March 13, 2023 (Dkt. No. 58-1) and August 7, 2023 (Dkt. No. 119-1). This Order cites to the version of Section 4.23 that was in effect in 2020 and 2021 and is attached to Baranic's March 13 declaration. *See* Dkt. No. 58-1 at 13-21. The Court also draws from Baranic's testimony on April 24, 2023, regarding the CIRB process and functions. Dkt. No. 79 ("Baranic Trans.").

is presented to the board members, and we have the opportunity to ask questions of either the affected command or subject matter experts." Baranic Trans. at 16:25-17:3.[2]

Following the presentation session, the CIRB meets in closed session. Only the five CIRB members and a Division of Inspectional Services Lieutenant acting as the "scribe" are present at the closed session. *Id.* at 78:14. As stated in Section 4.23, "[a]fter hearing from all necessary parties, the three Commanders will vote to make a determination as to whether or not a policy violation may exist." Dkt. No. 58-1 at 16. If a majority of the three voting Commanders determine a policy violation may have occurred, the case is referred to Internal Affairs for further investigation. *Id*. If the majority does not find a potential policy violation, "the CIRB case will be forwarded to the Standards and Compliance Manager of the Division of Inspectional Services for the generation of a report, consistent with the Board's findings, at the conclusion of the CIRB." *Id*. at 17.

Section 4.23 identifies two post-CIRB meeting requirements. First, for critical incidents involving a Sheriff's Department employee, the employee's Facility or Unit Commander must brief the employee "as to the results of the CIRB" review within seven days of the CIRB meeting. *Id*. Second, within 45 days of the CIRB review, the Department of Inspectional Services must "prepare a report summarizing the actions and conclusions of the board." *Id*. The report "shall contain specific findings with regard to whether the review board found any policy violations, and training or policy issues, as well as what actions were taken by the department." *Id*. The Lieutenant who served as the "scribe" prepares the CIRB Report. Baranic Trans. at 78:14. Baranic testified the CIRB Report may contain action items. *Id.* at 112:4-13. Under Section 4.23, the CIRB may also make "recommendations for training based on the analysis of critical incidents" as well as

---

[2]   *Greer v. Cnty. of San Diego*, 634 F. Supp. 3d 911 (S.D. Cal. 2022), describes the CIRB meeting as occurring in three stages, with a second stage involving a discussion between the CIRB members and Sheriff's Department subject matter experts. *Id*. at 915. The record in this case does not include information about that second stage, but that does not affect the Court's analysis.

"proposed policy recommendations" if it identifies "policy issues of concern while reviewing a critical incident." Dkt. No. 58-1 at 17. In addition to these requirements, Baranic testified that, in the days following the CIRB review, he "tend[s] to have a standing meeting with the Sheriff and Undersheriff, and I will brief them on the CIRBs." Baranic Trans. at 112:1-3.

In February 2022, the California State Auditor issued a report regarding inmate deaths in San Diego County Jails. *See* https://www.auditor.ca.gov/pdfs/reports/2021-109.pdf (last accessed September 18, 2023). The report included a response from the San Diego County Sheriff's Department that includes the following regarding the CIRB:

> As items of concern are identified during a critical incident, such as an in-custody death, the CIRB reviews focus with an eye toward what changes have already been implemented by the chain of command to remedy any deficiencies before the matter admitted to the CIRB for review, as well as any changes the chain of command may not have already identified and/or implemented to minimize the risk of a reoccurrence.
>
> If the CIRB identifies any best practices or changes not previously identified and implemented by the change [sic] of command prior to this review, the CIRB is empowered to make such recommendations.

*Id.* at 103. Baranic testified this is "a purpose of CIRB but not the primary purpose of CIRB." Baranic Trans. at 76:1-2.

## III.

## DISCUSSION

### A.   CIRB Reports

Plaintiffs seek disclosure of 19 CIRB Reports pertaining to in-custody suicides at San Diego County jails from January 2015 to May 2020. The County's privilege log asserts the attorney-client privilege, work product doctrine, official information privilege and law enforcement investigatory privilege with respect to the CIRB Reports. Dkt. No. 114 at 14-51. However, the County's opposition brief focuses almost entirely on the

attorney-client privilege and addresses the other privileges in a single sentence.  *See* Dkt. No, 119 at 6 ("The CIRB reports are protected work product, deliberative process privilege, official information privilege, and law enforcement investigatory privilege.").   This assertion is insufficient because "a party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." *Lambright v. Ryan*, 698 F.3d 808, 822 (9th Cir. 2012).[3]   Nevertheless, the Court will address each privilege notwithstanding the absence of analysis in the County's brief and notwithstanding that the County's privilege log does not assert the deliberative process privilege.

The County further asserts the CIRB Reports are neither relevant nor proportional to the needs of the case irrespective of any privilege.  The Court addresses each contention in turn.

### 1.    **Attorney-Client Privilege**

#### a.    **General principles**

Federal law applies to assertions of privilege in this federal civil rights action.  *See United States v. Zolin*, 491 U.S. 554, 562 (1989).  "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id*.  "However, since the privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose" and "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976).  "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002).

---

[3]    All citations are omitted unless otherwise noted.

The privilege "protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021). The elements of the privilege are:

> (1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived.

*Martin*, 278 F.3d at 999. "The burden is on the party asserting the privilege to establish all the elements of the privilege." *Id*. at 999-1000.

There is no dispute the County may invoke the attorney-client privilege for confidential communications between Sheriff's Department counsel and Sheriff's Department personnel so long as the County establishes that the communications meet the foregoing elements for privileged communications. *See In re Cnty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007) ("In civil suits between private litigants and government agencies, the attorney-client privilege protects most confidential communications between government counsel and their clients that are made for the purpose of obtaining or providing legal assistance."). This is because "[a]ccess to legal advice by officials responsible for formulating, implementing and monitoring governmental policy is fundamental to promot[ing] broader public interests in the observance of law and administration of justice." *Id*. at 419.

### b. Prior rulings

Multiple judges in this District (including the undersigned) have considered attorney-client privilege assertions as to CIRB Reports. In *Bush v. Cnty. of San Diego*, No. 15-cv-686-L-JMA, Dkt. No. 22 (S.D. Cal. Nov. 24, 2015), the court declined to compel production of a CIRB Report based on a declaration from then-Sheriff's Department Chief Legal Advisor Robert Faigin stating the Report "is a confidential communication involving the County's employees and Faigin, in his capacity as a legal advisor, and was prepared for the purpose of obtaining legal advice related to the subject incident." *Id.* at 8. Similarly,

in *Estate of Ruben Nunez v. Cnty. of San Diego*, No. 16-cv-1412-BEN-MDD, Dkt. No. 186 (S.D. Cal. Sept. 11, 2017), the court declined to compel production of a CIRB Report based on a declaration from Faigin stating that "the purpose of the [CIRB] meeting was to obtain legal advice in advance of potential litigation." *Id.* at 3.

More recently, the *Greer* court applied the "primary purpose" test adopted by the Ninth Circuit in *In re Grand Jury* to CIRB investigations. *Greer*, 634 F. Supp. 3d. at 919-21. The *Greer* court conducted a detailed analysis of Section 4.23 and concluded "the objective evidence before the Court establishes the CIRB's primary purpose is investigative and remedial (activities generally not protected by the attorney-client privilege), and the County has not carried its burden of establishing the primary purpose of the twelve CIRB investigations at issue was obtaining legal advice." *Id.* at 921. The District Judge affirmed that ruling and thereafter conducted an *in camera* review of the CIRB Reports at issue. Following the *in camera* review, the District Judge affirmed the prior ruling that the CIRB Reports were not privileged. *See* Dkt. No. 61-1 at 59 (transcript of February 8, 2023 hearing in *Greer* in which the District Judge concluded "the CIRB memoranda reports and documents are not privileged because their primary purpose is to determine training issues and recommend remedial measures in response to serious incidents that occur within the County jails, as opposed to giving or seeking legal advice from or by the chief legal officer").

As noted above, this Court's June 28 Order granted Plaintiffs' motion to compel production of the CIRB Report pertaining to Morton's death. Dkt. No. 97. On September 6, 2023, the District Judge overruled the County's objection to the June 28 Order. Dkt. No. 131.

Finally, on August 30, 2023, in *Estate of Elisa Serna, et al. v. Cnty of San Diego, et al.*, 20-cv-2096-LAB-DDL, Dkt. No. 220, the Court granted the plaintiffs' motion to compel production of 33 CIRB Reports for in-custody deaths from 2015 to 2019. The County's objection to that order is pending before the District Judge.

/ / /

### c.    __Application to the Present Dispute__

Against this backdrop, the Court turns to the CIRB Reports at issue in this case.    To justify its assertion of the attorney-client privilege as to the entirety of all 19 CIRB Reports, the County bears the burden to establish that each Report memorializes confidential communications between attorney and client that were "made for the purpose of giving legal advice." *In re Grand Jury*, 23 F.4th at 1091; *see also Chrimar Sys. Inc. v. Cisco Sys. Inc.*, No. 13-CV-01300-JSW(MEJ), 2016 WL 1595785, at *3 (N.D. Cal. Apr. 21, 2016) (attorney-client privilege extends to document that "memorializes and reflects legal advice rendered in a privileged conversation").  Given that the County asserts the privilege as to the entirety of each Report, the County must show that the communications memorialized in that Report were "made for the purpose of giving [or seeking] legal advice." *In re Grand Jury*, 23 F.4th at 1091.  The County has not met its burden.

The County points out the stated purpose of the CIRB is to "consult with department legal counsel when an incident occurs which may give rise to litigation" and "assess the department's civil exposure as a result of a given incident."  Dkt. No. 58-1 at 15.  Baranic declares the CIRB's "primary purpose is to protect the Department from legal liability and exposure by providing legal advice to the Department, assessing the Department's civil liability and risk exposure, and in anticipation of potential litigation as a result of a given incident."  *Id.* at 4.  At the evidentiary hearing, Baranic similarly testified the "sole purpose" of the CIRB is to examine critical incidents "from a liability standpoint."  Baranic Trans. at 83:24-25.  He further testified the CIRB Report is generated "to memorialize the discussions and [] any legal advice that was given during the CIRB process."  *Id.* at 90:8-9.

"Where the communication was made for dual-purposes, courts must determine 'whether the primary purpose of the communication is to give or receive legal advice, as opposed to business . . . advice.'"  *Greer,* 634 F. Supp. 3d at  917-18 (citing *In re Grand Jury*, 23 F.4th at 1091).  In determining whether the CIRB Reports memorialize communications "made for the purpose of giving legal advice," *In re Grand Jury*, 23 F.4th

at 1091, the Court begins with the provisions of Section 4.23 that govern the CIRB process. As noted above, at the presentation session, "the investigators involved in the investigation of the critical incident will present facts and circumstances to the members of the CIRB." Dkt. No. 58-1 at 16.  Thereafter, the five CIRB members meet in closed session where "the three Commanders will vote to make a determination as to whether or not a policy violation may exist."  *Id.*  In addition, the CIRB may make training recommendations and "proposed policy recommendations."  *Id.* at 17.  Finally, Section 4.23 requires the preparation of a CIRB Report that "shall contain specific findings with regard to whether the review board found any policy violations, and training or policy issues, as well as what actions were taken by the department."  *Id.*

The requirements established by Section 4.23 – that the CIRB vote on the existence of policy violations, make findings as to any policy violations and "training or policy issues" and describe actions taken – exist independent of any legal advice that may be provided by the Chief Legal Advisor, who serves as a non-voting CIRB member.  Stated another way, the CIRB could fulfill its duties under Section 4.23 to vote on policy violations and address training or policy issues absent any legal advice from the Chief Legal Advisor.  *See Fisher*, 425 U.S. at 403 (privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege"); *Wisk Aero LLC v. Archer Aviation, Inc.*, No. 21-cv-2450-WHO (DMR), 2023 WL 2699971, at *4 (N.D. Cal. March 29, 2023) ("no privilege can attach to any communication  as to which a business purpose would have served as a sufficient cause, *i.e.*, any communication that would have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice").  That legal advice from the Chief Legal Advisor is not necessary for the CIRB to fulfill these duties significantly undermines the County's position that the Reports *in toto* are privileged, and weighs against a finding that the primary purpose of the CIRB meetings is to "give or receive legal advice."  *In re Grand Jury*, 23 F.4th at 1091.

/ / /

11

The Court's *in camera* review of the 19 CIRB Reports further supports the conclusion that the primary purpose of the communications at the CIRB meetings was not to seek or receive legal advice such that the attorney-client privilege protects the entirety of each Report from disclosure. *See United States v. Chevron Corp.*, No. C 94-1885 SBA, 1996 WL 444597, at *2 (N.D. Cal. May 30, 1996) ("The court may conduct an *in camera* review of withheld documents to allow the client to demonstrate to the court that the attorney-client privilege applies to segregable portions of the withheld documents."). Certain of the CIRB Reports contain questions and statements by then-Chief Legal Advisor Robert Faigin. [4]  *See*, *e.g.*, UIN Doc. No. 4 at 2-7; UIN Doc. No. 9 at 3-12.  However, it is not apparent from the CIRB Reports themselves that these questions or statements constitute legal advice, and the County has not asserted that specific portions of the CIRB Reports contain legal advice. [5]   To be sure, the privilege applies to confidential "communications relating to" the seeking of legal advice, *Martin*, 278 F.3d at 999, which may include communications made by the client and communications made by the attorney that do not constitute legal advice *per se*.   But the absence of readily identifiable legal advice contained in the CIRB Reports is nevertheless relevant to the Court's assessment of whether the primary purpose of the communications was to give or receive legal advice.

The Court credits Baranic's testimony that, from his perspective as the Chief Legal Advisor, his role in the CIRB is to provide legal advice.  But the issue presented is whether the *primary* purpose of the communications at the CIRB meetings was to provide legal advice such that the 19 CIRB Reports are protected in their entirety by the attorney-client privilege. *In re Grand Jury*, 23 F.4th at 1091.  As the Second Circuit explained, "[t]he

---

[4]     Faigin was the Chief Legal Advisor and attended the CIRB meetings in that capacity prior to Baranic's appointment in 2022.  Dkt. No. 119-1 at 9, ¶ 22.

[5]     Baranic asserts Faigin "would have participated in the Closed session of the CIRB review" and "would have provided legal advice," but he does not reference portions of the CIRB Reports that contain legal advice.  Dkt. No. 119-1 at 10, ¶ 25.

predominant purpose of a communication cannot be ascertained by quantification or classification of one passage or another," but "should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer." *In re Cnty. of Erie*, 473 F.3d at 420-21. Here, the rendering of legal advice is not necessary for the CIRB to fulfill the requirements of Section 4.23, and the CIRB Reports do not, on their face, contain legal advice provided by the Chief Legal Advisor. On this record, the County has not carried its burden to establish that the primary purpose of the communications at the CIRB meetings was to seek or provide legal advice. As such, the Court concludes the attorney-client privilege does not apply to the entirety of each CIRB Report at issue.

Although the attorney-client privilege does not apply to the CIRB Reports in their entirety, "redaction is available for documents which contain legal advice that is incidental to the nonlegal advice that is the predominant purpose of the communication." *Id.* at 421; *see also Chevron Corp.*, 1996 WL 444597, at *2 ("[D]espite the overall nature of the document, the client may assert the attorney-client privilege over isolated sentences or paragraphs within a document."). On August 7, 2023, the County timely submitted the 19 CIRB Reports for the Court's *in camera* review. Dkt. No. 125. In response to the Court's request that the County indicate the portion of each report that the County would seek to redact if the Court concluded that the attorney-client privilege does not apply to the entirety of each CIRB Report, the County's filing includes proposed redactions to one or more entire pages of each Report. *Id.* at 5-6. The County's identification of its redactions by page numbers is imprecise, but it appears the County proposes to redact the entirety of every CIRB Report with the exception of a background section summarizing the in-custody death at issue. Those proposed redactions include the vast majority of each Report.

The County bears the burden to establish the information it seeks to redact is limited to "confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021).

The County has failed to meet its burden, and the Court will not parse the 19 CIRB Reports to identify specific communications as to which the County might have (but did not) propose targeted redactions.

The County's argument that Plaintiffs have waived their right to seek unredacted CIRB Reports is without merit.  First, the County's waiver argument ignores that it bears the burden as the party asserting the attorney-client privilege to show that any redactions are appropriate.  Moreover, the County cites no authority for the proposition that Plaintiffs' failure to file an objection under Fed. R. Civ. P. 72 to the June 28 Order prospectively waived Plaintiffs' ability to seek unredacted CIRB Reports in this subsequent motion.

### 2.  **Work Product Doctrine**

#### a.  **General Principles**

"The work-product doctrine is a qualified privilege that protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation."  *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020).  "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case, and protects both material prepared by agents for the attorney as well as those prepared by the attorney himself."  *Id.*  The doctrine "upholds the fairness of the adversarial process by allowing litigators to creatively develop legal theories and strategies – without their adversaries invoking the discovery process to pry into the litigators' minds and free-ride off them."  *In re Grand Jury*, 23 F.4th at 1093; *see also*  Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . .").

"In circumstances where a document serves a dual purpose, that is, where it was not prepared exclusively for litigation, then the 'because of' test is used."  *United States v. Richey*, 632 F.3d 559, 567–68 (9th Cir. 2011).  "In applying the 'because of' standard, courts must consider the totality of the circumstances and determine whether the document was created because of anticipated litigation, and would not have been created in

substantially similar form but for the prospect of litigation." *Id*. "The party asserting work product protection has the burden to demonstrate it applies to the information in question." *Greer*, 634 F. Supp. 3d at 918.

### b.    Application to the Present Dispute

The work product doctrine applies if the County establishes that each of the 19 CIRB Reports "would not have been created in substantially similar form but for the prospect of litigation." *Richey*, 632 F.3d at 568.  Section 4.23 requires the CIRB to review all "critical incidents," which included "[i]n custody deaths, other than natural causes."  Dkt. No. 58-1 at 16.  Section 4.23 applies to all "critical incidents" regardless of whether the County has received notice of litigation arising from the incident at issue.  Baranic Trans. at 22:25-23:15.  The Court therefore concludes the County has not met this burden because Section 4.23 mandates the CIRB review process for all critical incidents whether or not litigation is anticipated.  *See  Kelly v. City of San Jose*, 114 F.R.D. 653, 659 (N.D. Cal. 1987) ("Since police departments are under an affirmative duty, in the normal course of serving their public function, to generate the kind of information at issue here, the policies that inspire the work product doctrine are wholly inapplicable."); *Martin v. Evans*, No. C 08-4067 JW MEJ, 2012 WL 1894219, at *5 (N.D. Cal. May 23, 2012) (overruling work-product objection to production of prison internal affairs reports where prison "fails to demonstrate how the reports were generated primarily for use in litigation or collected outside the regular course of business"); *Greer*, 634 F. Supp. 3d at 921-22 (finding County did not establish work product doctrine applied to CIRB reports).

### 3.    Official Information Privilege

"Federal common law recognizes a qualified privilege for official information." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir.1990).  "In determining what level of protection should be afforded by this privilege, courts conduct a case by case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege." *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995).  This balancing approach is "moderately

pre-weighted in favor of disclosure." *Id.* The County bears the burden of establishing the official information privilege applies. *Shiflett by and through Davenport v. City of San Leandro*, No. 21-cv-7802-LB, 2023 WL 4551077, at *2 (N. D. Cal. July 13, 2023).

The party asserting the privilege must make a "substantial threshold showing." *Soto*, 162 F.R.D. at 613. "[T]o fulfill the threshold requirement, the party asserting the privilege must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit." *Id.* The affidavit must include:

> (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made.

*Id.* "If the nondisclosing party does not meet this initial burden, the court will order disclosure of the documents; if the party meets this burden, the court generally conducts an *in camera* review of the material and balances each party's interests." *Rogers v. Giurbino*, 288 F.R.D. 469, 481 (S.D. Cal. 2012) (overruling privilege claim where defendant did not submit appropriate declaration).

Because the County's brief does not address the official information privilege (Dkt. No. 119 at 6), the Court will assume that the County relies on Baranic's declaration to make the requisite "substantial threshold showing." Baranic states he has reviewed all the CIRB Reports at issue and that the Reports are maintained in confidence. Dkt. No. 119-1 at ¶¶ 6, 16, 27. However, Baranic does not sufficiently address the third, fourth or fifth factors. Baranic focuses on the County's position that the CIRB Reports are subject to the attorney-client privilege, but that is a separate inquiry from "the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer." *Soto*, 162 F.R.D. at 613. Nor does Baranic address how disclosure of the CIRB Reports subject

to the existing Protective Order "would create a substantial risk of harm to significant governmental or privacy interests" or "how much harm would be done to the threatened interests if disclosure were made." *Id.* This is insufficient to satisfy the County's burden to make a substantial threshold showing that the official information privilege applies.

Even assuming the requisite showing were made, the County does not address the non-exhaustive factors used in balancing the parties' respective interests.[6] *See Shiflett*, 2023 WL 4551077, at **2-3 (citing *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973)). The Court has reviewed the 19 CIRB Reports *in camera* and concludes these factors weigh in favor of disclosure under the Protective Order. There is no showing that disclosure will discourage citizens from giving the government information, the party seeking the information is not an actual or potential defendant in a criminal proceeding, there is no indication that the 19 CIRB Reports entail ongoing disciplinary proceedings, Plaintiffs' suit is non-frivolous, there is no showing that this information is available to Plaintiffs from other sources and the information regarding other deaths is relevant to Plaintiffs' *Monell* claims. Other factors arguably weigh against disclosure, including the potential for disclosure of identities of individuals who died in the jails and the potential that "government self-evaluation and consequent program improvement will be chilled by

---

[6] Those factors include: "(1) The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) The impact upon persons who have given information of having their identities disclosed; (3) The degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) Whether the information sought is factual data or evaluative summary; (5) Whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) Whether the police investigation has been completed; (7) Whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) Whether the plaintiff's suit is non-frivolous and brought in good faith; (9) Whether the information sought is available through other discovery or from other sources; [and] (10) The importance of the information sought to the plaintiff's case." *Kelly*, 114 F.R.D. at 663.

disclosure." *Kelly*, 114 F.R.D. at 663.  However, the absence of evidence from the County precludes a finding of any chilling effect beyond the generalized assertions that courts have found insufficient to deny disclosure under the official information privilege. *Shiflett*, 2023 WL 4551077, at *3 (collecting cases).  And the operative Protective Order assuages any concern that information about nonparties would be disclosed outside of the litigation. The Court concludes the balancing analysis weighs in favor of disclosure of the CIRB Reports to Plaintiffs under the Protective Order.

### 4.   Deliberative process privilege

Federal law "shields from public disclosure confidential interagency memoranda on matters of law or policy." *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1116 (9th Cir. 1988).  This deliberative process privilege applies to documents that "reflect advisory opinions recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (hereafter "*Warner*").  The document "must be predecisional – i.e., it must have been generated before the adoption of a policy or decision," and it "must be deliberative in nature, containing opinions, recommendation, or advice about . . . policies [or decisions]." *Id.*  In assessing whether the document is deliberative in nature, the inquiry is "whether the requested information independently reflects the deliberative process itself" because "purely factual material that does not reflect deliberative processes is not protected," and "[o]nly those portions of a predecisional document that reflect the give and take of the deliberative process may be withheld." *Shiflett*, 2023 WL 4551077, at *4.

"The deliberative process privilege is a qualified one," and "[a] litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *Warner*, 742 F.2d at 1161. "Among the factors to be considered in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion

regarding contemplated policies and decisions." *Id.* The Court may also consider "(5) the interest of the litigant, and ultimately society, in accurate judicial fact finding, (6) the seriousness of the litigation and the issues involved, (7) the presence of issues concerning alleged governmental misconduct, and (8) the federal interest in the enforcement of federal law." *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003). The County bears the burden of establishing the deliberative process privilege applies to the 19 CIRB Reports. *Shiflett*, 2023 WL 4551077, at *2.

The County has not met its burden for multiple reasons.[7] First, the County's brief fails to explain how the privilege applies to the 19 CIRB Reports. Dkt. No. 119 at 6. Second, even overlooking this failure, the County's apparent position that the deliberative process privilege applies to the entirety of every CIRB Report is not well-taken. "Only those portions of a predecisional document that reflect the give and take of the deliberative process may be withheld." *Shiflett*, 2023 WL 4551077, at *4. It is true that factual materials may be exempt from disclosure under certain circumstances. *Nat'l Wildlife Fed'n*, 861 F.2d at 1119 ("whenever the unveiling of factual materials would be tantamount to the publication of the evaluation and analysis of the multitudinous facts conducted by the agency, the deliberative process privilege applies"). However, the County's brief does not explain how the factual materials contained in the CIRB Reports are "tantamount to

---

[7] There is authority for the proposition that "the deliberative process privilege generally does not apply in civil rights lawsuits to protect from disclosure internal affairs documents, investigations, and records of witness/police officer statements, as these routinely generated communications are not designed to contribute to the formulation of important public policy." *Shiflett*, 2023 WL 4551077, at *5. However, in the absence of controlling Ninth Circuit authority addressing this issue, the Court assumes the privilege applies. *See Llera v. Las Vegas Metro. Police Dep't*, 564 F. Supp. 3d 914, 918–19 (D. Nev. 2021) ("Because the deliberative process privilege is a privilege that the government can utilize to protect some deliberative material and the Court has not located any controlling authority stating that the privilege cannot be used in civil rights cases, the Court does not agree that it is inapplicable here.").

1  the publication of the evaluation and analysis of the multitudinous facts conducted by the

2  agency." *Id*.[8]

3      Third, even looking beyond the County's failure to justify its assertion the wholesale

4  application of the privilege to the 19 CIRB Reports, and even assuming the privilege

5  applies to all these documents, the County does not offer any argument or analysis as to

6  whether Plaintiffs' "need for the materials and the need for accurate fact-finding override

7  the government's interest in non-disclosure." *Warner*, 742 F.2d at 1161.

8      Fourth, although the County's failure to meet its burden is dispositive, the Court has

9  independently considered the *Warner* factors and concludes they support disclosure of the

10  CIRB Reports.  The CIRB Reports are relevant to Plaintiffs' *Monell* claim, as explained

11  further below, and there is no indication that Plaintiffs can obtain information regarding

12  other incidents relevant to the existence (or not) of a municipal policy that Plaintiffs must

13  establish to prevail on that claim. As a party to this action, the County "is not an uninvolved

14  entity that is being asked to disclose a typically confidential document for little reason."

15  *Llera*, 564 F. Supp. 3d at 920.   And although disclosure of the CIRB Reports could

16  potentially affect the willingness of CIRB participants to speak freely, there is no evidence

17  in the record that disclosure of CIRB Reports pursuant to the Protective Order in this case

18  would have such a chilling effect.  *See id.* (holding deliberative process privilege did not

19  prevent disclosure of Critical Incident Review Team report in federal civil rights case and

20  concluding that fourth *Warner* factor did not support application of privilege, and noting

21  "it is also entirely possible that if officers knew their reports would be public, they might

22  be more thorough, accurate, deliberative, and candid . . .").  As such, Plaintiffs' need for

23

24

---

25  [8]    Baranic testified that "policy changes don't come out of CIRB," and "[t]here's a
26  procedure to change department policy, which accounts for 99 percent of the changes that
   occur."  Baranic Trans. at 83:11-17.  This arguably weighs finding the deliberative process
27  privilege applies to the CIRB Reports, but the parties did not address this portion of
   Baranic's testimony in their briefing, and the Court will not consider it in determining
28  whether the County has met its burden to establish the privilege applies here.

the CIRB Reports "override[s] the [County's] interest in non-disclosure," *Warner*, 742 F.2d at 1161, and production pursuant to the Protective Order "will sufficiently protect [the County's] interests." *Al Otro Lado, Inc. v. Wolf*, No. 3:17-CV-2366-BAS-KSC, 2020 WL 6449152, at *5 (S.D. Cal. Nov. 2, 2020) (overruling deliberative process privilege objection to production of documents).

### 5.   Law enforcement investigatory privilege

"Although the Ninth Circuit has not expressly recognized the law enforcement privilege, several courts within this Circuit have acknowledged and applied it." *Lien v. City of San Diego*, No. 21-cv-224-MMA-WVG, 2022 WL 134896, at *2 (S.D. Cal. Jan. 14, 2022). The privilege "is based on the harm to law enforcement efforts that might arise from public disclosure of investigatory files." *Id.*

A party asserting the privilege must meet the following requirements:

> (1) there must be a formal claim of privilege by the head of the department having control over the requested information, (2) assertion of the privilege must be based on actual personal consideration by that official, and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege.

*Roman v. Wolf*, No. EDCV20-768-TJH(PVC), 2020 WL 6588399, at *2 (C.D. Cal. July 16, 2020). Thus, in *Lien*, the District Court found the privilege applied to internal documents maintained by the San Diego Police Department relating to "an ongoing, pending criminal prosecution" and "ongoing active criminal investigations" and affirmed the production of those documents to the civil action plaintiffs with redactions to information identifying those individuals. *Lien*, 2022 WL 134896, at **3-4.

Assuming the County is relying on Baranic's declaration to make the required showing, Baranic does not explain how disclosure of the CIRB Reports subject to the existing Protective Order could cause "harm to law enforcement efforts" such as pending investigations or prosecutions. *Lien*, 2022 WL 134896, at *2. Nor does Baranic explain how redactions to specific portions of the CIRB Reports would be insufficient to protect the integrity of any unspecified investigations or prosecutions. *See id.* at **4-5 (upholding

21-cv-1428-MMA-DDL

redactions to names of individuals subject to ongoing investigation and prosecution).  For all these reasons, the County has not met its burden to establish the law enforcement investigatory privilege applies to the CIRB Reports.

### 6.    Privacy considerations

The CIRB Reports contain information regarding Sheriff's Department employees as well as confidential medical information regarding the individuals who died in Sheriff's Department custody.  The County asserts privacy rights on behalf of both groups.

"Federal courts recognize a constitutionally-based right of privacy that can be raised in response to discovery requests." *Carr v. Cnty. of San Diego*, No. 19-cv-1139-JLS-MDD, 2020 WL 7074881, at *4 (S.D. Cal. Dec. 3, 2020).  "Resolution of a privacy objection . . . requires a balancing of the need for the information sought against the privacy right asserted." *Soto*, 162 F.R.D. at 616.  "However, these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments." *Id.*  "[P]rivacy objections can be appropriately addressed by: (1) redacting any personal identifying information from the documents produced; and (2) producing documents under a protective order to minimize any invasion into the individual's privacy rights." *Stuart v. Cnty. of Riverside*, No. 522CV701SPGMAR, 2023 WL 4826231, at *2 (C.D. Cal. June 15, 2023).

As explained below, the CIRB Reports contain information that is relevant to Plaintiffs' municipal liability claim, and there is no showing this information is available to Plaintiffs through other means.  Production of the CIRB Reports subject to the existing Protective Order will adequately protect the privacy interests of inmates and Sheriff's Department employees.  To the extent the CIRB Reports contain personal identifiable information  regarding Sheriff's Department employees (other than their names and titles) such as marital status, spouse names, children's names, driver's license numbers, Social Security numbers and home addresses, the County may redact that information.  *Stuart*, 2023 WL 4826231, at **3-4.

/ / /

As to the privacy rights of individuals who died in Sheriff's Department custody, the County correctly points out the Health Insurance Portability and Accountability Act ("HIPAA") protects personal health information for 50 years after death.   45 C.F.R. § 160.103.  HIPAA also provides that protected health information may be disclosed "[i]n response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order."  45 C.F.R. § 164.512(e)(1)(i).  The existing Protective Order adequately protects these privacy concerns and any similar concerns falling under the California Confidentiality of Medical Information Act.  *See A.H. v. Cnty. of Los Angeles*, No. CV 22-03671-SB (ASX), 2023 WL 3035349, at *4 (C.D. Cal. Jan. 19, 2023) ("Given the protective order in place, Court is likewise unpersuaded by Plaintiffs' assertion that HIPAA bars disclosure of these records."); *Marsh v. Cnty. of San Diego*, No. CIV. 05CV1568 JLS AJB, 2007 WL 3023478, at *3 (S.D. Cal. Oct. 15, 2007).

### 7.   Relevance and proportionality

The Federal Rules of Civil Procedure permit a broad scope of discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevance requirement of Rule 26." *FlowRider Surf, Ltd. v. Pacific Surf Designs, Inc.*, No. 15-cv-1879-BEN-BLM, 2016 WL 6522807, at *2 (S.D. Cal. Nov. 3, 2016).

Plaintiffs assert the CIRB Reports are relevant to their claim against the County under *Monell v. Dep't of Soc. Serv. of the City of N.Y.*, 436 U.S. 658 (1978).  To successfully establish *Monell* liability, a plaintiff must show: "(1) [the plaintiff] was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted

to deliberate indifference to [the plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). A municipal policy may be established by showing: (1) "a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity"; (2) "the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official government policy"; or (3) "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992) (internal quotations omitted).

Plaintiffs allege the County had an inadequate suicide prevention and training program (Dkt. No. 28 at ¶¶ 77-103) and was "deliberately indifferent by failing to adequately train its medical staff how to identify inmates that are a high-risk for suicide and how to properly treat and house those inmates on a continued basis." *Id.* at ¶ 104. On the present record, Plaintiffs have adequately shown that information regarding other in-custody suicides contained in the CIRB Reports is "relevant to a claim or defense" for purposes of the Fed. R. Civ. P. 26(b) analysis. *See* Fed. R. Evid. 401 (evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action"). Having reviewed the 19 CIRB Reports *in camera*, the Court finds the Reports contain information pertaining to other inmate suicides that is relevant and proportional to the needs of the case under Rule 26(b).

**B.    Internal Affairs Reports**

Plaintiffs move to compel production of three Sheriff's Department's Internal Affairs reports pertaining to other inmates who committed suicide. The County contends the reports are subject to the official information privilege and submits the declaration of Lieutenant Ruben Medina in support of its privilege assertion. Dkt. No. 119-2.

As noted above, the party asserting the official information privilege must properly invoke the privilege by making a "substantial threshold showing." *Kelly*, 114 F.R.D. at 669. Medina's declaration fulfills the first two requirements in that he avers Internal Affairs reports are confidential and that he has personally reviewed the Internal Affairs reports at issue. Dkt. No. 119-2 at 3, ¶¶ 3-4.

The remainder of Medina's declaration, however, proffers only generalized concerns regarding disclosure of information in Internal Affairs reports. He states, "[d]isclosure of certain information about law enforcement personnel can jeopardize their safety and the safety of their families, and subject them to harassment or intimidation." *Id.* at ¶ 5. Medina further declares "constructive or negative criticism is sometimes necessary in evaluating the performance of one's subordinates," and "[c]onsistency and confidence in the Internal Affairs process enhances critical and candid assessments and is vital to deputies, their superiors, and the public." *Id.* at 4, ¶ 6. Further, he asserts general concerns regarding dissemination of Internal Affairs reports, such as "discourag[ing] individuals from providing complete and candid information in the investigation process" and "disrupt[ing] the critical, day to day operations of the Department." *Id.* at ¶ 7.

These generalized concerns, untethered to the facts of this case, do not make the requisite substantial threshold showing to satisfy the third, fourth or fifth factors. As to the third factor – identification of the specific privacy interests that would be threatened with disclosure in this case – Medina provides broad statements about the risks of disclosure generally. But to satisfy this factor, the County "must specifically describe how disclosure of the requested documents in that particular case . . . would be harmful." *Soto*, 162 F.R.D. at 614. Medina does not address the fourth factor in that he does not attempt to explain how disclosure pursuant to the Protective Order would create a substantial risk of harm to significant governmental or privacy interests. *See Simon v. City of Los Angeles*, No. 222CV01775SSSGJSX, 2023 WL 3402628, at *7 (C.D. Cal. Apr. 21, 2023) (granting motion to compel production of LAPD Internal Affairs records where declaration offered in support of official information privilege invocation "only generally asserts speculative

harm that may result if officers' private information is disclosed and has failed to explain why disclosure of responsive documents in this case would be detrimental if done pursuant to a carefully crafted protective order, such as the one already issued in this action"). Finally, Medina does not project the degree of harm that would be caused by disclosure to Plaintiffs of the three Internal Affairs reports relating to other in-custody suicides.

Even if Medina's declaration were sufficient to make the requisite substantial threshold showing to assert the privilege, the County does not address the Court's obligation to balance the parties' respective interests in determining whether the privilege should bar disclosure under the facts of this case. *Shiflett*, 2023 WL 4551077, at **2-3. The Court has reviewed the Internal Affairs reports and concludes the same factors applicable to the CIRB Reports weigh in favor of disclosure under the Protective Order. *Kelly*, 114 F.R.D. at 663.

Investigations into in-custody suicides are relevant to Plaintiffs' *Monell* claim, *Simon*, 2023 WL 3402628, at *7, and the County's contention that the Internal Affairs reports will be inadmissible at trial is unpersuasive because "[i]nformation within th[e] scope of discovery need not be admissible to be discoverable." Fed. R. Civ. P. 26(b)(1). The Internal Affairs reports are relevant to Plaintiffs' claims, and their production is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

**C.    CLERB Reports**

The County asserts it will produce all responsive CLERB Reports in its possession, custody or control. Dkt. No 119-3. Based on this representation, the Court agrees with the County that this issue is moot.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**IV.**

**CONCLUSION**

For all the foregoing reasons, Plaintiffs' motion to compel is **GRANTED IN PART** and **DENIED IN PART AS MOOT** as follows:

1.     By not later than **October 4, 2023**, the County must produce to Plaintiffs the 19 CIRB Reports identified in its privilege log.   The County must produce the CIRB Reports without redactions except as described below.

2.     By not later than **October 4, 2023**, the County must produce to Plaintiffs the three Internal Affairs reports identified in its privilege log.

3.     As to both the CIRB Reports and the Internal Affairs reports, the County may redact personal identifiable information regarding Sheriff's Department employees (other than their names and titles).

**IT IS SO ORDERED.**

Dated: September 20, 2023

_David Leshner_

_____

Hon. David D. Leshner
United States Magistrate Judge