**Claudia G. Silva, County Counsel (State Bar No. 167868)**
**Fernando Kish, Senior Deputy (State Bar No. 236961)**
**Andrei Dumitrescu, Senior Deputy (State Bar No. 320456)**
**OFFICE OF COUNTY COUNSEL, SAN DIEGO**
**1600 Pacific Highway, Room 355**
**San Diego, CA 92101**
**619-531-6229**
**Email: Andrei.dumitrescu@sdcounty.ca.gov**
**Email: Fernando.kish@sdcounty.ca.gov**

**Michael L. Wroniak, Esq. (State Bar No. 210347)**
**Rada Feldman, Esq. (State Bar No. 285931)**
**Bianca M. Bonjean, Esq. (State Bar No. 342297)**
**COLLINS + COLLINS LLP**
**750 The City Drive, Suite 400**
**Orange, CA 92868**
**(714) 823-4100 – FAX (714) 823-4101**
**Email: mwroniak@ccllp.law**
**Email: rfeldman@ccllp.law**
**Email: bbonjean@ccllp.law**

Attorneys for Defendants
COUNTY OF SAN DIEGO, HOSANNA ALTO and JANINE SPARKS

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

MARILYN MORTON, Individually, and as Successor in Interest to JOSEPH MORTON, and DEAN MORTON, Individually,

Plaintiffs,

vs.

COUNTY OF SAN DIEGO, BIJAN RAHMANI, Individually, HOSANNA ALTO, Individually, MATTHEW BERLIN, Individually, LIBERTY HEALTHCARE, JANINE SPARKS, Individually, CHRISTOPHER KAGAY,

CASE NO. 3:21-cv-01428-MMA-DDL
*Judge Michael M. Anello, Courtroom 3C*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**Date: July 8, 2024**
**Time: 2:30PM**
**Courtroom: C3**

| | |
|---|---|
| Individually, AND DOES 1-10, inclusive,<br>Defendants. | **Complaint Filed: 08/09/2021**<br>**Trial Date: None** |

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 1

A. Morton's Arrest And Booking At VDF From May 11 to May 17, 2020 ..... 1

B. Events After Morton's Death ..... 5

III. LEGAL STANDARD FOR SUMMARY JUDGMENT ..... 6

IV. PLAINTIFFS' SECTION 1983 CLAIMS FAIL AS A MATTER OF LAW ..... 7

A. Plaintiffs cannot establish a constitutional violation or causation as to either Defendants Alto or Sparks. ..... 7

1. No Constitutional Violation by Alto and no Causation ..... 8

2. Alto is Entitled to Qualified Immunity ..... 12

3. No Constitutional Violation by Sparks and no Causation ..... 14

4. Sparks is Entitled to Qualified Immunity ..... 17

B. Plaintiffs' Section 1983 Claim Against County Fails as a Matter of Law ..... 18

V. PLAINTIFFS' STATE LAW TORT CLAIMS AGAINST ALTO AND SPARKS FAIL AS A MATTER OF LAW ..... 20

A. Plaintiffs' State Law Tort Claims are Barred by the Statute of Limitations ..... 20

B. Plaintiffs' Tort Claims Against Alto Fail as a Matter of Law ..... 21

C. Plaintiffs' Tort Claims Against Sparks Fail as a Matter of Law ..... 23

D. Plaintiffs' Wrongful Death Claim Against Alto and Sparks Fail as a Matter of Law ..... 24

E. Mr. Morton Lacks Standing for Failure to Comply with Tort Claim Act ..... 24

F. Alto and Sparks are Statutorily Immune from Liability ..... 25

VI. CONCLUSION ..... 25

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

# TABLE OF AUTHORITIES


Page(s)

Cases

886 F.2d 235 (9th Cir. 1989) .......... 18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 6

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) .......... 12, 17

*Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997) .......... 19

*Bremer v. Cnty. of Contra Costa*, No. 15-CV-01895-JSC, 2016 WL 6822011 (N.D. Cal. Nov. 18, 2016) .......... 10, 16

*Cabrales v. County of Los Angeles*, 864 F.2d 1454 (9th Cir. 1988) .......... 18

*Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) .......... 7, 9, 10, 12

*Cavanaugh v. Cty. of San Diego*, No. 18cv02557-BEN (LL), 2020 WL 6703592 (November 12, 2020) .......... 12, 15, 16, 20 , 23, 24

*Gilbert v. Turner*, No. 22-56217, 2024 WL 1947137 (9th Cir. May 3, 2024) .......... 13, 18

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......... 6,

*Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232 (9th Cir. 2010) .......... 13

*Connick v. Thompson*, 563 U.S. 51 (2011) .......... 7, 19

*Davidson v. Cannon*, 474 U.S. 344 (1986) .......... 10, 14

*Est. of Barrick v. Cnty. of San Joaquin*, No. 2:18-CV-02216-MCE-DB, 2021 WL 5331456 (E.D. Cal. Nov. 16, 2021). 15, 17

*Est. of Kong by & through Kong v. City of San Diego*, No. 22-CV-1858-BAS-DDL, 2023 WL 4939370 (S.D. Cal. Aug. 2, 2023) .......... 25

*Estelle v. Gamble*, 429 U.S. 97 (1976) .......... 7

*Gordon v. Cty. of Orange*, 888 F.3d 1118 (9th Cir. 2018) .......... 7, 11 14


COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

*Gutierrez v. Mofid*,
39 Cal. 3d 892 (1985) ....................................................................................... 21
*Harlow v. Fitzgerald*,
457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ........................................ 12, 17
*Horton by Horton v. City of Santa Maria*,
915 F.3d 592 (9th Cir. 2019) ............................................................................ 12, 17
*Horwich v. Super. Ct.*,
21 Cal.4th 272 (1999) ....................................................................................... 25
*Hunter v. Bryant*,
502 U.S. 224 (1991) .......................................................................................... 12
*Klahn v. Alameda Cnty. Sheriff's Dep't*,
No. 16-CV-00833-JCS, 2017 WL 2021370 (N.D. Cal. May 12, 2017) ................... 20
*Leer v. Murphy*,
844 F.2d 628 (9th Cir. 1988) ................................................................................ 7
*Lemoon v. California Forensic Med. Grp., Inc.*,
575 F. Supp. 3d 1212 (N.D. Cal. 2021) ........................................................... 15, 20
*Lucas v. City of Long Beach*,
60 Cal. App. 3d 341, 131 Cal.Rptr. 470 (1976) .................................................. 23, 24
*Malley,*
*supra,* 475 U.S. 341 ........................................................................................... 12
*Matysik v. Cnty. of Santa Clara*,
No. 16-CV-06223-LHK, 2018 WL 732724 (N.D. Cal. Feb. 6, 2018) ...................... 16
*Medina v. Cnty. of Los Angeles*,
No. CV 19-3808-GW-EX, 2020 WL 3964793 (C.D. Cal. Mar. 9, 2020) ................ 11
*Moriarty v. Cnty. of San Diego*,
No. 17CV1154-LAB (AGS), 2019 WL 1282002 (S.D. Cal. Mar. 20, 2019) .... passim
*NeSmith v. Cty. of San Diego*,
2016 WL 4515857 (S.D. Cal. Jan. 27, 2016) ........................................................ 13
*NeSmith v. Olsen*,
808 F. App'x 442 (9th Cir. 2020) ......................................................................... 13
*Oviatt v. Pearce*,
954 F.2d 1470 (9th Cir. 1992) .............................................................................. 19
*Park v. City & Cnty. of Honolulu*,
No. CV 17-00142 ACK-KSC, 2018 WL 3764084 (D. Haw. Aug. 8, 2018) ............ 20
*Quiroz v. Seventh Ave. Center*,
45 Cal. Rptr. 3d 222 (Ct. App. 2006) ................................................................... 24
*Regal v. Cnty. of Santa Clara*,
No. 22-CV-04321-BLF, 2023 WL 7194879 (N.D. Cal. Oct. 31, 2023) ................... 14
*Remijio v. The County of Santa Barbara*,
No. 22CV01496, 2023 WL 9510748 (Cal.Super. Dec. 07, 2023) ........................... 22

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

*Sandoval v. County of San Diego*,
985 F.3d 657 (9th Cir. 2021) .......... 10, 11
*Simmons v. Navajo Cnty.*, Ariz.,
609 F.3d 1011 (9th Cir. 2010) .......... 9
*Stevens v. Aranas*,
No. 215CV01002JADNJK, 2018 WL 1040086 (D. Nev. Feb. 23, 2018) .......... 11
*Tater v. City of Huntington Beach*,
No. 820CV01772MEMFJDEX, 2023 WL 4291656 (C.D. Cal. May 8, 2023) .......... 18
*Taylor v. Barkes*,
575 U.S. 822 (2015) .......... 13, 18
*Timmel v. Moss*,
803 F.2d 519 (9th Cir. 1986) .......... 21
*Toguchi v. Chung*,
391 F.3d 1051 (9th Cir. 2004) .......... 10
*U.S. v. State of Cal.,*
655 F.2d 914 (9th Cir.1980) .......... 25
*Van Ort v. Estate of Stanewich*,
92 F.3d 831 (9th Cir. 1996) .......... 8
*Vasquez v. Cnty. of Santa Clara,*
No. 5:16-CV-05436-EJD, 2017 WL 6513647 (N.D. Cal. Dec. 20, 2017) .......... 9, 10
*Villegas v. Gilroy Garlic Festival Ass'n*,
541 F.3d 950 (9th Cir. 2008) .......... 19
*Wilhelm v. Rotman*,
680 F.3d 1113 (9th Cir. 2012) .......... 14

Statutes

42 U.S.C. § 1983 .......... 1
Cal. Code. Civ. Proc. § 340.5 .......... 20
Cal. Govt. Code § 945.4 .......... 25
Cal. Gov't. Code § 911.2(a) .......... 25
Cal. Gov't Code § 844.6, 845.6, 855.6, 855.8 .......... 26
Cal. Welf. & Inst. Code § 5150 .......... 2
Cal. Code Civ. Proc. § 377.6 .......... 24
California Gov't Code § 845.6 .......... 22, 23, 26

Rules

Fed. R. Civ. P. 56(c)(2) .......... 6

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

## I. INTRODUCTION

This case arises from the in-custody death of Joseph Morton ("Morton") at Vista Detention Facility ("VDF"). Morton was arrested for attempted robbery and booked at VDF on May 11, 2020, one day after release from a 5150 hold. Morton committed suicide six days later, on May 17. Plaintiffs allege medical care claims under 42 U.S.C. § 1983 and state law theories claiming that Morton should have been designated as "high risk" for suicide and placed in a safety cell in Inmate Safety Program (ISP) housing.

Defendants County of San Diego, Hosanna Alto, and Janine Sparks ("County Defendants") are entitled to summary judgment of Plaintiffs' claims in their entirety. Mental health clinicians (MHC) Alto and Sparks were not deliberately indifferent to Morton's suicide risk. Alto properly assessed Morton as "low risk" because he denied being suicidal and was not in distress. Sparks was assigned to complete Morton's ISP follow-up, but Liberty psychologist Dr. Matthew Berlin assessed Morton for suicide risk after his release from ISP which served the same function. Dr. Berlin was the only provider to assess Morton after he made a suicidal statement, finding that he was not suicidal and did not need ISP housing placement. Thus, County Defendants cannot be liable for Morton's death because there is no causation.

County Defendants did not violate Morton's civil rights and Alto and Sparks are entitled to qualified immunity. There was no deliberate indifference or violation of a clearly established right. Additionally, the state law claims are time-barred.

## II. STATEMENT OF FACTS

### A. Morton's Arrest And Booking At VDF From May 11 to May 17, 2020

**Monday 05/11/2020:** On Monday May 11, 2020, Joseph Morton ("Morton") was arrested and booked at Vista Detention Facility ("VDF") for attempted robbery, stolen property/ID, and willful cruelty to child without injury or death. **UF1.** Morton was arrested in a Walmart parking lot after he approached a man in a car with kids and demanded cash with a fake gun and used a stolen credit card. **UF2.** He told the arresting

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

officers about his release from 72-hour hold under Cal. Welf. & Inst. Code § 5150 on May 10 for attempted suicide by CO2 poisoning. **UF3.** At intake on May 11, at 6:43PM, Nurse Samantha Macanlalay flagged Morton for suicide risk and referred him to Liberty Psychologist Dr. Bijan Rahmani ("Dr. Rahmani") for assessment. **UF4**. Macanlalay also initiated alcohol withdrawal protocol (CIWA) noting that Morton was asymptomatic but was anticipating alcohol withdrawal, and Morton received Librium May 12 through May 14, 2020 as treatment. **UF5.**

At 7:06PM, Dr. Rahmani performed the initial gatekeeping assessment of Morton to evaluate suicide risk and determine housing placement. **UF6**. Dr. Rahmani worked as a contracted provider and was employed by Liberty. **UF7**. Dr. Rahmani determined Morton was low risk suicide, placed him in the Inmate Safety Program (ISP) in Enhanced Observation Housing (EOH), and referred Morton for psychiatric medication evaluation in 24 hours. **UF8**. Dr. Rahmani noted Morton had a previous suicide attempt was released from a 5150 hold and was "still thinking about suicide but does not have any plans." **UF9.** Dr. Rahmani scheduled a Psychiatric Sick Call for medication evaluation for antidepressants to take place within 24 hours with Liberty Psychiatric Nurse Practitioner Christopher Kagay. **UF10.**

Pursuant to Dr. Rahmani's assessment, Morton arrived in EOH at 7:40PM and Nurse Lindsay Jameson noted Morton's steady gait, even and unlabored breathing, and no acute distress. **UF11.** At 9:30PM, Nurse Paul Mata performed a wellness check for Morton in EOH and reported that Morton denied current suicidal ideation, showed no signs of acute medical distress, and presented as upbeat. **UF12.**

**Tuesday 05/12/2020:** The next morning on May 12, 2020, at 5:14AM, Nurse Jameson completed a second stage nurse evaluation for Morton and confirmed CIWA protocol for withdrawal treatment. **UF13.**

On Tuesday May 12, 2020, at 7:23AM, County Mental Health Clinician ("MHC") Hosanna Alto ("Alto") completed a second ISP assessment of Morton after his placement in EOH. **UF14.** Morton denied suicidal ideation. **UF15.** It was noted that

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

Morton's alcohol withdrawal was being monitored and he was on withdrawal protocol and medication. **UF16.** Alto determined Morton was low risk for suicide, noting multiple protective factors, including no signs of depression, no verbalized suicidal statements, the prior suicide attempt was related to alcohol abuse, desire to resume anti-depressants and return to rehab, hopefulness about the future, and goal-oriented with positive future plans and has support of his girlfriend who he reported talking to all night via phone. **UF17.** In her assessment, Alto noted there were no observed or reported depressive symptoms and Morton was upbeat and talkative. **UF18**. As noted in the assessment, Morton's charges were not high publicity with serious felony charges or a child-victim crime. **UF19**. Per policy, Morton was cleared from EOH as this was the second low risk designation after Gatekeeper Dr. Rahmani's initial gatekeeping assessment of low risk. **UF20.** Alto noted Morton had a psychiatric medication evaluation already scheduled, and per policy, scheduled a 24-hour ISP follow-up wellness check for Morton after release from the ISP housing program. **UF21.** After Alto's assessment, Morton was released from ISP and moved to the housing module. **UF22.**

At 2:20PM in the housing module, Morton told Deputy Marc Myers that he was suicidal and when asked if he has a plan, said "I would use my blanket to hang myself!" **UF23.** Deputy Myers escorted Morton to medical where he was first evaluated by Nurse Myra Rada. **UF24.** Nurse Rada reported that Morton was going to gatekeeping for evaluation, "claims [suicidal ideation] 'I will do it with a sheet,'" was not in distress, and had no signs of alcohol withdrawal. **UF25.**

At 2:23PM, Liberty Psychologist Dr. Matthew Berlin ("Dr. Berlin") performed a gatekeeping assessment of Morton to evaluate him for suicide risk and potential ISP placement due to Morton's suicidal statements made to Deputy Myers. **UF26.** Dr. Berlin determined Morton was not suicidal and did not require placement in ISP housing, noting that Morton only said he was suicidal so he could return to EOH to use the phone. **UF27**. Dr. Berlin was the only provider to assess Morton after his in-custody suicidal



COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

statement on May 12, 2020. **UF28**. Dr. Berlin was the last provider to evaluate Morton for suicide risk and determine Morton's housing placement. **UF29**. Morton's suicidal statement made to Deputy Myers on May 12, 2020 is the only time that Morton communicated suicidal ideation to VDF staff. **UF30**.

**Wednesday 05/13/2020-Friday 05/15/2020**: Liberty Psychiatric Nurse Practitioner Christopher Kagay ("Kagay") was the on-site psychiatric provider at VDF on May 13, 2024, and was responsible for completing Morton's Chart Check, pharmacy record review, and Psychiatric Sick Call for medication evaluation scheduled by Dr. Rahmani. **UF31.** On May 13, 2020, Kagay completed Morton's Chart Check, including review of Dr. Berlin's gatekeeping note, and reviewed Morton's CVS Pharmacy records and determined that Morton did not require immediate medication evaluation. **UF32**. Kagay did not see Morton on May 13, 2020, for a medication evaluation, did not prepare a treatment plan for Morton, and did not prescribe and/or order psychiatric medication and/or anti-depressants for Morton. **UF33.** Kagay cancelled the May 13, 2020, 24-hour Psych Sick Call appointment and scheduled a new appointment for May 20, 2020. **UF34.** Kagay worked as a contracted provider and was employed by Liberty. **UF35**. County policy requires that psychotropic medications be ordered by a psychiatric provider. **UF36**.

Between May 13, 2020, and May 15, 2020, medical staff assessed Morton for alcohol withdrawal follow-ups and x-rays, completed Chart Checks, and noted that Morton did not show signs of withdrawal. **UF37.** On May 13, 2020, at 12:08PM, Nurse Andrew Medina completed an alcohol withdrawal follow-up assessment for Morton and noted that Morton had no symptoms, was calm and cooperative, and voiced no complaints. **UF38.** Morton completed and was cleared from CIWA protocol on May 14, 2020. **UF39.**

Mental Health Clinician Janine Sparks ("Sparks") worked at VDF from Tuesday May 12 through Saturday May 16, 2020. **UF40**. Sparks was responsible for MHC sick call and follow-up appointments for patients across five (5) housing modules, including

Morton's housing module, clinic mental health appointments, AdSeg (Administrative Segregation) wellness checks and evaluations, and gatekeeping assessments as needed. **UF41**. Sparks was unable to complete all appointments on her sick call list, including Morton's appointment, during this period due to mandatory COVID-cleaning and jail protocols reducing the number of patients who could be seen. **UF42**. Sparks worked as an MHC at VDF through the pandemic while being regularly exposed to Covid without issue. **UF43**. Between May 12, 2020 and May 16, 2020, Sparks did not observe, interact, or communicate with Morton, was not aware of Morton's May 12, 2020 in-custody suicidal statement and assessment by Dr. Berlin, and did not have knowledge of Morton's mental state or whether he was housed alone or with a cellmate. **UF44.**

**Saturday 05/16/2020-Sunday 05/17/2020**: Mrs. Morton and Dean Morton ("Mr. Morton") were the parents of Joseph Morton. **UF45**. Beginning on May 12, Morton threatened suicide to Mrs. Morton and to his girlfriend Elaine Luong ("Luong") over the phone on six separate occasions, including the morning of May 17, 2020.[1] **UF46**. On the evening of Sunday May 17, 2020, Morton committed suicide by hanging himself in his cell. **UF47**. Mrs. Morton, Luong, and Morton's sister Linnea Morton ("Linnea") were each aware of the suicidal statements Morton made to Mrs. Morton and Luong while in custody and testified that they did not report Morton's suicidal threats. **UF48.** Sparks was not working at VDF on Sunday, May 17, 2020. **UF49**.

**B. Events After Morton's Death**

After Morton's death, County homicide detectives interviewed Mrs. Morton, Linnea Morton, and Luong. **UF50**. On May 19, 2020, during a phone call with homicide detective Sisto, Mrs. Morton stated that Morton had been threatening to commit suicide and asked whether the County had Morton on "suicide watch." **UF51.** During the May 19 phone call, Det. Sisto indicated that Morton was checked on regularly and Mrs.

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

[1] May 12 at 5:41PM to Luong, May 15 at 7:15PM to Mrs. Morton, May 16 at 7:07PM to Luong, May 16 at 7:23PM to Mrs. Morton, May 17 at 7:13AM to Mrs. Morton, and May 17 at 8:00AM to Luong. See UF46; DAE, Exhs. 30 (A)-30 (F).

Morton said based on her experience working at a jail she knew this was "somewhat not true." **UF52.**

In May 2020, Linnea Morton spoke with a reporter from the SD Union Tribune regarding Morton's death and said: "They won't talk to us at all, the Sheriff's Department." **UF53.** In June 2020, Mrs. Morton and Linnea retained counsel and records requests were submitted to the County on Mrs. Morton's behalf. **UF54.**

On November 6, 2020, Mrs. Morton filed a Tort Claim against County. **UF55.** Mr. Morton did not file a tort claim. **UF56.** Mr. Morton passed away during this action and Morton's sister Linnea Morton has stepped in as plaintiff for Mr. Morton. **UF57.**

**C. County's Policies and Training:**

During the relevant time period of 2020, the County maintained and enforced policies and procedures regarding suicide prevention. **UF58.** The Mental Health Clinicians had extensive training, education, and experience and received training on suicide prevention. **UF59.** The Liberty Providers were trained with regard to the County's policies on suicide prevention. **UF60.** The Liberty providers had extensive training, education, and experience. **UF61.**

## III. <u>LEGAL STANDARD FOR SUMMARY JUDGMENT</u>

A moving party is entitled to summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). If summary judgment is not granted on the entire action, a court may render partial summary judgment on individual issues as to which there remains no genuine issue of material fact. *Id*. (b), (d).The moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). It need not disprove the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this burden, the opposing party must set forth specific facts, through affidavits

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

or admissible discovery materials, showing that there exists a genuine issue for trial. *Id*. at 323-24.

## IV. PLAINTIFFS' SECTION 1983 CLAIMS FAIL AS A MATTER OF LAW

### A. Plaintiffs cannot establish a constitutional violation or causation as to either Defendants Alto or Sparks.

The Ninth Circuit applies an "objective deliberate indifference standard" to a pretrial detainee's Fourteenth Amendment claims against individual defendants for a failure to protect from harm or provide adequate medical care. *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124–45 (9th Cir. 2018) (citing *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016)). To succeed on a medical care or failure-to-protect claim, a plaintiff must prove:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id*. at 1125.

Deliberately indifferent conduct must be objectively unreasonable under the circumstances. *Castro,* 833 F.3d at 1080. Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's rights. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Plaintiffs must prove "more than negligence but less than subjective intent—something akin to reckless disregard." *Gordon*, 888 F.3d at 1125; *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action").

Liability under Section 1983 requires actual and proximate cause. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). Traditional tort law principles regarding

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

intervening causes that break the chain of proximate causation apply. *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996).

Plaintiffs assert a 14th Amendment medical care claim against Alto, alleging that she acted with deliberate indifference to Morton's "high risk" for suicide when she completed the second ISP assessment of Morton and determined he was a "low risk" for suicide. **FAC ¶¶ 10-12, 57, 58.** Plaintiffs allege that Alto and Liberty Psychologists Dr. Rahmani and Dr. Berlin were each required to flag Morton as "high risk" for suicide and failed to place him in inmate safety housing (ISP), which provided him with means and opportunity to commit suicide on May 17, 2020. **FAC ¶ 19.** As to Sparks, Plaintiffs allege that she was deliberately indifferent to Morton's high risk for suicide when she allegedly made an intentional decision not to complete Morton's ISP follow-up assessment despite allegedly knowing that Morton required an assessment within 24 hours of his release from ISP. **FAC ¶¶ 16, 72.** Plaintiffs claim that Sparks intentionally did not complete the assessment because she was afraid to go into Morton's COVID-19 quarantine module to complete the assessment. **FAC ¶¶ 16, 72.**

### 1. No Constitutional Violation by Alto and no Causation

Plaintiffs cannot demonstrate that Alto was deliberately indifferent to Morton's alleged heightened risk of suicide when she completed his second ISP assessment on May 12, 2020. did not assess him as "high risk" for suicide on May 12, 2020, and did not place him in a "safety cell" or other ISP housing. *Moriarty v. Cnty. of San Diego*, No. 17CV1154-LAB (AGS), 2019 WL 4643602, at *10 (S.D. Cal. Sept. 24, 2019) ("Inadvertent misdiagnosis or negligent medical care does not amount to deliberate indifference.") (citations omitted).

First, Alto was not deliberately indifferent to Morton's risk of suicide because her conduct in completing Morton's second ISP assessment and determination that Morton was a "low risk" for suicide were not objectively unreasonable. For instance, Morton denied suicidal ideation during the ISP assessment. **UF15.** Morton also had no observable or reported depressive symptoms. **UF17-18.** No reasonable mental health

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

clinician would have appreciated Morton's "high suicide risk" under the circumstances. There is no evidence or information that would have alerted a reasonable clinician that Plaintiff's suicide risk was so high that immediate action was required to prevent it. Morton did not display signs of emotional distress or depression during Alto's ISP assessment. **UF14-20.** Regardless, failure to appreciate that a detainee is suicidal is not an "intentional decision," as the first element requires for a finding of deliberate indifference. *Moriarty v. Cnty. of San Diego*, No. 17CV1154-LAB (AGS), 2019 WL 4643602, at *10 (S.D. Cal. Sept. 24, 2019) (citing *Castro*, 833 F.3d at 1070) (reasoning that accidents cannot satisfy this element)).

At the time of Alto's assessment, Morton did not present a suicide risk that required immediate intervention. *Vasquez v. Cnty. of Santa Clara,* No. 5:16-CV-05436-EJD, 2017 WL 6513647, at *4 (N.D. Cal. Dec. 20, 2017), aff'd, 803 F. App'x 100 (9th Cir. 2020) (no reasonable trier of fact could conclude that, at the time of examination, "[detainee's] condition presented a suicide risk that required immediate intervention.") For example, Morton had not verbalized suicidal ideation to County staff[2] and denied being suicidal to Dr. Rahmani, who completed Morton's initial gatekeeping and suicide risk assessment on May 11, 2020. **UF9, 12, 14-15.** Morton also had not shown signs of withdrawal or distress. **UF5, 8, 11, 12, 17-18.**

Alto's knowledge that Morton had "previously attempted to take his own life, suffered from depression, and was at some risk of making another attempt" does not support the inference that Alto knew or should have known that Morton "was at *acute* risk of harm" at the time of Morton's second ISP assessment. *Simmons v. Navajo Cnty.*, Ariz., 609 F.3d 1011, 1018 (9th Cir. 2010)(quotations omitted), *overruled on other*

---

[2] Plaintiffs allege that Alto's assessment was prompted because Morton made suicidal statements, FAC ¶ 49, 57, and Alto knew of verbalized suicidal ideation and a self-harm attempt in front of a deputy the previous day. FAC ¶ 11, 41, 57. This is incorrect. Alto's ISP Assessment of Morton was required by policy due to Morton's placement in EOH. **UF14.** There is no evidence to suggest that Morton attempted to self-harm while in custody prior to his suicide on May 17.

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

*grounds by Castro*, *supra*, 833 F.3d 1060 (en banc); see also *Bremer v. Cnty. of Contra Costa*, No. 15-CV-01895-JSC, 2016 WL 6822011, at *9 (N.D. Cal. Nov. 18, 2016) (applying *Simmons* to objective deliberate indifference standard); *Moriarty v. Cnty. of San Diego*, No. 17CV1154-LAB (AGS), 2019 WL 1282002, at *5–6 (S.D. Cal. Mar. 20, 2019)("[a] mistake about whether he was suicidal does not amount to deliberate indifference.")(citing *Davidson v. Cannon*, 474 U.S. 344, 347–48 (1986)).

Second, Alto followed County policy and took reasonable measures to abate Morton's suicide risk in light of the information presented to her. Alto performed a complete suicide risk assessment and reviewed Morton's medical notes, observed and interacted with him, and exercised her professional judgment to determine that Morton's reported stressors leading to suicidality had resolved. **UF14-20.**[3] District courts have held that such an evaluation does not amount to deliberate indifference to an inmate's medical needs. *Vasquez v. Cnty. of Santa Clara,* No. 5:16-CV-05436-EJD, 2017 WL 6513647, at *4 (N.D. Cal. Dec. 20, 2017), aff'd, 803 F. App'x 100 (9th Cir. 2020). Alto took further measures and confirmed that Morton would be seen for medication evaluation and scheduled a follow-up assessment for Morton. **UF16, 21**. This does not rise to high legal standard for deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) ("Deliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient"). *Sandoval v. County of San Diego*, 985 F.3d 657 (9th Cir. 2021)(deliberate indifference where nurse knew inmate was shaking, disoriented, and requesting further evaluation, and but performed minimal tests and left her unattended for 6 hours). A reasonable nurse would have understood that

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

[3] Plaintiffs allege that Morton told Alto he was struggling with symptoms of alcohol withdrawal and that "the effect of the withdrawals is the reason he attempted suicide on May 8, 2020." FAC ¶ 57. However, Morton did not report or endorse withdrawal symptoms to Alto or any other medical staff at VDF. **UF5, 11-12, 25, 37-38.** Morton also reported that his previous suicide attempt was due to relapsing and not being able to detox himself from alcohol. **UF17.** Regardless, he was treated under CIWA protocol, as Alto confirmed. UF16, 37-39

Sandoval faced a "substantial risk of suffering serious harm." *Id*. Although Plaintiffs claim that Alto did not obtain Morton's medical records from his 5150 hold at Alvarado Parkway, this does not establish deliberate indifference. Cases hold that failure to review prior medical records is insufficient to establish deliberate indifference. *Medina v. Cnty. of Los Angeles*, No. CV 19-3808-GW-EX, 2020 WL 3964793, at *17 (C.D. Cal. Mar. 9, 2020) (no intentional decision and therefore no deliberate indifference under *Gordon* where nurse did not review medical records but determined detainee was not in medical distress or in need of immediate medical care). Morton was not in medical distress and was forthcoming about his previous suicide attempt and relapse with alcoholism during his assessment. **UF15-17, 21**. Alto received the information required to complete the assessment. **UF15-17, 21**. These facts do not support a finding of deliberate indifference. *Stevens v. Aranas*, No. 215CV01002JADNJK, 2018 WL 1040086, at *4 (D. Nev. Feb. 23, 2018), aff'd, 812 F. App'x 567 (9th Cir. 2020); *Moriarty v. Cnty. of San Diego*, No. 17CV1154-LAB (AGS), 2019 WL 4643602, at *10 (S.D. Cal. Sept. 24, 2019) (clinician did not fail to take reasonable steps to abate an obvious risk of misdiagnosing inmate as required for deliberate indifference despite not having full records).

Plaintiffs also claim that Alto cleared Morton for mainline housing knowing that Morton would not be monitored and would not receive medication for withdrawals or depression. FAC ¶ 12, 58. Morton was already placed on withdrawal protocol at the time of Alto's assessment, which Alto confirmed in her note. **UF5, 13, 16**. Morton received withdrawal medication and was monitored for withdrawal symptoms. **UF5, 13, 16, 37-39**. Further, Alto was not a psychiatric provider and could not prescribe Morton antidepressants. **UF31-36**. Regardless, Alto took reasonable care to abate Morton's suicide risk by confirming that a psychiatric evaluation had been scheduled for Morton. **UF15, 21**.

Third, Plaintiffs cannot show causation. Two intervening causes break the chain of causation between Alto's ISP assessment on May 12 and Morton's suicide five days

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

later. Dr. Berlin performed a gatekeeping assessment of Morton 7.5 hours later, after Morton's suicidal statement, and Dr. Berlin ultimately determined Decedent's housing placement at the time of his suicide. **UF21-30, UF47.** *See Moriarty v. Cty. of San Diego*, No. 17cv1154-LAB (AGS), 2019 WL 1282002 (March 20, 2019)("because Moriarty died six days later, after many changes of circumstance, [the nurse's] action or inaction cannot be the proximate cause of his death). Decedent's suicide is an intentional act which breaks the chain of causation. *Cavanaugh v. Cty. of San Diego*, No. 18cv02557-BEN (LL), 2020 WL 6703592 (November 12, 2020).

### 2. Alto is Entitled to Qualified Immunity

Alto is entitled to qualified immunity from liability here because Plaintiffs cannot demonstrate that Alto's conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To overcome qualified immunity, Plaintiffs bringing Section 1983 claims against individual officers must demonstrate that "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); see also *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 599 (9th Cir. 2019) The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citing *Malley, supra,* 475 U.S. 341, 343).

Plaintiffs cannot show that Alto violated Morton's constitutional rights. Plaintiffs claim that Alto was required to designate and house Morton as a "high risk" for suicide and that failure to do so amounted to deliberate indifference. Morton had not threatened or attempted to commit suicide prior to Alto's assessment on May 12, 2020. **UF3-18**. Morton showed no signs of emotional distress and denied being suicidal to Alto and to Dr. Rahmani in his initial gatekeeping assessment. **5, 8, 11, 12, 14-15, 17-18.** Morton's first and only communicated suicidal ideation to jail staff was

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

about 7.5 hours after Alto's assessment and Morton's release from ISP. **UF12, 15, 30.** Morton was then taken to Dr. Berlin for a gatekeeping assessment to determine if he met criteria for ISP housing. **UF26-27**. Dr. Berlin determined that Morton was not a suicide risk and cleared Morton for mainline housing. **UF26-27**. Dr. Berlin made the final decision regarding Morton's housing assignment. **UF26-29**. Alto assessed and treated Morton as any reasonable MHC would have under these circumstances and there is no causal link between Alto's ISP assessment of Morton and his subsequent suicide. **UF14-22, 26-29**.

Further, Plaintiffs cannot cite precedent clearly setting forth the constitutional right of an inmate to a "high risk" suicide designation or to safety cell assignment where a clinician's reasonable assessment indicated there was a low risk of suicide and further, where she believed subsequent follow-up assessment would take place. See *Taylor v. Barkes*, 575 U.S. 822, 826 (2015) (granting qualified immunity to officials who failed to properly implement adequate suicide prevention protocols, finding that "[n]o decision of this Court establishes a right to the proper implementation of adequate suicide prevention protocols. No decision of this Court even discusses suicide screening or prevention protocols.") *NeSmith v. Cty. of San Diego*, 2016 WL 4515857, at *7 (S.D. Cal. Jan. 27, 2016) (granting qualified immunity to sheriff because a failure to implement a superior suicide policy did not violate clearly established law). Alto could not have reasonably understood that a low-risk suicide designation and clearance from EOH housing would have violated Morton's constitutional rights because there was no indication that Morton was suicidal and no reasonable MHC would have anticipated Morton's suicide five days later. **UF12, 14-22, 30.** *Gilbert v. Turner*, No. 22-56217, 2024 WL 1947137, at *2 (9th Cir. May 3, 2024) (it is clearly established that officials are prohibited from displaying deliberate indifference to known serious medical needs or health risks); compare *NeSmith v. Olsen*, 808 F. App'x 442, 445 (9th Cir. 2020) (reasonable official who saw a rope in inmate's cell would have understood that failing to recognize clear warning of suicide risk violated rights), and *Clouthier v. Cnty. of*

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

*Contra Costa*, 591 F.3d 1232 (9th Cir. 2010), overruled by *Castro*, *supra* 833 F.3d 1060 (mental health professional not entitled to qualified immunity where she removed key suicide prevention measures even though she thought the pretrial detainee was still not "out of the woods"); *Regal v. Cnty. of Santa Clara*, No. 22-CV-04321-BLF, 2023 WL 7194879, at *5 (N.D. Cal. Oct. 31, 2023) (qualified immunity denied where inmate told official "I'm suicidal" and official did not implement precautions).

**3. No Constitutional Violation by Sparks and no Causation**

Plaintiffs cannot establish that Sparks was deliberately indifferent to Morton's alleged heightened risk of suicide when she had no knowledge of an allegedly urgent need for an ISP follow-up assessment. Further, no reasonable MHC in Sparks' position would have appreciated the risk that Morton would commit suicide on May 17 absent her ISP follow-up assessment within 24 hours of Morton's release from ISP.

First, Sparks was not deliberately indifferent to Morton's heightened risk for suicide because she did not make an intentional decision with respect to Morton's conditions of confinement. *Gordon*, 888 F.3d at 1125; *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) ("[a]n *inadvertent* failure to provide adequate medical care does not, by itself, state a deliberate indifference claim for § 1983 purposes." (emphasis in original) (quotation marks omitted)). Sparks did not make an intentional decision not to complete Morton's ISP follow up. **UF 41-43.** Sparks was scheduled to work at VDF from May 12, 2020, through May 16, 2020, completing MHC duties including performing gatekeeping assessments, AdSeg wellness checks, QMHP sick calls, and other clinic appointments as needed. **UF 40-43.** Sparks followed County standard practice and completed assessments as directed by VDF deputies to respond to the needs of the jail. **UF 41-42.** Sparks' conduct here does not violate due process. *Davidson v. Cannon*, 474 U.S. 344, 344, 106 S. Ct. 668, 668–69 (1986) ("lack of due care, while leading to serious injuries, simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent.")

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

Although Plaintiffs claim that Sparks intentionally did not complete Morton's ISP follow-up because she was afraid to enter the quarantine module, there is no evidence to support this. FAC ¶¶ 16 72, 136. Sparks worked as a MHC with the County through the entire Covid-19 pandemic. **UF 43**. During May 2020, Sparks was regularly at risk of being exposed to Covid-19, including by completing gatekeeping assessments of inmate/patients in the booking process and had not been tested for Covid. **UF 41-43**.

Second, no reasonable official would have appreciated Morton's high risk for suicide under the circumstances. Sparks did not interact with, communicate with, or observe Morton before he committed suicide. **UF44**. Accordingly, "Plaintiff[s] cannot prove that [Sparks] knew of and disregarded [Morton's] health [or safety] risks." *Lemoon v. California Forensic Med. Grp., Inc.*, 575 F. Supp. 3d 1212, 1223 (N.D. Cal. 2021); *see also Cavanaugh v. County of San Diego* (S.D. Cal. Nov. 12, 2020), judgment entered, No. 18-CV-02557-BEN-LL, 2020 WL 6702029 (S.D. Cal. Nov. 13, 2020), and aff'd, No. 20-56311, 2021 WL 6103115 (9th Cir. Dec. 22, 2021) ("If none of the Deputy Defendants had an individual encounter with [decedent inmate], there is no reason to suspect they could possibly be aware of his suicide risk."). Courts have held that deliberate indifference cannot be established under these facts. *Lemoon* at 1223; see also *Est. of Barrick v. Cnty. of San Joaquin*, No. 2:18-CV-02216-MCE-DB, 2021 WL 5331456, at *5 (E.D. Cal. Nov. 16, 2021) (no deliberate indifference by on-site supervising clinician with respect to detainee's in-custody suicide where clinician did not provide mental health treatment to detainee and did not interfere with treatment). Although Morton had made suicidal statements to his mom and girlfriend, these statements were never reported to jail staff, police, or otherwise. **UF45**.

There is no evidence suggesting that Sparks "personally played a role in the alleged constitutional violations, either directly or by acquiescence or culpable indifference" so there is "no basis for liability against [Sparks] in [her] individual capacit[y]" *Matysik v. Cnty. of Santa Clara*, No. 16-CV-06223-LHK, 2018 WL 732724 (N.D. Cal. Feb. 6, 2018). Plaintiffs allege that Sparks knew Morton had a heightened

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

risk of suicide because he had just been released from EOH Housing and policy requires a 24-hour assessment be scheduled. Sparks did not know of Morton's recent release from EOH or his suicidal statement and assessment by Dr. Berlin. **UF44**. Even assuming she did, knowledge that a person was released from ISP housing is "insufficient to put [Sparks] on notice that [Morton] is in imminent danger of harming himself." *Bremer v. Cnty. of Contra Costa*, No. 15-CV-01895-JSC, 2016 WL 6822011, at *9 (N.D. Cal. Nov. 18, 2016) ("merely knowing that someone had been placed on suicide watch—even the highest level—is insufficient to put an officer on notice that the person is in imminent danger of harming themselves"). Plaintiffs also allege that Sparks knew Morton was "decompensating" due to being housed alone in the Covid quarantine module. Sparks was not aware of Morton's cell assignment and the fact he did not have a cellmate. **UF44.** Regardless, the fact that Morton was without a cellmate did not create an obvious risk of suicide. *Cavanaugh*, 2020 WL 6703592 at *14.

That Morton was scheduled for a follow-up assessment after being cleared from EOH as required by policy, and that he was potentially housed individually in the Covid module, does not create a known or obvious risk for suicide requiring medical intervention. See *Id.* (rejecting the plaintiff's attempt to impute knowledge that a specific inmate was at risk of committing suicide based on a general awareness of the high risk for suicide of a particular population) (*citing Moriarty v. County of San Diego*, No. 17CV1154-LAB (AGS), 2019 WL 4643602, at *7 (S.D. Cal. Sept. 24, 2019) (knowledge that an inmate "is suffering from mental problems more generally does not mean that officials are constitutionally required to anticipate and guard against suicide")).

Third, Plaintiffs cannot show causation. Dr. Berlin completed a gatekeeping and suicide risk assessment of Morton 7.5 hours after Morton was released from ISP housing. *See* **UF14, 21-22, 26.** Morton was evaluated for suicide risk within the recommended 24-hour period after his release from ISP and after Morton made a suicidal statement in his housing module. **UF22-30**. Dr. Berlin noted that Morton was

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

not in distress and denied feeling suicidal during the assessment. **UF27, and UF24-25.** Morton was also seen for CIWA follow-up in this timeframe and reported no complaints. **UF38, 39.** The FAC relies on speculation to allege causation between Sparks' conduct and Morton's suicide and argues that if Sparks had assessed Morton within the 24-hour period, Morton would have told Sparks he was suicidal and he would have been placed in ISP. FAC ¶¶ 20, 74, 138. Dr. Berlin's gatekeeping assessment took place within 24 hours after Morton's release from ISP was not suicidal at the time. *See* **UF14, 21-22, 26.** Plaintiffs' claim that Morton would have expressed suicidality to Sparks during a subsequent ISP follow-up is unsupported. *Est. of Barrick v. Cnty. of San Joaquin*, No. 2:18-CV-02216-MCE-DB, 2021 WL 5331456, at *6 (E.D. Cal. Nov. 16, 2021).

**4. Sparks is Entitled to Qualified Immunity**

Sparks is entitled to qualified immunity from liability here because Plaintiffs cannot demonstrate that Sparks (1) violated a statutory or constitutional right or (2) that the right was clearly established at the time. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); see also *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 599 (9th Cir. 2019); and *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Plaintiffs allege that Sparks violated Morton's constitutional right to receive adequate medical care based on her failure to complete his ISP follow-up assessment. FAC ¶ 16,Sparks' inability to see Morton as scheduled due to the high demands of the jail does not create a constitutional violation. Plaintiffs cannot show that Sparks acted with deliberate indifference, as set forth above, because she had no knowledge of Morton's suicide risk and did not make an intentional decision with respect to the conditions of her confinement. **UF40-44.** Further, Morton was still seen and evaluated for suicide risk within the recommended 24-hour period following his release from ISP so there is no causation.

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

Plaintiffs cannot point to any law clearly establishing a right to receive routine mental health follow-up assessments by the scheduled provider. To be sure, "the right to proper implementation of adequate suicide prevention protocols" is not an established right. *Taylor*, 575 U.S. at 2044. It is undisputed that Sparks did not have any knowledge regarding Morton's suicidality or the possibility that he would commit suicide on May 17. *Gilbert*, 2024 WL 1947137, at *2 (9th Cir. May 3, 2024) (it is clearly established that officials are prohibited from displaying deliberate indifference to known serious medical needs or health risks). Additionally, despite the Ninth Circuit's holding in *Cabrales* that "the understaffing of a jail, where medical staff could only spend minutes with each inmate per month, may amount to a policy or custom of deliberate indifference to pretrial detainees' medical and psychological needs," district courts have rejected the argument that inmates have a clearly established right to have a certain number of weekly visits with mental health staff. *Tater v. City of Huntington Beach*, No. 820CV01772MEMFJDEX, 2023 WL 4291656, at *26 (C.D. Cal. May 8, 2023) (citing *Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1461 (9th Cir. 1988), *cert. granted and opinion vacated*, 490 U.S. 1087 (1989), *reinstated*, 886 F.2d 235 (9th Cir. 1989)).

**B. Plaintiffs' Section 1983 Claim Against County Fails as a Matter of Law**

Plaintiffs' § 1983 claim against County alleging inadequate suicide prevention policies and training program fails as a matter of law because there is no evidence that supports a finding that Alto or Sparks violated Morton's constitutional rights. Plaintiffs allege that County had a custom of inaction or failed to implement or adopt a policy, regarding follow-up evaluations after an inmate requests or receives mental health services such that it amounts to deliberate indifference. Dkt. 27, 8. Plaintiffs further allege that County failed to adequately train its staff how to identify, treat, and house inmates posing high risk of suicide on a continued basis such that County is deliberately indifferent to their needs. Dkt. 27, 10.

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

To succeed in their *Monell* claim, Plaintiffs must show "(1) that [Morton] possessed a constitutional right of which he was deprived; (2) that the [County] had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992); *see Connick*, 563 U.S. 51 at 60. "[R]igorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997).

First, to the extent Plaintiff's *Monell* claim against the County is premised upon the conduct of Alto and Sparks, that claim must fail because, as set forth above, the evidence cannot support a finding that either Alto or Sparks violated Morton's rights under the Fourteenth Amendment. *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008) ("Because there is no constitutional violation, there can be no municipal liability"). Neither Alto nor Sparks acted with deliberate indifference to Morton's risk for suicide. Alto adequately assessed Morton as a low suicide risk because Morton was not actively suicidal at the time of his second ISP assessment. **UF14-22**. Further, Sparks could not be deliberately indifferent to Morton's suicide risk where she did not observe or evaluate him and did have any knowledge of his then-current mental state. **UF40-44.** Similarly, even if Plaintiffs can establish that County's policies and customs violate the constitutional rights of its detainees, Plaintiffs cannot show causation between the allegedly unconstitutional policies or customs and Morton's suicide. As set forth above, there are no facts that suggest a causal link between Alto's ISP assessment or Sparks' inability to evaluate Morton within 24 hours and Morton's suicide. **UF14-22, 26-30, 40-44.**

Next, Plaintiffs cannot maintain a *Monell* claim based on Sparks' alleged violation of County policy regarding follow-up evaluations after release from ISP housing. Plaintiffs claim that a constitutional violation occurred when Sparks was unable to complete an ISP follow-up assessment pursuant to policy. FAC¶ 16. However,

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

a policy cannot be found to promulgate a constitutional violation "if the alleged wrongful conduct involved violating the policy." *Cavanaugh v. Cnty. of San Diego*, No. 3:18-CV-02557-BEN-LL, 2020 WL 6703592, at *35, 39 (S.D. Cal. Nov. 12, 2020), judgment entered, No. 18-CV-02557-BEN-LL, 2020 WL 6702029 (S.D. Cal. Nov. 13, 2020), and aff'd, No. 20-56311, 2021 WL 6103115 (9th Cir. Dec. 22, 2021). Plaintiffs have not adequately alleged that a lack of policy regarding follow-up assessments was a moving force behind Sparks' alleged conduct. *See* FAC ¶ 16. *Park v. City & Cnty. of Honolulu*, No. CV 17-00142 ACK-KSC, 2018 WL 3764084, at *12 (D. Haw. Aug. 8, 2018), *aff'd sub nom. Hyun Ju Park v. City & Cnty. of Honolulu*, 952 F.3d 1136 (9th Cir. 2020); *Klahn v. Alameda Cnty. Sheriff's Dep't*, No. 16-CV-00833-JCS, 2017 WL 2021370 (N.D. Cal. May 12, 2017) (dismissing *Monell* claim where facts "establish that officers violated Alameda County's policies and, as a result, that the alleged violations were committed by individuals, not a municipality).

Finally, County had sufficient suicide prevention policies in place in May 2020, and required suicide prevention training for all mental health providers and jail deputies. **UF58-61.**

## V. PLAINTIFFS' STATE LAW TORT CLAIMS AGAINST ALTO AND SPARKS FAIL AS A MATTER OF LAW

### A. Plaintiffs' State Law Tort Claims are Barred by the Statute of Limitations

It is beyond dispute that Plaintiffs state law claims are subject to summary judgment based on the statute of limitations. The statute of limitations for a claim based in professional negligence is "three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." Cal. Code. Civ. Proc. § 340.5.

The statute of limitations for Plaintiffs' professional negligence and failure to summon medical care claims began to run on the date of Morton's death, May 17, 2020. Morton's family was aware of his suicidal statements made to Mrs. Morton while at VDF and Mrs. Morton began asking about the conditions of Morton's confinement

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

when she first learned of his suicide. **UF50-54.** The Complaint was filed August 9, 2021, more than one year later.

Plaintiffs invoke the discovery rule and allege that they were "not aware of any potential medical negligence" on May 17, 2020, and "discovered the negligent conduct alleged" in the Complaint "soon after" receiving Morton's medical records on March 11, 2021. FAC ¶ 127. The statute of limitations began to run when Plaintiffs became "aware of facts sufficient to put a reasonable person on inquiry that negligence was the cause of the injury," not after they became "aware that a legal cause of action exist[ed]." *Timmel v. Moss*, 803 F.2d 519, 521 (9th Cir. 1986) (emphasis in original).

Plaintiffs are charged with "presumptive" knowledge of the negligent injury, from the point in which they have "notice or information of circumstances to put a reasonable person on inquiry, or [have] the opportunity to obtain knowledge from sources open to his investigation...." *Gutierrez v. Mofid*, 39 Cal. 3d 892, 896–97 (1985) (internal quotations and citations omitted). The evidence here shows that the Morton family was on notice of the alleged negligence by County officials early as June 2020, when they began requesting Morton's medical records and talking to lawyers. **UF50-54.** Plaintiffs had retained counsel before November 6, 2020, when Mrs. Morton submitted her tort claim to the County. **UF54.** Mrs. Morton's tort claim describes the injury and alleged negligence by County officials that is the subject of this litigation. **UF56.**

Plaintiffs were not diligent in investigating their claims. Plaintiffs allege that they sought Morton's medical records for more than for six months, but the County refused to provide them absent a probate order. FAC ¶ 127. However, Plaintiffs waited more than seven months to provide the required declarations, until February 26, 2021. Further, Plaintiffs received the medical records on March 21, 2021, but waited almost five months to file their claim. **UF55**. Summary judgment is proper.

**B. Plaintiffs' Tort Claims Against Alto Fail as a Matter of Law**

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

Plaintiffs allege that Alto's ISP assessment of Morton and "low" suicide risk designation amount to professional negligence and a failure to summon medical care in violation of California Government Code § 845.6. FAC ¶ 118, 119, 134 135.

First, there are no facts that can support Plaintiffs' claim that Alto was medically negligent in her evaluation and assessment of Morton. To succeed in their claim, Plaintiffs must show "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Paul v. Patton*, Cal. Rptr. 3d 830, 835 (2015). Alto followed policy and made a reasonable determination regarding Morton's suicide risk. **UF14-21**.

Next, Plaintiffs cannot show that Alto failed to summon medical care in violation of Cal. Gov't. Code § 845.6. Plaintiffs must show that (1) Morton had a serious and obvious medical condition requiring immediate care, (2) Alto knew or had reason to know of Morton's need, and (3) failed to furnish or obtain care for Morton. Cal. Gov't. Code § 845.6; *Remijio v. The County of Santa Barbara*, No. 22CV01496, 2023 WL 9510748, at *9 (Cal.Super. Dec. 07, 2023) ("Liability under § 845.6 is limited to serious and obvious medical conditions requiring immediate care.") There is no evidence that Morton had a serious and obvious medical condition requiring immediate care on May 12, 2020. **UF3-21**. Alto completed her ISP assessment of Morton on May 12, 2020, before Morton expressed suicidal ideation to any jail staff. **UF13, 30.** At the time of Morton's second ISP assessment, Morton was not in medical distress, was not actively suicidal, and did not have a medical need requiring immediate care. **UF3-21.** Morton committed suicide 5 days later on May 17, 2020. **UF45.** There is no evidence that Morton suffered immediate harm resulting from Alto's "low" risk suicide designation. Moreover, to the extent Plaintiffs allege that Alto was required to summon medical care for Morton on May 17, 2020 when he was imminently suicidal, Alto was not present at VDF on May 17 and could not have known of his need for intervention. **UF46-49.**

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

Third, Plaintiffs cannot show causation between Alto's ISP assessment and Morton's suicide five days later. See *Cavanaugh*, 2020 WL 6703592, at *20, *citing Lucas v. City of Long Beach*, 60 Cal. App. 3d 341, 131 Cal.Rptr. 470 (1976) (finding no causation for detainee's suicide which required intervention of the decedent's independent and intentional act). Dr. Berlin performed a suicide risk gatekeeping assessment of Morton after Alto and made the final decision regarding his housing. **UF 26-30.** This is an intervening and superseding cause that breaks the chain of causation. Plaintiff's intentional act of suicide is also a superseding cause.

**C. Plaintiffs' Tort Claims Against Sparks Fail as a Matter of Law**

Plaintiffs allege that Sparks acted with professional negligence and violated Cal. Gov. Code § 845.6 with respect to her inability to complete Morton's ISP Follow-up assessment within 24 hours of his release from ISP/EOH. FAC ¶ 120, 136.

First, Plaintiffs cannot support a claim for medical negligence against Sparks because she acted reasonably. Sparks completed her work as directed to meet the shifting demands of the jail and prioritized assessments reasonably. **UF40-43.**

Next, Plaintiffs cannot show that Sparks failed to summon medical care for Morton in violation of Gov't. Code § 845.6. Morton was not in need of immediate medical care within 24 hours of his release from ISP when Sparks his ISP Follow-up was to be completed. **UF3-39**. Dr. Berlin assessed Morton within the 24-window after ISP release and determined Morton was not suicidal. **UF21-28**. Morton was observed as not being under medical distress by each provider and deputy who observed him after his release from ISP housing. **UF21-27, 32, 37-38**. Morton was not imminently suicidal and did not commit suicide until May 17, 2020. **UF47.** Further, Plaintiffs cannot show that Sparks knew or had reason to know of Morton's serious and immediate medical need on May 17, 2020 when he committed suicide when she was not at VDF. **UF46-49.** Plaintiffs cannot point to any facts demonstrating Sparks knew or had reason to know of Morton's serious and immediate medical need on May 17, 2020, a date that she was not at VDF, and failed to summon his care.

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

Third, Plaintiffs cannot show causation between Sparks' missed ISP follow-up assessment and Morton's suicide four days later. See *Cavanaugh*, 2020 WL 6703592, at *20, *citing Lucas v. City of Long Beach*, 60 Cal. App. 3d 341, 131 Cal.Rptr. 470 (1976). Dr. Berlin performed a suicide risk gatekeeping assessment of Morton within 24 hours after Morton's release from ISP and determined he was not suicidal. **UF21-28**. This is an intervening and superseding cause that breaks the chain of causation. Plaintiff's intentional act of suicide is also a superseding cause.

**D. Plaintiffs' Wrongful Death Claim Against Alto and Sparks Fail as a Matter of Law**

Plaintiffs' wrongful death claim under California Code of Civil Procedure § 377.6 is subject to summary judgment because they cannot prove their tort claims for professional/ medical negligence. *Quiroz v. Seventh Ave. Center*, 45 Cal. Rptr. 3d 222 (Ct. App. 2006) (The elements of wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages). As set forth above, Plaintiffs cannot offer facts to support their claim that Morton needed immediate care on May 12, 2020 or May 13, 2020 when their alleged wrongful conduct took place. Further, there is no evidence that Alto or Sparks acted unreasonably or knew of Morton's need for immediate care on May 17, 2020. Further, Plaintiffs cannot show causation.

**E. Mr. Morton Lacks Standing for Failure to Comply with Tort Claim Act**

Mr. Morton's Wrongful Death claim against County Defendants is subject to summary judgment for failure to comply with the California Tort Claims Act (CTCA). The FAC alleges that "Plaintiffs filed their tort claim" with County based on Morton's in-custody death on November 6, 2020. *Id*., ¶ 26. However, the undisputed evidence shows that only Mrs. Morton presented a tort claim to the County with respect to Morton's death. **UF55-56.** No claim was presented by Mr. Morton. ***Id.***

Compliance with the CTCA's filing requirements is mandatory, Cal. Govt. Code § 945.4; *U.S. v. State of Cal.,* 655 F.2d 914, 918 (9th Cir.1980), and Plaintiffs were required to present their tort claims within six (6) months from the date that their cause

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

of action began accruing. Cal. Gov't. Code §§ 911.2(a). "[A] wrongful death action has its own statute of limitations, which runs from the date of death[.]" *Horwich v. Super. Ct.*, 21 Cal.4th 272, 283 (1999); *Kong*, at *12. Thus, Plaintiffs' claims for wrongful death began accruing on May 17, 2020, when Morton passed away. **UF47.**

Further, the defect cannot be cured. While a claimant may apply for leave to file a late claim (*Id.* § 911.4(a)) they must do so "within a reasonable time not to exceed one year after the accrual of the cause of action" (§ 911.4(b)). *See Est. of Kong by & through Kong v. City of San Diego,* No. 22-CV-1858-BAS-DDL, 2023 WL 4939370, at *1 (S.D. Cal. Aug. 2, 2023). Thus, Mr. Morton lacks standing to bring his wrongful death claim against Alto and Sparks.

### F. Alto and Sparks are Statutorily Immune from Liability

Plaintiffs' tort claims for failure to summon medical care, wrongful death, and professional negligence against Alto and Sparks be dismissed because they are statutorily immune from liability. There is no statutory basis for liability against Alto and Sparks, who are immune from liability for injuries to a prisoner and failure to provide medical care, mental health exams, or diagnose mental illness. See Cal. Gov't Code §§ 844.6, 845.6, 855.6, 855.8.

The exception to statutory immunity set forth in Gov't. Code § 845.6 does not support a finding of liability against Sparks here, where the undisputed facts do not support a failure to summon medical care claim. Further, § 845.6 makes exceptions for failure to diagnose and/or medicate a mental illness (§ 855.8) and confine a person for mental illness (§ 856).

## VI. <u>CONCLUSION</u>

Defendants are entitled to summary judgment because there was no constitutional violation and there is no causation between County Defendants' alleged conduct and Morton's suicide, and Alto and Sparks are entitled to qualified immunity.

//

//

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

DATED: May 31, 2024

COLLINS + COLLINS LLP

By: /s/ Bianca Bonjean

BIANCA M. BONJEAN
MICHAEL L. WRONIAK
RADA FELDMAN
Attorneys for Defendants
COUNTY OF SAN DIEGO, HOSANNA ALTO and JANINE SPARKS

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101