**Claudia G. Silva, County Counsel (State Bar No. 167868)**
**Fernando Kish, Senior Deputy (State Bar No. 236961)**
**Andrei Dumitrescu, Senior Deputy (State Bar No. 320456)**
**OFFICE OF COUNTY COUNSEL, SAN DIEGO**
**1600 Pacific Highway, Room 355**
**San Diego, CA 92101**
**619-531-6229**
**Email: Andrei.dumitrescu@sdcounty.ca.gov**
**Email: Fernando.kish@sdcounty.ca.gov**

**Michael L. Wroniak, Esq. (State Bar No. 210347)**
**Rada Feldman, Esq. (State Bar No. 285931)**
**Bianca M. Bonjean, Esq. (State Bar No. 342297)**
**COLLINS + COLLINS LLP**
**750 The City Drive, Suite 400**
**Orange, CA 92868**
**(714) 823-4100 – FAX (714) 823-4101**
**Email: mwroniak@ccllp.law**
**Email: rfeldman@ccllp.law**
**Email: bbonjean@ccllp.law**

Attorneys for Defendants
COUNTY OF SAN DIEGO, HOSANNA ALTO and JANINE SPARKS

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARILYN MORTON, Individually, and as Successor in Interest to JOSEPH MORTON, and DEAN MORTON, Individually,<br>Plaintiffs,<br>vs.<br><br>COUNTY OF SAN DIEGO, BIJAN RAHMANI, Individually, HOSANNA ALTO, Individually, MATTHEW BERLIN, Individually, LIBERTY HEALTHCARE, JANINE SPARKS, Individually, CHRISTOPHER | CASE NO. 3:21-cv-01428-MMA-DDL<br>*Judge Michael M. Anello, Courtroom 3C*<br><br>**APPENDIX OF SUPPLEMENTAL EVIDENCE IN SUPPORT OF COUNTY DEFENDANTS' REPLY TO MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**Date:** **July 22, 2024**<br>**Time:** **2:30 p.m.**<br>**Dept.** **3C** |

*23475*



COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

KAGAY, Individually, AND DOES 1-10, inclusive,

Defendants.

**Complaint Filed: 08/09/2021**
**Trial Date: None**

| **EXHIBIT** | **EVIDENCE** |
|---|---|
| **Supp. 1.** | 2023-08-24 Deposition Transcript of Francis Ysla, MD (Liberty Healthcare Rule 30(b)(6) witness) |
| **Supp. 2.** | 2023-05-03 Deposition Transcript of Linnea Morton |
| **Supp. 3.** | 2023-10-23 Deposition Transcript of Melissa Quiroz (County Rule 30(b)(6) witness |
| **Supp. 4.** | 2023-10-23 Deposition Transcript of Jeffrey Metzner |
| **Supp. 5.** | 2023-07-18 Deposition Transcript of Christopher Kagay, Volume I |
| **Supp. 6.** | 2023-10-17 Deposition Transcript of Dr. Matthew Berlin |
| **Supp. 7.** | 2023-10-13 Deposition Transcript of Dr. Bijan Rahmani |

DATED: July 15, 2024

COLLINS + COLLINS LLP

By: ______________________

RADA FELDMAN
MICHAEL L. WRONIAK
BIANCA M. BONJEAN
Attorneys for Defendants
COUNTY OF SAN DIEGO, HOSANNA ALTO and JANINE SPARKS

COLLINS + COLLINS LLP
750 The City Drive
Suite 400
Orange, CA 92868-4940
Phone (714) 823-4100
Fax (714) 823-4101

SUPPLEMENTAL **EXHIBIT 1**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MARILYN MORTON, Individually, and as Successor in Interest to JOSEPH MORTON, and DEAN MORTON, Individually,

Plaintiff,

vs.

COUNTY OF SAN DIEGO, SAMANTHA MACANLALAY, Individually, BIJAN RAHMANI, Individually, HOSANNA ALTO, Individually, MATTHEW BERLIN, Individually, LIBERTY HEALTHCARE, and DOES 1-10, inclusive,

Defendants.

Case No. 21-cv-01428-MMA-DDL

AND ALL RELATED CROSS-ACTIONS.

DEPOSITION OF LIBERTY HEALTHCARE OF CALIFORNIA PERSON MOST KNOWLEDGEABLE

FRANCIS YSLA, M.D.

APPEARING REMOTELY FROM SAN DIEGO COUNTY, CALIFORNIA

August 24, 2023

10:04 A.M.

REPORTED BY: Barbra Zucker CSR No. 11289

APPEARING REMOTELY FROM SAN DIEGO, CALIFORNIA

A. No.
Q. Under the contract do you know the significant roles and responsibilities of Liberty and the county under the contract other than providing and staffing mental health clinicians?
A. I don't -- I don't think I understand the question, Dani. I'm sorry.
Q. Sure. I'm just trying to figure out as far as Liberty understood it, what its major responsibilities were besides staffing.
A. Right. In addition to staffing the psychiatry service, just ensuring, you know, quality care and evidence-based medicine in those encounters as a whole.
Q. So staffing and then ensuring that the staff is providing quality care, and that would require some sort of oversight and supervisory roles, correct?
A. Yes.
Q. Okay. I know that you testified that you haven't seen the contract, but are you familiar with who is responsible to provide training on county policies to the Liberty providers?
A. Training for what?
Q. On county policies.
A. That was something that the county would tell us about their policies.

MR. KIEFER: I might argue or object that it may assume facts not in evidence or without foundation that the contract speaks to training in county policies, but I could be wrong.

MS. PENA: You are.

MR. KIEFER: Okay. Thank you. First time today. There will be a second and a third.

BY MS. PENA:

Q. Just stand by. I'm going to pull up the contract.

I am attempting to screen share with you what I'm going to mark as Exhibit 1, which is the contract between Liberty and the county.

(Exhibit No. 1 marked.)

BY MS. PENA:

Q. Do you see that, sir?

A. Yes. Is it possible to make it larger, by any chance? Great. Thank you.

Q. Good?

A. Uh-huh.

Q. Okay. So this is the contract between Liberty, and there's the president there and the County of San Diego, correct?

A. Yes, it looks like it.

Q. Bear with me. Okay. On Bates Number SD 0067

do you see there Number 3 it says, "Duties and Responsibilities"?

A. Yes.

Q. Okay. And that first subsection there says, "Duties of the County," correct?

A. Yes.

Q. Okay. I want you to read 3.1.3, if you will.

A. Sure. "Provide training for contractor staff in all relevant security and jail policies."

Q. Okay. And I will make the representation that that is really the only reference to jail policies and training thereon. So I know you haven't looked at the policy; you just saw it now, but based on what you read and your experience at the county, it is your testimony that the county was responsible for training Liberty providers when it comes to county policies, correct?

A. Yes.

Q. Okay. I want to talk a little bit about the conversation that you had with Carolyn Godman, and the conversation you had, to my understanding, was in part based on who would be the appropriate PMK designee and also any kind of documents that pertained to suicide prevention training. Is that your understanding?

A. Yes.

MR. KIEFER: Dani, just for an intro; you can

zoom in, scroll down.
A. No. That's okay.
Q. Okay. And have you seen this before?
A. Yes.
Q. Okay. And so you're familiar that this is Dr. Rahmani's gatekeeping assessment?
A. Yes.
Q. Okay. And Dr. Rahmani conducted the first gatekeeping assessment for Morton after intake; is that correct?
A. Yes, it looks like it is, yes.
Q. And do you know the circumstances that led to Dr. Rahmani having to conduct this gatekeeping assessment?
MS. PENA: May call for speculation. May lack foundation.
You can answer, Dr. Ysla.
THE WITNESS: Okay. Sorry. Yes, I believe Mr. Morton had a relatively recent suicide attempt.
BY MS. FELDMAN:
Q. Okay. And so at intake do you agree that Morton was flagged for suicide risk and referred to be seen by the gatekeeper who at that time was Dr. Rahmani; is that correct?
MS. PENA: May call for speculation. May lack

foundation.

MR. KIEFER: Objection. Vague and ambiguous. No foundation as to, quote, "flagged," end quote.

MS. PENA: Join.

You can answer.

THE WITNESS: Yes.

BY MS. FELDMAN:

Q. Okay. And during a gatekeeping assessment such as this one by Dr. Rahmani, can you describe for me what that entails?

A. What what entails? I'm sorry.

Q. The gatekeeping assessment.

A. I've never performed a gatekeeping assessment, so I can't speak fluently as to what exactly a gatekeeping assessment entails.

Q. Okay. Are you familiar with what training Liberty is provided with on how to conduct a gatekeeping assessment?

A. Yes. The gatekeeping was something that was taught to us by county individuals as well as other Liberty Healthcare personnel that had also performed gatekeeping assessments as well.

Q. Okay. Are you able to describe for me generally what the psychologists, the Liberty providers are supposed to do when they're doing a gatekeeping

REPORTER'S CERTIFICATE

I, BARBRA ZUCKER, CSR No. 11289, Certified Shorthand Reporter, certify:

That the foregoing proceedings were taken remotely before me at the time and place therein set forth, at which time the witness was put under oath by me;

That the testimony of the witness, the questions propounded, and all objections and statements made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

That a review of the transcript by the deponent was requested;

That the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative or employee of any attorney of the parties, nor financially interested in the action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Dated this 10th day of September 2023.

______________________________

BARBRA ZUCKER, CSR No. 11289

SUPPLEMENTAL **EXHIBIT 2**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MARILYN MORTON, Individually and as Successor in Interest to Joseph Morton, DEAN MORTON, Individually,

Plaintiffs,

vs.

COUNTY OF SAN DIEGO, SAMANTHA MACANLALAY, Individually; BIJAN RAHMANI, Individually; HOSANNA ALTO, Individually; MATTHEW BERLIN, Individually; LIBERTY HEALTHCARE; DOES 1-10, Inclusive,

Defendants.

Case No. 21-cv-1428-MMA-DDL

Video-recorded videoconference deposition of LINNEA E. MORTON, taken remotely on behalf of the Defendants, beginning at 9:59 a.m. and ending at 5:21 p.m., on Wednesday, May 3, 2023, before JOANNA B. BROWN, Certified Shorthand Reporter No. 8570, RPR, CRR, RMR.

were brought to Vista -- any of Joseph's medications or medication bottles, whether they were empty or not, were brought by anyone to the Vista jail while he was there?

A I don't know.

Q When you and your mother visited Elaine in San Diego, did you and/or your mother pick up any medication bottles or any package for any of Joseph's medications?

A No. We were mostly there for his personal items that meant something to us.

Q Was there any discussion with Elaine and you and your mom whether there existed any medication bottles or any medication or packaging of medication that were for Joey?

A No. That never even came up.

Q To your knowledge, has any medication or medication bottles or any medication packaging been discovered that pertains to Joey since his death?

A I don't know.

Q Did your mother ever say that she talked with Joseph during his incarceration and that one of the things they discussed was whether or not he was taking his medication?

MS. PEÑA: Assumes facts. May call for

speculation.

You can answer.

THE WITNESS: From what I remember, that whole situation was very confusing for everyone. I don't remember her saying anything about medications specifically. She was mostly distraught at where he was and wondering how he had gotten there.

BY MR. KIEFER:

Q So now I'd like to ask you, what topics are you aware -- from talking to your mom, what topics do you believe and understand she discussed with Joey during any telephone conversation she had with him while he was incarcerated?

MS. PEÑA: Vague and ambiguous, but you can answer.

THE WITNESS: I know he was pleading with her to bond him out. I know that he had expressed being suicidal. As far as the details of the conversations, I don't know them specifically, but I know both of those conversations happened.

BY MR. KIEFER:

Q Were there any topics that you can identify by name that your mom told you she had talked to him about other than bonding out and being suicidal?

MS. PEÑA: Vague and ambiguous.

page by page, and I ask -- and you can tell me when you are done reviewing each page. But this is a four-page document that is titled "CLAIM AGAINST THE COUNTY OF SAN DIEGO," and it is -- I am going to scroll to the second page. It is signed November 6th, 2020. It's a four-page document. I'm going to mark this as Exhibit 3.

Q Linnea, let me know when you want me to scroll down to the next page. If you could, just review this document, and let me know if you recognize this and if you need me to zoom in.

A Okay. You can go to the next page.

Q Okay.

A Okay. Okay. Okay.

Q Okay. I'm going to shop sharing the screen, but I want to ask whether you've seen this document before.

A I feel like I knew all of that information. So I must have seen it at some point.

Q So this is a tort-claim document that is submitted by Claimant Marilyn Morton and dated November 6, 2020. I can share --

Did that look like Marilyn Morton's signature? I'll share my screen.

If you are familiar with your mom's signature,

is this your mom's signature down here?
A That does not look like my mom's signature. Was it done on the computer?
Q I don't know. So you are not -- you don't recognize the signature right here?
A No. It doesn't -- it doesn't look like her signature.
Q Okay. Do you know if a claim against the County of San Diego on this similar form had been filed by your father, Dean Morton, at any point?
MS. PEÑA: May call for a legal opinion.
You can answer.
THE WITNESS: Did he do -- did he file his own lawsuit? Is that what you are asking?
BY MS. FELDMAN:
Q So this is a tort claim that's submitted on this form to the County of San Diego. Marilyn Morton had submitted Exhibit 3 that I just showed you.
A Uh-huh.
Q Are you aware of any claim document that was filed and submitted to the County of San Diego by Dean Morton with respect to Joseph Morton?
A No. I was always under the impression that they were together, like, my mom and my dad.
Q Okay. So you are not aware of any claim

document that was submitted to the County of San Diego regarding Joseph Morton, signed by Dean Morton; is that correct?

A No, I'm not aware of that.

Q Okay. And, then, you had said that when the San Diego Tribune reporter called you, you had two phone calls with him. Can you tell me about the second time that he called you.

MS. PEÑA: Asked and answered.

THE WITNESS: I believe the second time was more of, like, an interview for an article, but I didn't -- I didn't want to talk to him until I had talked to my family. So I talked to my family first. They didn't think there was anything wrong with that.

BY MS. FELDMAN:

Q Okay. And can you tell me about the interview that the reporter had done with you for an article.

When did that happen?

A Probably, like, a week or two after Joey had passed, I think.

Q Okay. Can you tell me everything that was said during that interview you had with the reporter from the San Diego Tribune.

A I mean, again, this was three years ago, and my brother had just died. So it wasn't really

Before completion of the deposition, review of the transcript [ ] was [ ] was not requested. If requested, any changes made by the deponent (and provided to the reporter) during the period allowed, are appended hereto. (Fed. R. Civ. P. 30(e)).

Dated: ____________________________

Joanna B. Brown ___________________________________

SUPPLEMENTAL **EXHIBIT 3**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MARILYN MORTON, Individually, and as Successor in Interest to JOSEPH MORTON, and DEAN MORTON, Individually,

Plaintiff,

vs.

COUNTY OF SAN DIEGO, SAMANTHA MACANLALAY, Individually, BIJAN RAHMANI, Individually, HOSANNA ALTO, Individually, MATTHEW BERLIN, Individually, LIBERTY HEALTHCARE, and DOES 1-10, inclusive,

Defendants.

CASE NO. 21-cv-01428-MMA-DDL

DEPOSITION OF MELISSA QUIROZ

MONDAY, OCTOBER 23, 2023

9:59 A.M.

501 West Broadway, Suite 1000

San Diego, California

REPORTED BY:
KIMBERLY A. BROADHURST
CSR NO. 13814, CRG

MS. FELDMAN: Objection. Vague, ambiguous, calls for speculation, calls for expert opinion, lacks foundation, misstates testimony, goes beyond the scope of testimony.

BY MS. PENA:

Q You could answer.

A I think it's a one-line sentence that says, you know, two consecutive lows, they're released. It doesn't continue on to say, again, but it's okay or I know that you know that there's going to be other risk factors. It doesn't say any of the other language there. It just says two low risks says the individual -- they're making a determination in that moment if the person is, you know, a risk level.

The policy -- so meaning the individual who is making the assessment, if they say low, how the policy releases them, they're not necessarily taking -- policy isn't necessarily going to -- how do I say -- I don't want to say make or break. They're basing their clinical decision on how the person is presenting and what their risk factors are, not because they're trying to interpret a policy to fit in that policy. Does that make sense?

BY MS. PENA:

Q I could understand what you're saying to the

STATE OF CALIFORNIA ) ss:
COUNTY OF SAN DIEGO )

I, Kimberly A. Broadhurst, Certified Shorthand Reporter of the State of California, do hereby certify:

That prior to being examined, the witness in the foregoing proceedings was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth;

That said proceedings were taken before me at the time and place therein set forth, and were taken down by me in shorthand and thereafter transcribed into typewriting under my direction and supervision.

I further certify that I am neither counsel for, nor related to, any party to said proceedings, nor in any way interested in the outcome thereof.

IN WITNESS WHEREOF, I have hereunto subscribed my name.

Dated: October 30, 2023.

____________________________________________
Kimberly A. Broadhurst
CSR No. 13814, CRG

SUPPLEMENTAL **EXHIBIT 4**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MARILYN MORTON, individually, and as Successor in Interest to JOSEPH MORTON, and DEAN MORTON, individually,

Plaintiffs,

vs.

COUNTY OF SAN DIEGO, SAMANTHA MACANLALAY, individually; BIJAN RAHMANI, individually; HOSANNA ALTO, individually; MATTHEW BERLIN, individually; LIBERTY HEALTHCARE, and DOES 1-10, inclusive,

Defendants.

No. 3:21-cv-01428-MMA-DDL

VOLUME I

ZOOM DEPOSITION OF JEFFREY L. METZNER, M.D., P.C.
(All parties appearing remotely.)
DECEMBER 19, 2023

MAGNA LEGAL SERVICES
866-624-6221
www.MagnaLS.com
REPORTED BY: CHRISTINA M. LOPEZ, CSR NO. 13048
FILE NO.: 1071473

going opine on what his report is; is that what you're saying?

MS. FELDMAN: Yes.

MS. PENA: His report -- his report speaks for itself, as did his answer.

THE WITNESS: So the answer to your question, I am going to opine that the policies did not provide adequate guidance to how to do this.

BY MS. FELDMAN:

Q. Okay. And are you aware of any research, publications, authorities, articles, opinions by other experts that support your opinion that the county's policies should provide guidance to mental health providers on how to weigh various risks and protective factors in context of determining suicide risk?

A. I haven't seen any reports by experts specifically opining on the county's policies. So it's -- I'm not aware of any expert reports that are saying it's adequate or it's inadequate.

Q. Are you aware of this type of methodology being used at any jail?

MS. PENA: Vague.

THE WITNESS: Which methodology are you talking about?

///

REPORTER'S CERTIFICATE

I, CHRISTINA M. LOPEZ, CSR No. 13048, Certified Shorthand Reporter, certify:

That the foregoing proceedings were taken before me at the time and place therein set forth, at which time the witness was put under oath by me;

That the testimony of the witness, the questions propounded, and all objections and statements made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

That the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative or employee of any attorney of the parties, nor financially interested in the actions.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Dated this 19th day of December, 2023.

Christina M. Lopez

CHRISTINA M. LOPEZ, CSR. No. 13048

SUPPLEMENTAL **EXHIBIT 5**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MARILYN MORTON, Individually, and as Successor in Interest to Joseph Morton, DEAN MORTON, Individually,

Plaintiffs,

vs. Case No. 21-cv 1428-MMA-DDL

COUNTY OF SAN DIEGO, SAMANTHA MACANLALAY, Individually; BIJAN RAHMANI, Individually; HOSANNA ALTO, Individually; MATTHEW BERLIN, Individually, LIBERTY HEALTHCARE; DOES 1-10, Inclusive

Defendants.

DEPOSITION OF CHRISTOPHER DAVID KAGAY

VOLUME I

APPEARING REMOTELY FROM JOHNSON COUNTY, KANSAS

July 18, 2023

1:29 p.m.

REPORTED BY:

Angela M. Schubert

CSR No. 12027, CSR

APPEARING REMOTELY FROM ORANGE COUNTY, CALIFORNIA

process and they -- (unintelligible)

MS. REPORTER: Repeat. Repeat please.

BY MS. PENA:

Q. I said was that close in time to the interview process and the tour of the jail. He said I believe --

A. It was about a month difference.

Q. Okay. Okay. Let's talk about generally the training that you received by Liberty. What can you recall, sir, as far as what type of onboard training they offered you?

A. I believe Liberty had its own handbook that incorporated some county guidelines but I cannot tell you for certain what that looked like.

Q. What type of training do you recall this being? Was it more about here's where you're working, here's the facility, here's what the computer system is like, or was it -- did Liberty have their own policies that you were reviewing? Can you explain a little bit more about what you remember?

A. At Liberty, it was all of those things. It was some of the practical day to day things. This is our system that we use. This is the separate county system. This is how they interface and where they don't. This is how we order medications. There's a system for that and this is how you see inmates. These

are the locations. It would have also included guidelines in terms of how often someone should be seen, how to respond to certain specific situations. In San Diego, it would have included some information on the PSU which was the inpatient psyche unit run by psychiatry, EOH, ISP, and I'm not sure what else would have been in there.

Q. Okay. Just so I can have an understanding. This training that Liberty gave you is this training that the county gave you? Did all these things that you're talking about, guidelines on how often someone should be seen, information about the PSU the EOH, ISP, is that something that all happened at one time or can you explain a little bit more?

A. From what -- I'm sorry. From what I recall, that all occurred at the same time. I believe they had a handbook and some of the more practical aspects of it were shown to me by county employees in terms of this is where we will go to see patients, these are the procedures to keep you safe, et cetera.

Q. Do you recall specifically when you were trained or provided information on the PSU, the EOH, ISP do you recall who trained you on that? Was that Liberty people or county people?

A. I don't recall.

REPORTER'S CERTIFICATE

I, Angela Schubert, CSR 12027, Certified Shorthand Reporter, certify:

That the foregoing proceedings were taken remotely before me at the time and place therein set forth, at which time the witness was put under oath by me;

That the testimony of the witness, the questions propounded, and all objections and statements made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

That a review of the transcript by the deponent was required;

That the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative or employee of any attorney of the parties, nor financially interested in the action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Dated this _18th_ day of _July_, 2023

ANGELA SCHUBERT, CSR 12027

SUPPLEMENTAL **EXHIBIT 6**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MARILYN MORTON, Individually, and as Successor in Interest to JOSEPH MORTON, and DEAN MORTON, Individually,

Plaintiff,

v.

COUNTY OF SAN DIEGO, SAMANTHA MACANLALAY, Individually, BIJAN RAHMANI, Individually, HOSANNA ALTO, Individually, MATTHEW BERLIN, Individually, LIBERTY HEALTHCARE, and DOES 1-10, inclusive,

Defendants.

Case No. 21-cv-01428-MMA-DDL

DEPOSITION OF MATTHEW BERLIN, Psy.D.

Tuesday, October 17, 2023
San Diego, California

Reported by: Keren M. Guevara, CSR No. 12478

Q Okay. Do you recall any substantive training provided by Liberty regarding the County's policies?
A I was given County policies from Liberty employees and went over those.
Q Okay.
A I don't know if I'd call it exactly formal training, but I was exposed to it and discussed it and all that.
Q Okay. If I asked you who was providing that training, the County or Liberty, would you know?
A Wouldn't know.
Q Okay. Would you say that it's fair to state that Liberty provided on-board training, HR training, that kind of stuff?
A Correct.
Q Okay. And you recall at some point, whether it was Liberty or County, you recall that you were provided policies to review?
A Correct.
Q County policies?
A County policies, correct.
Q When you were provided those policies, what type of directives were you given as far as ensuring that you would comprehend them?
A I don't recall beyond a vague idea -- you

REPORTER CERTIFICATE

COUNTY OF SAN DIEGO, )
STATE OF CALIFORNIA, )

I, Keren M. Guevara, Certified Shorthand Reporter licensed in the State of California, License No. 12478, hereby certify that the foregoing proceeding was reported by me and was thereafter transcribed with Computer-Aided Transcription; that the foregoing is a full, complete, and true record of said proceeding; that request: [X] was [ ] was not made to read and correct said deposition.

I further certify that I am not of counsel or attorney for either or any of the parties in the foregoing proceeding and caption named or in any way interested in the outcome of the cause in said caption.

The dismantling, unsealing, or unbinding of the original transcript will render the reporter's certificates null and void.

In witness whereof, I have hereunto set my hand this day: October 31, 2023

KEREN M. GUEVARA
CSR No. 12478

SUPPLEMENTAL **EXHIBIT 7**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MARILYN MORTON, Individually, and as Successor in Interest to JOSEPH MORTON, and DEAN MORTON, Individually,

Plaintiffs,

vs.

COUNTY OF SAN DIEGO, SAMANTHA MACANLALAY, Individually, BIJAN RAHMANI, Individually, HOSANNA ALTO, Individually, MATTHEW BERLIN, Individually, LIBERTY HEALTHCARE, and DOES 1-10, inclusive,

Defendants.

Case No. 21-cv-01428-MMA-DDL

AND ALL RELATED CROSS-ACTIONS.

DEPOSITION OF

BIJAN RAHMANI, PhD

501 West Broadway, Suite 1000

San Diego, California

October 13, 2023

10:25 A.M.

REPORTED BY: Barbra Zucker CSR No. 11289

A. How to be a good staff basically, yes.
Q. Okay. That was Liberty?
A. Yes.
Q. So let's focus on, what I really want to know is any training that you received substantively on the county's suicide prevention policy.
A. I remember that I had to attend one training.
Q. Okay. Let me -- it's easier for me, it's easier if we can kind of do it chronologically.
A. Okay.
Q. So let me ask you this, and we'll get back to the one training.
A. Okay.
Q. When you got on board, when you were first hired in 2019 I think, when you got on board, was there field training? Did they give you a pamphlet? Did you take a test? Was there any training, like, when you got hired on all of their -- on all of the county policies?
A. No.
Q. Okay. Can you recall any specific training that you received during -- before May of 2020 pertaining to suicide prevention?
A. Yes. There was one training that was provided by the county that I remember I had to go to the -- to their -- I forgot the name. It's one of the female

REPORTER'S CERTIFICATE

I, BARBRA ZUCKER, CSR No. 11289, Certified Shorthand Reporter, certify:

That the foregoing proceedings were taken before me at the time and place therein set forth, at which time the witness was put under oath by me;

That the testimony of the witness, the questions propounded, and all objections and statements made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

That a review of the transcript by the deponent was requested;

That the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative or employee of any attorney of the parties, nor financially interested in the action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Dated this 18th day of October 2023.

______________________________

BARBRA ZUCKER, CSR No. 11289