

Danielle R. Pena, Esq., SBN 286002
dpena@PHGLawGroup.com
PHG Law Group
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone:  (619) 826-8060
Facsimile:   (619) 826-8065

Grace Jun, Esq., SBN 287973
grace@gracejunlaw.com
501 West Broadway, Suite 1480
San Diego, CA 92101-6036
TEL: (619) 841-1408

Attorneys for Plaintiffs Marilyn Morton and
Dean Morton

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MARILYN MORTON, Individually,
and as Successor in Interest to
JOSEPH MORTON, and DEAN
MORTON, by and through his
successor in interest, MARILYN
MORTON.

                    Plaintiffs,

        v.

COUNTY OF SAN DIEGO, JANINE
SPARKS, Individually, BIJAN
RAHMANI, Individually,
HOSANNA ALTO, Individually,
MATTHEW BERLIN, Individually,
CHRISTOPHER KAGAY,
Individually, LIBERTY
HEALTHCARE, and DOES 1-10,
inclusive,

                    Defendants.

Case No. 21-cv-01428-RBM-DDL

**PLAINTIFF'S CONDITIONAL OPPOSITION TO COUNTY OF SAN DIEGO'S MOTION FOR RECONSIDERATION OF DISCOVERY ORDERS COMPELLING THE PRODUCTION OF CIRB REPORTS AND RELATED DOCUMENTS**

*Declaration of Grace Jun filed concurrently with this opposition*

## **INTRODUCTION**

Plaintiff is not able to take a clear position with respect to Defendant County of San Diego's motion because it is not clear whether the County intends to use CIRB as affirmative evidence in this case. Plaintiff's counsel has repeatedly met and conferred with counsel for the County of San Diego to ask whether the County intends to refer to, or use, CIRB during trial. Plaintiff has expressed concern that the Sheriff's Department may use the attorney-client privilege as both a sword and a shield in this case. Plaintiff has asked the County to stipulate that counsel for the County of San Diego and Janine Sparks, as well as any witness called by the County Defendants, will not raise, mention, refer to, or discuss the Critical Incident Review Board (CIRB). County Defendants have provided vague responses, refused any stipulation, and refused to provide written confirmation of positions taken verbally during a meet and confer. Because Plaintiff is unsure of the County's intention regarding reference to or use of CIRB at trial, Plaintiff submits this conditional opposition.

## **RELEVANT FACTUAL BACKGROUND**

In this case, there were a total of twenty (20) CIRB reports produced. One CIRB report relates to the death of Joseph Morton. Nineteen (19) CIRB reports relate to other in-custody suicides that occurred before Mr. Morton's death. Before it ordered production of the 19 CIRB reports regarding previous in-custody suicides, this Court reviewed, *in camera*, those 19 reports. *Morton v. Cnty. of San Diego*, No. 21-CV-1428-MMA-DDL, 2023 WL 6150402, at *12 (S.D. Cal. Sept. 20, 2023), *objections overruled*, No. 21-CV-1428-MMA-DDL, 2023 WL 7389021 (S.D. Cal. Nov. 8, 2023). Plaintiff had sought the 19 CIRB reports because it was relevant to Plaintiff's *Monell* claim alleging the County of San Diego had an inadequate suicide prevention and training program. *Id*. To establish *Monell* liability, Plaintiff must show that: (1) a policy, custom, or practice inflicted the constitutional harm; and (2) actual or constructive notice of an omission or

deficiency, i.e., deliberate indifference. *See Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1075-76 (9th Cir. 2016). The 19 CIRB reports could show both the existence of a custom or practice and demonstrate the County had actual or constructive notice of an inadequate suicide prevention and training program.

After completing its *in camera* review, this Court concluded the "Reports contain information pertaining to other inmate suicides that is relevant and proportional to the needs of the case under Rule 26(b)." *Morton*, 2023 WL 6150402, at *12. This Court observed "information regarding other in-custody suicides contained in the CIRB Reports is 'relevant to a claim or defense' for purposes of the Fed. R. Civ. P. 26(b) analysis." *Id*.

On August 28, 2025, the Ninth Circuit denied the request for rehearing *en banc* in the *Greer* matter regarding the CIRB reports. *Greer v. Cnty. of San Diego*, No. 23-55607, 2025 WL 2472998, at *1 (9th Cir. Aug. 28, 2025). That same day, Plaintiff's counsel sent an email to counsel for the County of San Diego to ask if any Title 15 mortality review[1] existed for the 20 decedents who were the subject of the CIRB reports (Mr. Morton plus the 19 other individuals who committed suicide before Mr. Morton's death). *See* Declaration of Grace Jun ("Jun Decl") at ¶ 3. The purpose of the request was to potentially use the mortality reports in lieu of the CIRB reports.[2] *Id*. ¶¶ 4-5. Counsel for the County has taken the position that the County is not required to inquire as to the existence of these reports. *Id*. ¶ 9.

---

[1] Section 1046 of Title 15 of the California Code of Regulations requires an initial review and written report of every in-custody death within 30 days of the inmate's death. "Deaths shall be reviewed to determine the appropriateness of clinical care; whether changes to policies, procedures, or practices are warranted; and to identify issues that require further study." 15 CCR § 1046(b).

[2] If the County's instant motion is granted and Plaintiff cannot rely on the CIRB reports in support of Plaintiff's *Monell* theory of municipal liability, Plaintiff contends this warrants amending the Rule 16 scheduling order to reopen discovery for a limited purpose of obtaining substitute information. *See City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017). Plaintiff intends to move separately for this requested relief and, thus, raised the issue with this Court by requesting an informal discovery conference.

3

If Title 15 mortality reviews do not exist for the 20 in-custody suicides, and if Plaintiff is not permitted to rely on the CIRB reports, Plaintiff intends to use the absence of adequate mortality reviews as evidence of municipal deliberate indifference. The State Auditor of California found that San Diego County Sheriff's Department did not "sufficiently document the results or recommendations from its 30-day medical reviews." State Auditor Report[3] at p.34. The State Auditor had reviewed the deaths of 30 individuals who died in Sheriff's Department's jails from 2006 through 2020, "weighted toward deaths that occurred in the last four years. Our selection included natural deaths, accidental deaths, suicides, and homicides." *Id*. p. 18. It observed that "[f]or 22 of the 30 cases we reviewed, the Sheriff's Department was unable to provide us with documentation from reviews that detailed any findings or conclusions about the clinical care given; identified whether any concerns required further study; or stated whether changes to policies, procedures, or practices were warranted." *Id*. p. 34. The State Auditor continued:

> We believe that if the Sheriff's Department properly documented the 30-day medical reviews, it could better identify and track instances when it did not provide sufficient medical and mental health follow-up care before an individual's death, such as those we discuss in Chapter 1. The chief medical officer agreed that the reviews, if properly documented, could be useful as an educational and quality assurance tool. However, he indicated that he would have reservations about formalizing these reports in a written format without some form of protection against using these documents as evidence in litigation.

*Id*. pp. 35-36.

Because the Sheriff's Department has not properly conducted Title 15 mortality reviews, and because (according to the County) CIRB cannot be

---

[3] All references to the California State Auditor's Report is made to the PDF version of the report, which is publicly available at https://information.auditor.ca.gov/pdfs/reports/2021-109.pdf. Citations to page numbers refer to the page numbers found at the top of the PDF version of the report.

referenced, Plaintiff intends to argue the County maintained a program that did not prevent constitutional violations. Despite the mandate of California law and the fact that 19 other individuals had committed suicide before Mr. Morton, Plaintiff will contend the County failed to maintain an adequate system of reviewing in-custody suicides to rectify policy and training errors. The Sheriff's Department's "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407 (1997).

Plaintiff anticipates that in response to this position at trial, the County will attempt to inject references to CIRB, and the CIRB process, while simultaneously denying Plaintiff the ability to dissect and examine the CIRB reports. For this reason, Plaintiff raised this issue with the County during the meet and confer process. Plaintiff repeatedly asked the County to stipulate that it would not discuss, reference, or mention CIRB at trial. Jun Decl. ¶¶ 7-11. In response, the County made vague statements that were confusing and did not address the substance of Plaintiff's concern. *See id.* ¶¶ 8, 11. This conditional opposition now ensues.

## ARGUMENT

### A. The County May Not Wield CIRB as a Sword and Shield.

"The privilege which protects attorney-client communications may not be used both as a sword and a shield." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). "In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials. The party asserting the claim is said to have implicitly waived the privilege." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003).

The doctrine of implied waiver presents the holder of the privilege with a choice: "If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it." *Bittaker*, 331 F.3d at 720. Of course, "the holder of the privilege may preserve the confidentiality of the privileged communications by choosing to abandon the claim that gives rise to the waiver condition." *Id*. at 721.

District courts may prohibit the use of evidence at trial to which a party has prevented discovery by claiming the attorney client privilege. In *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001), the court of appeals upheld the decision of the district court prohibiting an "advice of counsel" defense. The Ninth Circuit noted, "'the court may fashion remedies to prevent surprise and unfairness to the party seeking discovery. For example, where the party claiming privilege during discovery wants to testify at the time of trial, the court may ban that party from testifying on the matters claimed to be privileged[.]'" *Id*., *quoting* William A. Schwarzer, et al., *Federal Civil Procedure Before Trial*, ¶ 11:37 at 11–29 (2000).

The Central District of California recently addressed the impact of the Ninth Circuit's *Greer* opinion on a post-incident review board's report. At issue in *Garza v. Cnty. of San Bernardino*, No. 5:23-CV-01849-CBM-SP, 2025 WL 1126513, at *5 (C.D. Cal. Mar. 5, 2025), was the County of San Bernardino's Lethal Force Encounter Review Board ("LFERB"). Relying on the Ninth Circuit's opinion in *Greer*, the *Garza* court held that the attorney-client privilege applied to LFERB. But the *Garza* court further observed that a municipal defendant may be prohibited from using the attorney-client privilege related to a post-incident review as both a sword and a shield:

> Should defendant attempt to argue that the LFERB's review was adequate while simultaneously denying plaintiff access to the information presented at the LFERB, it would not be unreasonable to conclude defendant is

6

> attempting to use the attorney-client privilege both offensively and defensively. Nor would it be unreasonable to find it would be fundamentally unfair for defendant to be permitted to do so.

*Id.*, 2025 WL 1126513, at *6.

The same rationale applies in this case – the County of San Diego may not argue that it has an adequate mortality review process for in-custody deaths by invoking CIRB while simultaneously contending Plaintiff cannot access or use any material or information related to CIRB. For this reason, Plaintiff makes clear that its position to the County's motion is contingent on precisely how, if at all, the County intends to use CIRB at trial.

### B. Plaintiff's Position

Given the ruling of the Ninth Circuit in *Greer*, Plaintiff does not oppose the County's request to destroy all 20 CIRB reports; to remove or revise any reference to the CIRB reports found in Plaintiff's expert report and opinion; and to prohibit the use of information derived from these 20 CIRB reports *if* the County does not attempt to use CIRB as evidence that it was not deliberately indifferent to the threat of Constitutional injury. In other words, the County must not implicitly waive the attorney client privilege.

With respect to the forty (40) CIRB related records produced in this case, the district court noted "[i]t appears plain on this record that these documents were created in advance of and for the CIRB meeting." *Morton v. Cnty. of San Diego*, No. 21-CV-1428-MMA-DDL, 2023 WL 5746921, at *6 (S.D. Cal. Sept. 6, 2023). Plaintiff similarly does not oppose destruction of these 40 CIRB records and any order prohibiting use of these records *if* the County does not attempt to use CIRB as evidence at trial

With respect to the ninety-three (93) emails at issue, this court conducted an *in camera* review of the documents and determined the County failed to carry its

7

1  burden and provided no explanation as to how these emails were privileged. *Id*.

2  Many of the emails were not even addressed to an attorney or included an attorney.

3  *Id*. The district court wrote, "the emails do not appear to contain any reference to

4  legal consequences or liability. And there is simply no evidence or argument from

5  which the Court can extrapolate that these emails were nevertheless created for the

6  primary purpose of securing legal advice." *Morton v. Cnty. of San Diego*, No. 21-

7  CV-1428-MMA-DDL, 2023 WL 5746921, at *7 (S.D. Cal. Sept. 6, 2023). The

8  Ninth Circuit's opinion in *Greer* did not involve any email communications and

9  solely addressed the CIRB meetings and reports. Unlike the 40 CIRB related

10  records that the district court found were "created in advance of and for the CIRB

11  meeting[]" there is nothing in the record to show how these emails could be

12  considered privileged under *Greer*. Thus, with respect to the 93 emails only, the

13  Ninth Circuit's opinion in *Greer* does not constitute a change in the controlling law

14  warranting relief under Fed. R. Civ. P. 60(b)(6).

15      If the County attempts to use CIRB at trial to contend it is not deliberately

16  indifferent, Plaintiff submits that the County has implicitly waived the attorney-

17  client privilege and the instant motion should be denied.

18      Finally, if the Court grants the County's motion, Plaintiff submits that any

19  order prohibiting reference to, and use of, CIRB must apply universally to all

20  parties – including the San Diego County Sheriff's Department. Plaintiff requests

21  the Court to make clear that ***no party***, including the County of San Diego, may

22  raise, mention, refer to, or discuss CIRB or the CIRB reports.

23

24                                  Respectfully submitted,

25

26  Dated:  September 22, 2025          by:    *s/ Grace Jun*
                                               _____
                                               GRACE JUN
27                                             Attorneys for Plaintiffs

28

PLAINTIFF'S RESPONSE                    CASE NO. 21-CV-01428-RBM-DDL