Danielle R. Pena, Esq., SBN 286002
dpena@PHGLawGroup.com
PHG Law Group
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone: (619) 826-8060
Facsimile: (619) 826-8065

Grace Jun, Esq., Esq., SBN 287973
grace@gracejunlaw.com
501 West Broadway, Suite 1480
San Diego, CA 92101-6036
TEL: (619) 841-1408

Ryan W. Stitt, Esq., SBN 273651
Stitt Vu Trial Lawyers APC
501 W Broadway Suite 730
San Diego, California 92101
Telephone: (619) 255-0553
rstitt@stittvu.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MARILYN MORTON, Individually, and as Successor in Interest to JOSEPH MORTON, and DEAN MORTON, by and through his successor in interest, MARILYN MORTON,

Plaintiffs,

v.

COUNTY OF SAN DIEGO, JANINE SPARKS, Individually, BIJAN RAHMANI, Individually, MATTHEW BERLIN, Individually, CHRISTOPHER KAGAY, Individually, LIBERTY HEALTHCARE, and DOES 1-10, inclusive,

Defendants.

CASE NO.: 21CV1428-RBM-DDL

*Hon. Judge Ruth B. Montenegro*

PLAINTIFF'S BRIEF RE DIRECT LIABILITY AGAINST LIBERTY

Pursuant to this Court's July 6, 2026, Order (Dkt. 371), Plaintiffs submit this opening brief addressing whether Liberty may be found directly, in addition to vicariously, liable for the remaining state law claims.

**I.**

**INTRODUCTION**

The operative Fourth Amended Complaint expressly alleges a direct negligence claim against Liberty based on its failure to adequately train and supervise its medical providers. (Dkt. 190, FAC ¶ 139.) Equally undisputed is that Liberty did not file a dispositive motion seeking dismissal of this claim. Thus, Plaintiffs properly placed their failure-to-train-and-supervise claim at issue, and Liberty cannot now avoid trial on a claim it never moved to dismiss. Therefore, the claim must proceed to the jury. *See Greene v. Solano County Jail*, 513 F.3d 982 (9th Cir. 2008).

Nor should Liberty be permitted a second opportunity to seek dismissal based on counsel's purported uncertainty regarding whether Plaintiffs had pleaded a direct liability claim. If Liberty was uncertain about the scope of the claims asserted against it, the appropriate course was to review the operative pleading and, if warranted, raise the issue through a timely dispositive motion. Instead, counsel's representation during the PTO hearing that he was uncertain whether a direct claim had been alleged prompted the Court to establish this briefing schedule to address the issue. Liberty should not be permitted to convert that representation into a second opportunity to litigate a dispositive motion that it never filed.

Regardless, the record contains sufficient evidence to support the claim on the merits. The contract between the County and Liberty expressly required Liberty to provide qualified and licensed health-care providers and to ensure the competence and qualifications of the providers assigned to the County's jails. The contract further required Liberty to ensure that its providers performed in accordance with applicable correctional-healthcare standards as well as with the

County's medical and mental-health policies. These provisions imposed upon Liberty an affirmative obligation to ensure that its providers were adequately trained to understand and comply with the policies and professional standards governing their clinical responsibilities. That obligation necessarily included identifying and addressing deficiencies in a provider's training or competency and, where necessary, notifying the County when a provider lacked the training or qualifications necessary to satisfy those standards.

Yet there is no evidence that Liberty took any meaningful steps to fulfill these contractual obligations. The absence of evidence that Liberty ensured its providers were adequately trained, qualified, and supervised—despite its express contractual responsibility to do so—provides ample evidentiary support for Plaintiffs' direct negligence claim.

Accordingly, Plaintiffs have both properly pleaded and presented evidence supporting a direct liability claim against Liberty for its failure to adequately train and supervise its medical providers. That claim should be submitted to the jury.

## II.

## LIBERTY'S FAILURE TO CHALLENGE THE FOURTH AMENDED COMPLAINT REQUIRES THAT THE CLAIM PROCEED TO TRIAL

In the instant case, Liberty intentionally failed to file a Federal Rule of Civil Procedure 12(b)(6) motion or a motion for summary judgment to dismiss any claims alleged against it. The instant briefing schedule was set due to the purported uncertainty of counsel that a direct claim was alleged against Liberty in the Fourth Amended Complaint ('FAC"). Liberty should not be allowed to claim confusion about a properly asserted claim, filed over two and half years ago, to create a scenario allowing for another opportunity to file a dispositive motion on the eve of trial.

Moreover, during meet and confer discussions with Liberty, wherein Plaintiffs' counsel confirmed there was a direct claim alleged against Liberty in the

FAC at paragraph 139, Liberty disagreed that such a claim should move forward. However, Plaintiffs were not provided with a good faith basis or argument for why this claim should be dismissed at this stage of litigation.

In the Ninth Circuit, "*Sua sponte* grants of summary judgment are only appropriate if the losing party has reasonable notice that the sufficiency of his or her claim will be in issue." *United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008). "Reasonable notice implies adequate time to develop the facts on which the litigant will depend to oppose summary judgment." *Portsmouth Square, Inc. v. S'holders Protective Comm.*, 770 F.2d 866, 869 (9th Cir. 1985).

In the instant case, Plaintiffs have been denied any notice regarding the alleged sufficiency of their direct liability claim. As such, because Liberty failed to file a timely dispositive motion, and because Plaintiffs have not been provided with reasonable or adequate notice of any alleged deficiency, Plaintiffs' direct liability claim against Liberty should proceed to the jury.

## III.

## **THE CONTRACT BETWEEN THE COUNTY AND LIBERTY IMPOSED DIRECT OBLIGATIONS ON LIBERTY TO ENSURE ITS PROVIDERS WERE QUALIFIED, TRAINED, AND COMPLIANT WITH APPLICABLE STANDARDS**

Setting aside Liberty's failure to file a timely dispositive motion, Plaintiffs' direct liability claim against Liberty should proceed to the jury based on the merits of the claim and the evidentiary support in the record.

The contract between the County and Liberty ("Agreement") leaves no ambiguity that Liberty—not the County—bore responsibility for ensuring that its medical providers were qualified, properly supervised, and capable of performing their duties in accordance with applicable correctional standards and County policies. The Agreement required Liberty to perform the contracted services "in

accordance with the highest professional standards" and to furnish the personnel necessary to perform those services. Agreement §§ 1.1–1.2 (Exhibit 1, SD0051). Critically, Liberty's own Representative was required to ensure that the Contractor's duties were performed by qualified personnel, and Liberty's employees were to perform their services under the supervision of Liberty's Representative. Id. §§ 1.2, 1.4 (Exhibit 1, SD0051).

The substantive provisions of the Agreement reinforce that obligation. Liberty was required to provide licensed mental-health staff to deliver comprehensive services throughout the County's jail facilities, and those providers were expressly required to comply with California Title 15 and correctional-community standards established by NCCHC, IMQ, and ACHSA. Exhibit A, §§ 3.2.1–3.2.3 (Exhibit 1, SD0068). The Agreement further required Liberty's staff to perform their clinical responsibilities "per policy, procedures and correctional mental health standards," including when conducting evaluations, making referrals, providing crisis-intervention services, managing medications, and providing treatment. Id. §§ 3.2.8–3.2.15 (Exhibit 1, SD0068-SD0069).

Liberty's obligations went further: its staff were required to utilize the County's approved written policies and procedures for mental-health treatment, § 3.2.21 (Exhibit 1, SD0069); comply with initial and ongoing training provided by the Sheriff's Medical Services Administrator, Chief Medical Officer, and/or Chief Psychiatric Officer, § 3.2.23 (Exhibit 1, SD0069); participate in quality-improvement, death-review, and other multidisciplinary processes, § 3.2.24 (Exhibit 1, SD0070); participate in correctional mental-health education and conferences, § 3.2.25 (Exhibit 1, SD0070); and collaborate with County medical officials to adhere to correctional-community standards, § 3.2.26 (Exhibit 1, SD0070).

The Agreement also specifically required Liberty's staff to maintain "constant survey readiness" based on California Title 15, NCCHC, ACHSA, and

the Sheriff's Medical Services Policies and Procedures for Correctional Mental Healthcare, § 4.1.5 (Exhibit 1, SD0070), and required Liberty to ensure that its providers maintained the licenses and certifications necessary to perform their duties, §§ 4.1.3–4.1.4 (Exhibit 1, SD0070). Finally, the Agreement required Liberty to ensure that it possessed and maintained all licenses, permits, and certifications necessary to comply with applicable laws and correctional standards, including Title 15 and NCCHC, IMQ, and ACHSA guidelines, § 12.1 (Exhibit 1, SD0074), **and to notify the County of any problem or potential problem affecting the quality or level of performance under the Agreement**, § 13 (Exhibit 1, SD0075).

Furthermore, Plaintiffs deposed Melissa Quiroz in this case. The County designated Ms. Quiroz as the proper Rule 30(b) witness regarding the County's suicide prevention policies, practices, and training. At the time she sat for her deposition, Ms. Quiroz was the County mental health director. (Exhibit 2, Quiroz Depo, 5:17-21.) During her deposition, Ms. Quiroz was asked specifically about Liberty providers providing psychiatric care in the jails and whether the County or Liberty was responsible for training them on how to perform a 24-hour psychiatric sick call assessment. (Exhibit 2, Quiroz Depo, 124:22-125:6.) In response, Ms. Quiroz testified, "Their provider, Liberty." *Id.*

Accordingly, the provisions set forth in the Agreement necessarily required Liberty to do more than simply place licensed providers in the County's jails. Liberty could not fulfill its contractual obligation to ensure that its providers complied with correctional standards and the Sheriff's substantive medical and mental-health policies without ensuring that those providers were adequately trained to understand and implement those requirements. The testimony of Melissa Quirroz is consistent with Liberty's contractual obligations to provide qualified personnel and to ensure that its staff complied with correctional standards and the Sheriff's Medical Services policies and procedures. See Contract §§ 1.1–1.2, 3.2.24–3.2.26, 4.1.3–4.1.5 (Exhibit 1, SD0051, SD0070).

Yet the record contains no evidence that Liberty took meaningful steps to do so. To the contrary, the evidence establishes that Liberty knew its providers received only a single standardized training concerning the County's substantive medical and mental-health policies—a training provided indiscriminately to personnel ranging from psychiatrists to cooks. A reasonable jury could therefore conclude that Liberty failed to fulfill its own contractual obligation to ensure that its medical providers possessed the training and competency necessary to comply with the very standards and policies governing the clinical services Liberty was contractually obligated to provide.

## IV.

## CONCLUSION

In sum, Plaintiffs have properly pleaded a direct state-law negligence claim against Liberty based on its failure to adequately train and supervise its medical providers. FAC ¶ 139. Liberty had a full and fair opportunity to challenge that claim but failed to do so: it filed neither a motion to dismiss nor a motion for summary judgment seeking its dismissal. Liberty therefore should not now be permitted to obtain a second opportunity to challenge a claim it elected not to test through a dispositive motion. The claim should proceed to the jury, particularly where, as here, Plaintiffs have identified substantial evidence supporting it. The record demonstrates that Liberty assumed contractual responsibility for ensuring that its providers complied with applicable correctional-healthcare standards and the County's medical and mental-health policies, obligations that necessarily required Liberty to ensure its providers received adequate training to perform those responsibilities. The record also shows that Liberty had a duty to notify the County if its medical providers were not properly trained to perform under the contract. Yet the evidence shows that Liberty knew its providers received only a single eight hour standardized training course concerning the County's *voluminous* substantive policies—training provided to personnel ranging from psychiatrists to cooks—and

there is no evidence that Liberty took additional steps to ensure its medical providers were adequately trained or competent to comply with the standards and policies governing their clinical duties. Accordingly, Plaintiffs have both properly pleaded and supported their failure-to-train claim, and the claim should be submitted to the jury.

Respectfully submitted,

Dated: August 17, 2026

*s/ Danielle R. Pena*

PHG Law Group
Attorneys for Plaintiffs