Danielle R. Pena, Esq., SBN 286002
dpena@PHGLawGroup.com
PHG Law Group
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone: (619) 826-8060
Facsimile: (619) 826-8065

Grace Jun, Esq., Esq., SBN 287973
grace@gracejunlaw.com
501 West Broadway, Suite 1480
San Diego, CA 92101-6036
TEL: (619) 841-1408

Ryan W. Stitt, Esq., SBN 273651
Stitt Vu Trial Lawyers APC
501 W Broadway Suite 730
San Diego, California 92101
Telephone: (619) 255-0553
rstitt@stittvu.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ESTATE OF JOSEPH MORTON, by and through its Special Administrator, Kaitlyn Welling; MARILYN MORTON, individually, by and through her successors in interest; DEAN MORTON, individually, by and through his successors in interest;

Plaintiffs,

v.

COUNTY OF SAN DIEGO, JANINE SPARKS, individually, BIJAN RAHMANI, individually, MATTHEW BERLIN, individually, CHRISTOPHER KAGAY, individually, LIBERTY HEALTHCARE, and DOES 1-10, inclusive,

Defendants.

CASE NO.: 21-CV-1428-RBM-DDL

*Hon. Judge Ruth B. Montenegro*

PLAINTIFFS' SUPPLEMENTAL BRIEF RE: COMPARATIVE FAULT AND APPORTIONMENT OF LIABILITY FOR SECTION 1983 CLAIMS

In the event of a verdict in favor of Plaintiff Estate of Joseph Morton on decedent's § 1983 claims at trial (the first and second causes of action), Defendants in this matter would not be entitled to any apportionment as a matter of law. This is because Joseph Morton's injuries, including his loss of life, are a single, indivisible harm caused by the concurrent actions of all defendants. *See Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 614–15 (2009) (citing *Restatement (Second) of Torts* § 433A ("When two or more causes produce a single, indivisible harm, 'courts have refused to make an arbitrary apportionment for its own sake, and each of the causes is charged with responsibility for the entire harm.'")). *See also Hazle v. Crofoot*, 727 F.3d 983, 995 (9th Cir. 2013) ("Hazle independently challenges the jury instruction and verdict form that allowed the jury to decide this question, contending that the district judge should have concluded, as a matter of law, that Hazle was entitled to compensatory damages and that defendants were jointly and severally liable for his injuries. He is correct."). A constitutional injury is indivisible when "the concurrent actions of all defendants" are necessary to inflict to the constitutional harm. *Id*. (citing *Rudelson v. United States,* 602 F.2d 1326, 1332 (9th Cir. 1979)). In *Rudelson*, the Ninth Circuit described indivisible harm as follows:

> This is not the sort of case where one defendant broke the plaintiff's arm and then an hour later, in an unrelated incident, a second defendant broke the plaintiff's leg. Here the injuries were indivisible; all of the defendants, acting concurrently, proximately caused the pilots' deaths. Had any one of the defendants exercised due care, none of the injuries would have occurred. Consequently, each defendant is liable for all of the damages stemming from the collision.

*Rudelson*, 602 F.2d at 1332. As the Ninth Circuit made clear in *Hazle*, when a plaintiff suffers an indivisible harm, defendants are jointly and severally liable for that injury. 727 F.3d at 994.

In this case, Mr. Morton was housed at the Vista Detention Facility for approximately six days from May 11, 2020 until his death by suicide on May 17, 2020. (Summary Judgment Order, dkt. 250, at 3-6.) Mr. Morton was booked into the Vista Detention Facility after being released from a 72-hour "5150" hold, which was imposed because Mr. Morton had attempted to kill himself through carbon monoxide poisoning. (*Id*. 2-3.) Mr. Morton self-reported acute suicide risk factors, including: active thoughts of suicide; major depression; the recent death of a family member; and chronic alcohol abuse. (*Id*. at 3.) In response to this information, Defendant Dr. Rahmani deemed Mr. Morton a "low" suicide risk and referred him to Defendant Christopher Kagay to be evaluated for psychiatric medication within 24 hours. (*Id*.) Defendant Kagay decided Mr. Morton did not require any psychiatric medication evaluation and cancelled the referral made by Rahmani. (*Id*. at 5.) Defendant Dr. Berlin saw Mr. Morton because deputies immediately escorted Mr. Morton to him after Mr. Morton said he would use a blanket to hang himself. (*Id*. at 4-5.) Dr. Berlin concluded that Mr. Morton denied suicidal ideation and simply wanted to make some phone calls. (*Id*. 5.) Defendant Janine Sparks was required to conduct a follow-up mental health assessment of Mr. Morton. (*Id*. 6.) Despite having four days to do so, from May 12, 2020 to May 16, 2020, Ms. Sparks made no attempt to fulfill her obligation. (*Id*.)

Plaintiffs further contend the County of San Diego was the moving force of Mr. Morton's constitutional harm because it failed to promulgate a standardized suicide risk assessment instrument that provided structure and guidance on how to weigh risk factors and how to proceed in the face of such risk factors. (*See* Dep. Tr. Jeffrey Metzner at 77; 84-86; 92-93 at dkt. 395-2.) The absence of a standardized suicide risk assessment instrument led to multiple inadequate suicide risk assessments, which deprived Mr. Morton of the mental health care he required and caused his suicide. (*Id*.; *see also* dkt. 250 at 26.)

The foregoing demonstrates that Mr. Morton suffered an indivisible harm. Had any individual defendant, or any entity defendant, exercised due care, Mr. Morton would not have been denied the mental health treatment and safe housing that he needed given his elevated risk of suicide. *Hazle*, 727 F.3d at 995. Thus, the concurrent actions of all defendants inflicted the ultimate harm. *Id*.

Furthermore, Plaintiff's § 1983 claims of deliberate indifference require a showing of objective unreasonableness, which is "more than negligence[.]" *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 669 (9th Cir. 2021) (internal citation omitted). But "comparative fault is inapplicable in the context of an intentional tort[.]" *Logan v. City of Pullman Police Dep't*, No. CV-04-214-FVS, 2006 WL 994759, at *2 (E.D. Wash. Apr. 14, 2006). "Because Plaintiffs must prove intentional conduct on behalf of each Defendant in this case, and because comparative fault, contributory negligence, and apportionment do not apply to intentional conduct, affirmative defenses based on those concepts are impermissible in section 1983 actions." *Est. of Moreno by & through Moreno v. Corr. Healthcare Companies, Inc.*, No. 4:18-CV-5171-RMP, 2019 WL 10733237, at *3 (E.D. Wash. Aug. 5, 2019).

Even if this Court were to apply California state law, "California principles of comparative fault have never required or authorized the reduction of an intentional tortfeasor's liability based on the acts of others." *B.B. v. Cnty. of Los Angeles*, 10 Cal. 5th 1, 24 (2020). Thus, California state law does not "authorize a reduction in the liability of intentional tortfeasors for noneconomic damages based on the extent to which the negligence of other actors — including the plaintiffs, any codefendants, injured parties, and nonparties — contributed to the injuries in question." *Id*. at 29.

Other Circuit Courts of Appeals have rejected application of comparative fault principles to § 1983 actions. *See, e.g.*, *Clappier v. Flynn,* 605 F.2d 519, 530 (10th Cir.1979) (apportionment of fault not available in section 1983 action);

*Quezada v. Cnty. of Bernalillo*, 944 F.2d 710, 721 (10th Cir. 1991) ("Comparative negligence is not applied in suits for violations of federal constitutional rights under § 1983."); *McHugh v. Olympia Ent., Inc.*, 37 F. App'x 730, 736 (6th Cir. 2002), *amended on denial of reh'g*, 41 F. App'x 758 (6th Cir. 2002) ("Comparative negligence, however, does not apply to damages for federal constitutional rights violations.").

Similarly, district courts in the Ninth Circuit have rejected application of comparative fault principles to § 1983 actions. *E.g.*, *Acasio v. Lucy*, No. 14-CV-04689-JSC, 2017 WL 1316537, at *15 (N.D. Cal. Apr. 10, 2017) (citing cases therein) ("the comparative fault affirmative defenses fail as a matter of law as they are inapplicable to Plaintiff's [§ 1983] claim."); *Black Unity v. City of Springfield*, No. 6:21-CV-00346-AA, 2026 WL 183363, at *10 (D. Or. Jan. 23, 2026) ("[c]omparative fault is not an affirmative defense to § 1983 claim."); *Miller v. Schmitz*, No. 1:12-CV-0137 LJO, 2013 WL 5754945, at *5 (E.D. Cal. Oct. 23, 2013) (citing cases therein) (holding that "the jury may not be asked to apportion fault in this case" because "[c]oncepts of comparative fault or indemnification are not applicable in actions filed under 42 U.S.C. § 1983."); *Jones v. Cnty. of San Bernardino*, No. EDCV 15-00080-DTB, 2016 WL 4425711, at *16 (C.D. Cal. Aug. 17, 2016) ("Because comparative fault is inapplicable on Section 1983 claim, the Court declines to consider whether Jones's own conduct contributed to his harm."); *Logan*, 2006 WL 994759, at *2 (E.D. Wash. Apr. 14, 2006) (concluding "Defendants' affirmative defense of comparative fault is inapplicable to Plaintiffs' Section 1983 claims"); *Est. of Moreno by & through Moreno,* 2019 WL 10733237, at *2 (citing cases therein) ("While defendants to section 1983 actions may argue that other people are responsible for the plaintiff's injuries, defendants may not ask the jury to apportion fault among parties and non-parties, including other defendants, under state comparative fault and apportionment laws.").

///

Based on the foregoing, Plaintiffs respectfully submit that there can be no comparative fault or apportionment of liability for any claim arising under 42 U.S.C. § 1983 in this matter.

Respectfully submitted,

DATED August 17, 2026

*s/ Grace Jun*
GRACE JUN
Attorneys for Plaintiffs