UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MARILYN MORTON, et al.,
Plaintiffs,
v.
COUNTY OF SAN DIEGO, et al.,
Defendants.

Case No.: 3:21-cv-01428-RBM-DDL

**ORDER REGARDING MOTIONS IN LIMINE, SUPPLEMENTAL TRIAL BRIEFS, AND MOTION TO QUASH TRIAL SUBPOENA**

**[Docs. 391, 433, 434, 436, 438, 439, 440, 442, 443, 444, 445, 446, 448, 449, 450, 451, 452]**

In preparation for the January 25, 2027 trial in this case, the Parties have filed: (1) motions in limine (Docs. 433, 436, 438–440, 442, 443, 445, 446, 448–52); (2) motions to seal parts of the motions in limine (Docs. 434, 444); (3) supplemental substantive trial briefs (Docs. 396–409, 415–430); and (4) a motion for protective order and to quash trial subpoena (Docs. 391, 395). The Court held a hearing on the above motions on October 23, 2026. (Doc. 489.) The Court rules on the above as follows.

## I. BACKGROUND

The Court incorporates the background section of the Summary Judgment Order. (*See* Doc. 250 at 2–6.) As relevant here, this is a civil rights action arising from the in-custody death of Joseph Morton. Morton was arrested by County of San Diego Sheriff's

deputies on May 11, 2020 for using a fake gun to rob a man sitting in a car with his children. He was taken to Vista Detention Facility, where there are disputes of fact as to the foreseeability of his suicidality and the efficacy of his treatment by medical professionals working in the jail. On May 17, 2026, Morton was discovered dead in his cell in a suicide by hanging. Defendants are the County of San Diego ("County"); Liberty Healthcare ("Liberty"), the medical group contracted to provide the psychiatric care in the County's jails; County employee Janine Sparks; and Liberty employees Dr. Bijan Rahmani, Dr. Matthew Berlin, and Christopher Kagay.

## II. DISCUSSION

### A. Motions in Limine

#### 1. Plaintiffs' MIL No. 2 (Doc. 446)

Plaintiffs seek to preclude Defendants from: (1) arguing that Morton's suicide was a superseding cause of his death; (2) arguing that Morton's mom or girlfriend were liable for failing to report the statements Morton made to them while at the jail; (3) opining about how their care would have changed had they known of the jail phone call statements; and (4) introducing the jail calls without first identifying specific excerpts to Plaintiffs.

The Court confirms its tentative; for the reasons stated on the record at the October 23 hearing, the Court **GRANTS in part and DENIES in part** Plaintiffs' MIL No. 2 (Doc. 446.) Defendants may not argue that Morton's mom or girlfriend are legally liable, but they may more generally "argue that other people are responsible for the plaintiff's injuries." *Est. of Moreno v. Corr. Healthcare Cos., Inc.*, NO: 4:18-CV-5171-RMP, 2019 WL 10733237, at *2 (E.D. Wash. Aug. 5, 2019). Defendants may not offer expert testimony regarding how their care of Morton may have changed if they knew about the statements he made during phone calls to his mom and girlfriend. Defendants must identify to Plaintiffs the specific excerpts of the jail calls they seek to introduce. Defendants may argue that Morton's suicide was a superseding cause that broke the causal chain. (*See also* Doc. 250 at 41–43 (surveying the case law and finding that the question of whether "Mr. Morton's suicide was a foreseeable harm" was one properly before the jury).)

**2. Plaintiffs' MIL No. 3** (Doc. 445)

Plaintiffs seek to exclude testimony by the victim of Morton's robbery, Mr. Knox, and the victim-impact portions of the police report authored by Deputy Iverson. (Doc. 445-1 at 15–16.) The Court confirms its tentative; for the reasons stated on the record at the October 23 hearing, the Court **GRANTS in part and DENIES in part** Plaintiffs' MIL No. 3 (Doc. 445). Mr. Knox's testimony is inadmissible under Federal Rule of Evidence ("Evidence Rule") 403. The victim-impact portions of the police report are admissible.

**3. Plaintiffs' MIL No. 4** (Doc. 451)

Plaintiffs seek to exclude all references, testimony, or argument regarding the County's Critical Incident Review Board ("CIRB") reports, arguing that because the CIRB reports are privileged, any reference to them by Defendants would be an attempt to impermissibly use them as both a sword and a shield. (Doc. 451.) The Court confirms its tentative; for the reasons stated on the record at the October 23 hearing, the Court **DENIES** Plaintiffs' MIL No. 4 (Doc. 451). Defendants may refer to the existence of CIRB and CIRB reports, and may explain that a CIRB report is an investigation into an in-custody death for the purpose of providing legal advice. Defendants may not discuss the "specific nature" of any CIRB report or argue, for example, that the CIRB report regarding Morton's death revealed no wrongdoing. *See Clarke v. American Commerce Bank*, 974 F.2d 127, 129 (9th Cir. 1992); *Garza v. Cnty. of San Bernadino*, Case No. 5:23-cv-01849-CMB-SP, 2025 WL 1126513, at *4–6 (C.D. Cal. Mar. 5, 2025).

**4. County's MIL No. 1** (Doc. 433)

The County, joined by Liberty, seeks to exclude (1) photographs and videos depicting the deceased Morton and the noose he used; (2) Morton's suicide notes; and (3) family photographs, letters, and cards. (Doc. 433.) The Court **GRANTS in part, DENIES in part, and DEFERS ruling on part** of the County's MIL No. 1 (Doc. 433). For the reasons stated on the record at the October 23 hearing, photographs and videos of the noose, the marks left by the noose, and jail officials with Morton's dead body are inadmissible under Rule 403. Additionally, Morton's suicide notes are admissible. The

Court deviates from its tentative regarding the family photographs, letters, and cards in light of the Parties' representations that they will meet and confer to limit the universe of potential photographs.

The Parties shall meet and confer and, if possible, stipulate to a limited set—the Court finds the Parties' suggestions of 5–10 photographs reasonable—of photographs that Plaintiffs may use at trial. If the Parties are unable to stipulate, Defendants **SHALL FILE** a renewed motion in limine as to this topic on or before **January 4, 2027**. The renewed motion in limine **SHALL INCLUDE** the set of 5–10 photographs as an exhibit. Plaintiffs **SHALL RESPOND** on or before **January 6, 2027**.

**5. County's MIL No. 5** (Doc. 442)

The County seeks to admit evidence of Morton's drug and alcohol use, mental health history (including prior suicide attempts), and criminal history on the issue of damages only. (Doc. 442.) Liberty joins and asks that the evidence also be used to show what the Liberty clinicians knew when they assessed Morton. (Doc. 464.) As the Court noted at the October 23 hearing, it appears that the Parties agree that much of this information is admissible and relevant. Therefore, the Court **DEFERS ruling on** the County's MIL No. 5 (Doc. 442). The Parties shall meet and confer and, if possible, file a stipulation regarding the use of this evidence. If the Parties are unable to stipulate, Defendants **SHALL FILE** a renewed motion in limine as to this topic on or before **January 4, 2027**. The renewed motion in limine **SHALL INCLUDE** specific evidence the Parties seek to include. Plaintiffs **SHALL RESPOND** on or before **January 6, 2027**.

**6. Liberty's MIL No. 1** (Doc. 443)

Liberty seeks to exclude evidence of Plaintiffs' alleged statements detailing his suicide plan, or the fact that such alleged statements reached Dr. Berlin, unless the Court first finds them admissible through a Federal Rule of Civil Procedure ("Rule') 104 pre-trial foundational ruling. (Doc. 443.) The Court confirms its tentative; for the reasons stated on the record at the October 23 hearing, the Court **DENIES** Liberty's MIL No. 1 (Doc. 443).

7. **Liberty's MIL No. 2** (Doc. 448)

Liberty, joined by the County, seeks to exclude or restrict Dr. Campbell's opinion regarding damages. (Doc. 448.) The Court confirms its tentative; for the reasons stated on the record at the October 23 hearing, the Court **GRANTS in part and DENIES in part** Liberty's MIL No. 2 (Doc. 448). Dr. Campbell may not opine regarding losses attributed to Dean Morton after his death, or attributed to Marilyn Morton after her death. However, to the extent Defendants challenge the rest of Dr. Campbell's opinions, they may do so through cross-examination, not total exclusion. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) ("[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury"); Doc. 250 at 31–32 ("The Court is satisfied that Dr. Campbell's opinion is based upon a reliable methodology and that County Defendant['s] challenges go[] to the weight of Dr. Campbell's evidence.").

8. **The "Discovery" Motions in Limine**

Several of the MILs concern the Parties' conduct and disclosures during discovery. Because of the overlapping issues and legal standards, the Court discusses these together. They are: Plaintiffs' MIL No. 1 (Doc. 439); Plaintiffs' MIL No. 5 (Doc. 452); the County's MIL No. 2 (Doc. 436); the County's MIL No. 3 (Doc. 438); the County's MIL No. 4 (Doc. 440); Liberty's MIL No. 3 (Doc. 449); and Liberty's MIL No. 4 (Doc. 450).

a. **External Reports**

For the reasons stated on the record at the October 23 hearing, the Court finds that the Lindsay Hayes report on suicide prevention policies within San Diego County jails is inadmissible under Rule 37. Because this report was late disclosed, it may not be admitted unless the late disclosure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). This report was neither. However, all the other external reports are admissible: the medical examiner's reports regarding previous in-custody suicides; the 2017 San Diego County grand jury report; the San Diego County Sheriff's Department's response to the grand jury report; the Disability Rights California report; the Sheriff's Department's response to the

Disability Rights California report; the 2017 National Commission on Correctional Health Care Technical Assistance report; the 2022 state auditor report; and the Sheriff's Department's response to the state auditor report. Similarly, the County's request to exclude all references to other in-custody suicides is **DENIED**.

**b. Dr. Canning's Testimony**

Defendants seek to exclude Dr. Canning's testimony regarding the Disability Rights California report. As the Court noted during the October 23 hearing, Dr. Canning would be precluded from testifying as an expert witness because of Plaintiffs' failure to comply with the disclosure requirements of Rule 26, but would be allowed to testify as a lay witness because any failure to disclose under Rule 37 would be harmless. "[W]hether evidence is more properly offered by an expert or a lay witness depends on the basis of the opinion, not its subject matter." *United States v. Perez*, 962 F.3d 420, 436 (9th Cir. 2020). Plaintiffs **MAY FILE** a supplemental brief, **on or before January 4, 2027**, setting forth (1) authority for the proposition that Dr. Canning may be considered a lay witness and (2) what specific testimony Dr. Canning will give. Defendants **MAY FILE** a response on or before **January 6, 2027**. Neither the supplemental brief nor the response shall exceed 3 pages.

**c. Dr. Metzner's Testimony**

The County seeks to exclude Dr. Metzner's testimony as to two points regarding the County's policies: (1) "the policies provide very little guidance in distinguishing high vs. low vs. no risk for suicide" and (2) "the policies do not include a template for a suicide risk assessment or a template for [an] ISP follow-up assessment." (Doc. 440 at 5.) For the reasons stated on the record at the October 23 hearing, the Court **GRANTS in part and DENIES in part** the County's request. Dr. Metzner may opine that Defendants' care was substandard and explain why he believes the care was substandard. He may also testify as to the standard of care and/or generally accepted healthcare policies. He may not, however, opine that Defendants would, or should, have done anything differently had they received additional information; as the Summary Judgment Order explains (*see* Doc. 250 at 22–24), that is a question for the factfinder.

**d. Documents Recently Produced by the County**

Plaintiffs seek to exclude 300 pages of documents produced by the County on August 31, 2026. (Doc. 439.) For the reasons discussed at the October 23 hearing, the Court **DENIES** the request as to the photographs of Vista Detention Facility and the documents regarding Sparks' assessments of other inmates. The Court **DEFERS RULING on** the request as to the newly produced documents regarding the County's policies. As discussed, the Parties shall meet and confer and, if possible, stipulate to the admissibility of the "operative" policies. If the Parties are unable to stipulate, Plaintiffs **SHALL FILE** a renewed motion in limine as to this topic on or before **January 4, 2027**. The renewed motion in limine **SHALL INCLUDE** the policy documents at issue as exhibits. Defendants **SHALL RESPOND** on or before **January 6, 2027**.

**e. "Undisclosed" Expert Testimony Regarding County Policies**

Plaintiffs argue that Defendants' experts should be precluded under Rule 26 from opining as to the external reports because their expert reports did not include opinions about the external reports. (Doc. 439.)

Defendants' experts may testify as to the Sheriff's response to the Disability Rights California report, the 2017 National Commission report, and the medical examiner's report. Although these external reports were late disclosed, the Court found their late disclosure harmless. However, the Court did not find their late disclosure substantially justified, and it would be inequitable to admit late-disclosed documents and then also preclude opposing experts from commenting on them merely because the expert reports did not mention them. Therefore, as to these three external reports, the Court will exercise its "substantial discretion to permit untimely disclosures" and "to take measures to cure the prejudice that accompanies them." *Houle v. Jubilee Fisheries, Inc.*, No. C04-2346JLR, 2006 WL 27204, at *2 (W.D. Wash. Jan. 5, 2006). The Court also exercises its discretion to allow Defendants' experts to testify as to the Disability Rights California report; having the experts testify as to the Sheriff's response to the report, but not the underlying report itself, would be logistically impractical and have the potential to confuse the jury.

Defendants' experts may not testify, though, as to the other external reports. Experts "may not testify to matters or offer opinions that are not in [their] report[s]." *Monterey Bay Military Housing, LLC v. Pinnacle Monterey LLC*, Case No. 14-cv-03953-BLF, 2015 WL 4593439, at *12 (N.D. Cal. July 30, 2015). Each of the other external reports was timely disclosed during discovery. (*See* Doc. 481 at 2–3 (citing Doc. 481-3 [Decl. of Grace Jun] and Responses to County's Request for Production of Documents (Set One).) Because Defendants' experts may not provide opinions on matters that are not in their reports, they may not testify about the timely disclosed external reports at trial.

**f. The County's Witnesses**

Liberty seeks to preclude the County from calling Jesse Johns and Serina Rognlien-Hood, as witnesses. (Doc. 450.) The County represents that these two witnesses will only be testifying as to the County's policies and procedures. Because the *Monell* claim has been dismissed against Liberty, the Court finds that the late disclosure of these two witnesses is harmless to Liberty such that they should not be excluded under Rule 37.

Plaintiffs seek to preclude the County from calling Johns, Rognlien-Hood, Nancy Booth, and Billy Duke. (Doc. 439.) Plaintiffs argue that these witnesses are acting as expert witnesses and were not disclosed timely under Rule 26. (*Id.*) These witnesses may testify as to their personal knowledge of the policies in question—such as the policies that were in place at the time they were employed, or the training that was provided to them—that would be the proper subject of lay witness testimony. If the County attempts to elicit expert testimony from these witnesses, though, Plaintiffs may renew their objection.

## B. Trial Briefs

### 1. *Monell* Liability

The Court discussed Plaintiffs and the County's arguments regarding *Monell* liability at length during the October 23 hearing. For the reasons stated on the record, the Court finds that: (1) the Summary Judgment Order does not preclude a collective inaction theory, and even if it did, the Court would set that portion of the Order aside as clearly erroneous and manifestly unjust; and (2) even if Sparks is not found individually liable, the

County's failure to maintain adequate policies or training may have been so widespread as to cause the inaction of multiple individual healthcare providers (including now-dismissed Defendant Alto[1]), leading to Morton's suicide. *See Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 604–05 (9th Cir. 2019) (finding that a collective inaction theory could give rise to *Monell* liability in a Fourteenth Amendment deliberate indifference in-custody suicide case).

The Court **DEFERS ruling on** whether the actions or omissions of individual *Liberty* defendants may give rise to *Monell* liability against the County. Consistent with the reasoning of *Burke v. Regalado*, 935 F.3d 960 (10th Cir. 2019), the Court will make this determination after the trial record is developed as to the County's control over the Liberty providers.

**2. Comparative Fault**

Plaintiffs argue that there can be no comparative fault or apportionment of liability for § 1983 claims. (Doc. 397.) The County and Liberty argue that there is no such bar, and that joint and several liability is the rule only among defendants who are first found to be liable for the plaintiff's injuries. (Docs. 406, 421.) The Court **DEFERS ruling on** the issue for the reasons stated on the record at the October 23 hearing. In the Ninth Circuit cases discussed by the Parties, the decisions to find injuries indivisible came only after the trial record was developed, and the Court finds it prudent to do the same here. *See Hazle v. Crofoot*, 727 F.3d 983, 993–94 (9th Cir. 2013); *Rudelson v. United States*, 602 F.2d 1326, 1331–32 (9th Cir. 1979). For purposes of the Parties' renewed proposed jury instructions, the Court reminds them that it is reversible error for the district court to "put[] the question of apportionment to the jury" because "the question of whether an injury is

---

[1] This means that Dr. Metzner may also opine as to the standard of care and generally accepted medical principles regarding Alto, and may explain why he found Alto's treatment below the standard of care. But he may not opine as to whether Alto would or should have done something different if provided with additional information.

capable of apportionment is a legal one to be decided by the judge." *Hazle*, 727 F.3d at 995; *see also Missouri v. Jenkins*, 495 U.S. 33, 54 (1990) (noting that "apportionment of the cost is part of the equitable powers of the District Court," not the jury).

**3. Direct Liability for Liberty**

Liberty argues that it cannot be held directly liable because California law prevents a plaintiff from seeking to recover from both employer and employee for the same conduct. (Doc. 417 at 3 (citations omitted).) However, the Court may not enter judgment *sua sponte* unless "the opposing party has had a full and fair opportunity to ventilate the issues," and Plaintiffs have not had that opportunity because Liberty failed to move for summary judgment on the direct liability state law claims. *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003). Even if Liberty had, though, the Court would find that whether there was a Liberty *corporate* wrong separate and apar from any Liberty *individual defendant* wrong is a question for the jury.

**4. Bifurcation**

For the reasons stated on the record at the October 23 hearing, the Court will bifurcate the trial into a liability phase and a punitive damages phase. The Court will not further bifurcate the liability phase as Defendants request.

**5. Substitution and Available Damages**

Plaintiffs and the County agree that: (1) the scope and availability of damages under § 1983 are not affected by substitution; (2) the jury may elect to award damages for pre-death pain and suffering as well as loss of life; (3) Plaintiffs cannot recover punitive damages against the County; and (4) Plaintiffs cannot recover loss of consortium damages against the County Defendants pursuant to the § 1983 claims. (Doc. 428 at 2.) The Court thus need only decide (1) whether Plaintiffs may recover loss of earnings damages against the County Defendants and (2) whether the period for recoverable pre-death pain and suffering began when Morton began his suicide attempt or when the allegedly inadequate suicide risk assessments occurred.

For the reasons stated on the record at the October 23 hearing, the Court finds that

as a matter of law (1) Plaintiffs may recover loss of earnings damages and (2) damages for pre-death pain and suffering begin accruing not at the time of the constitutional injury, but at the time of the injury that resulted in Morton's death, *i.e.* his hanging. In light of the Parties' representations at the hearing, the Court will also give the Parties an opportunity to meet and confer regarding a proposed verdict form in line with these findings that obviates the risk of duplicative recovery if Plaintiffs are able to recover both loss of earnings damages and wrongful death damages. If the Parties are unable to stipulate to a verdict form, they shall file their proposed verdict forms in line with the directives below.

**C. Motion to Quash Trial Subpoena** (Doc. 391)

The Court's rulings above significantly change the nature of the Parties' arguments regarding whether former Sheriff Gore should be subpoenaed to testify at trial. For example, because the external reports were not excluded, Sheriff Gore no longer is the only means of satisfying the notice requirement of a *Monell* claim. Additionally, Plaintiffs represented at the October 23 hearing that they intend to restrict Gore's testimony narrowly to that notice requirement. Accordingly, the Court believes this is another area to which the Parties should be able to stipulate. The Parties shall meet and confer and, if possible, stipulate to the relevant information that would be sought from Gore. The Parties **SHALL FILE** a Joint Status Report regarding their progress on this topic on or before **December 14, 2026**. The Court thus **DEFERS ruling on** the motion to quash (Doc. 391).

**D. Motions to Seal**

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). "The presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the

public to have confidence in the administration of justice." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (citation modified).

A party seeking to seal a judicial record bears the burden of overcoming the strong presumption of public access. *Foltz*, 331 F.3d at 1135. The showing required to meet this burden depends upon whether the documents to be sealed relate to a motion that is "more than tangentially related to the merits of the case." *Ctr. for Auto Safety*, 809 F.3d at 1102. When the underlying motion is more than tangentially related to the merits, the "compelling reasons" standard applies. *Id*. at 1096–98. When the underlying motion does not surpass the tangential relevance threshold, the "good cause" standard applies. *Id*.

The Court applies the compelling reasons standard in connection with the Parties' motions in limine. *See Ctr. for Auto Safety*, 809 F.3d at 1100–01 ("[O]ur circuit looks past the literal dispositive/nondispositive label."); *Cleveland v. Behemoth*, Case No.: 3:19-cv-00672-RBM-BGS, 2022 WL 5313598, at *1 (S.D. Cal. Oct. 6, 2022) (applying compelling reasons standard to a motion in limine).

**1. County's Motion to Seal** (Doc. 434)

The County seeks to file under seal several attachments to its first MIL: photographs of the interior of Vista Detention Facility, the deceased Morton, and the noose; Morton's suicide note; two family photographs of Morton; and a note Morton wrote to his mother unrelated to, and not contemporaneous with, his death. (Docs. 434; 435.) The Court agrees with the County that compelling reasons justify the non-disclosure of images from inside a jail and of images of a person's deceased body. (*See* Doc. 434 at 3 (citations omitted).) The County has not met its burden to demonstrate compelling reasons to seal the remainder of the attachments, however. For clarity, these attachments are: Morton's suicide note, the two family photographs, and the note Morton wrote to his mother. (*See* Docs. 435-1, 435-2.) Therefore, the County's Motion to Seal is **GRANTED in part and DENIED in part**. The Clerk of Court is directed to unseal the sealed exhibits filed at Docs. 435-1 and 435-2; the sealed exhibits filed at Doc. 435 shall remain sealed.

2. **Liberty's Motion to Seal** (Doc. 444)

Liberty seeks to file under seal several attachments to its first MIL: a medical progress note from Morton's medical record and an excerpt from an Inmate Status Report. (Docs. 444, 447.) Liberty argues that "[p]ublic filing of the underlying records would unnecessarily place private medical and psychiatric information in the unrestricted public record." (Doc. 444 at 3.) Having reviewed the exhibits, the Court does not find that they contain confidential information concerning Morton's medical condition. It is true that a plaintiff putting his medical history at issue "does not mean that the entirety of his medical records filed in connection with a motion . . . need be unnecessarily broadcast to the public." *Salgao v. Iqvia, Inc.*, Case No. 18-cv-2785-BAS-WVG, 2020 WL 376217, at *2 (S.D. Cal. Jan. 23, 2020) (citation modified). But the Court does agree with Plaintiffs that "the records are directly relevant to Plaintiffs' claims, . . . contain evidence central to the circumstances of Mr. Morton's death, . . . and will likely be introduced at trial." (Doc. 476 at 4–5.) Therefore, Liberty's Motion to Seal is **DENIED**. The Clerk of Court is directed to unseal the sealed exhibits at Docs. 447, 447-1, and 447-2.

## III. CONCLUSION

Based on the foregoing, the Court rules on the pending motions as follows:

| Motion | Ruling |
|---|---|
| Plaintiffs' MIL No. 1 (Doc. 439) | Grant in part; Deny in part. (*See* page 7 of this Order) |
| Plaintiffs' MIL No. 2 (Doc. 446) | Grant in part; Deny in part. (*See* page 2) |
| Plaintiffs' MIL No. 3 (Doc. 445) | Grant in part; Deny in part. (*See* page 3) |
| Plaintiffs' MIL No. 4 (Doc. 451) | Deny. (*See* page 3) |
| Plaintiffs' MIL No. 5 (Doc. 452) | Grant in part; Deny in part. (*See* pages 5–6) |
| County's MIL No. 1 (Doc. 433) | Grant in part; Deny in part. (*See* pages 3–4) |

| | |
|---|---|
| County's MIL No. 2 (Doc. 436) | Grant in part; Deny in part. (*See* pages 5–6) |
| County's MIL No. 3 (Doc. 438) | Deny. (*See* pages 5–6) |
| County's MIL No. 4 (Doc. 440) | Grant in part; Deny in part. (*See* pages 5–6) |
| County's MIL No. 5 (Doc. 442) | Defer ruling on. (*See* page 4) |
| Liberty's MIL No. 1 (Doc. 443) | Deny. (*See* page 4) |
| Liberty's MIL No. 2 (Doc. 448) | Grant in part; Deny in part. (*See* page 5) |
| Liberty's MIL No. 3 (Doc. 449) | Grant in part; Deny in part. (*See* pages 6–7) |
| Liberty's MIL No. 4 (Doc. 450) | Grant in part; Deny in part. (*See* pages 7–8) |
| Motion to Quash Trial Subpoena (Doc. 391) | Defer ruling on. (*See* page 11) |
| County's Motion to Seal (Doc. 434) | Grant in part; Deny in part. (*See* pages 11–12) |
| Liberty's Motion to Seal (Doc. 444) | Deny. (*See* page 13) |

The Parties shall meet and confer and attempt to file stipulations regarding: the limited set of 5–10 photographs of Morton and/or his family; evidence of Morton's drug and alcohol use, mental health history (including prior suicide attempts), and criminal history; the newly produced documents regarding the County's policies; and a proposed verdict form that obviates the risk of duplicative recovery if Plaintiffs are able to recover both loss of earnings damages and wrongful death damages; and evidence that would be sought from Gore. If the Parties are unable to stipulate as to any of these topics, they shall file renewed MILs in line with the directives above (namely, MILs filed on or before **January 4, 2027** and oppositions filed on or before **January 6, 2027**).

Additionally, Plaintiffs **MAY FILE** a supplemental brief, **on or before January 4, 2027**, setting forth (1) authority for the proposition that Dr. Canning may be considered a lay witness and (2) what specific testimony Dr. Canning will give. Defendants **MAY FILE** a response on or before **January 6, 2027**. Neither the brief nor the response shall exceed 3 pages.

Finally, the Parties **SHALL FILE AND LODGE WITH CHAMBERS** new (1) proposed joint jury instructions[2] and (2) proposed verdict forms on or before **December 14, 2026**. The copies lodges with the undersigned's chambers shall be in Word format.

**IT IS SO ORDERED**.

DATE: October 27, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

[2] The new proposed joint jury instructions must be complete in and of themselves, without reference to the Parties' previous submissions. That is, the new proposed joint jury instructions should contain *all* proposed jury instructions, not just the ones altered by the Order above.